1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California 94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiffs

7

8             THE UNITED STATES DISTRICT COURT

9         FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11
   JOHN L. DAVIS, WILLIAM LARSEN,        )   No. C08-228-JL
12 JAMES PIERCE, SR., ROBERT             )
   SCHOELZEL, NORRIS WALLACE,            )
13 JAMES WATSON, ROBERT KACSUTA,         )   COMPLAINT FOR ASBESTOS
   and RICHARD EDDY,                     )   PERSONAL INJURY/ PRODUCTS
14                                       )   LIABILITY;
                Plaintiffs,              )
15                                       )   DEMAND FOR JURY TRIAL
   vs.                                   )
16                                       )
   GENERAL ELECTRIC COMPANY,             )
17 VIAD CORP., TODD SHIPYARDS            )
   CORPORATION, GENERAL                  )
18 DYNAMICS CORPORATION, and BELL        )
   HELICOPTER TEXTRON, INC.,             )
19                                       )
                Defendants.              )
20                                       )
                                         )
21

22                        I.

23                      PARTIES

24      1.      Plaintiffs in this action are individuals who have sustained asbestos-related lung

25 injuries as a result of their inhalation of asbestos fibers through their occupational exposure to

26 asbestos.

27      2.      Each of these individuals sustained an asbestos-related lung disease by precisely

28 the same mechanism: the inhalation of asbestos fibers released during the handling of asbestos-

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1  containing products at their jobsites.

2      3.    The pathogenesis of each plaintiffs' asbestos-related diseases is explained on

3  **Exhibit A**, attached to plaintiffs' complaint and incorporated by reference herein.

4      4.    All of plaintiffs' claims arise out of a similar series of occurrences:  repeated

5  exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants

6  and supplied to, installed and/or maintained by defendants at plaintiffs' worksites, over a period

7  of years, caused from release of toxic asbestos fibers and subsequent inhalation by the plaintiffs,

8  resulting in cumulative, progressive, incurable lung diseases.

9      5.     Each plaintiff claims damages for an asbestos-related disease arising from an

10  identical series of occurrences not dependent on each individual plaintiff's worksite but on the

11  fact that asbestos-containing products, when handled in the manner in which they were intended,

12  released harmful asbestos fibers which when inhaled by plaintiffs, caused serious lung disease.

13  The allegations of plaintiffs regarding the nature of their asbestos-related diseases, the nature of

14  asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are all

15  identical. As used herein, plaintiffs shall mean the above-captioned asbestos-injured plaintiffs.

16      6.    Plaintiffs are informed and believe, and thereon allege that at all times herein

17  mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole

18  proprietorships and/or other business entities organized and existing under and by virtue of the

19  laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

20  said defendants, and each of them, were and are authorized to do and are doing business in the

21  State of California, and that said defendants have regularly conducted business in the County of

22  San Francisco, State of California.

23  **II.**

24  **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

25      7.    <u>Jurisdiction</u>:   Plaintiffs JOHN L. DAVIS, WILLIAM LARSEN, JAMES

26  PIERCE, SR., ROBERT SCHOELZEL, NORRIS WALLACE, JAMES WATSON, AND

27  ROBERT KACSUTA, are citizens of the State of California. Plaintiff RICHARD EDDY  is a

28  citizen of the State of Pennsylvania.

1    GENERAL ELECTRIC COMPANY is a corporation incorporated under the laws of ,

2  and having its principal places of business in, the State of Connecticut.    VIAD CORP. is a

3  corporation incorporated under the laws of , and having its principal places of business in, the

4  State of Arizona.    TODD SHIPYARDS CORPORATION is a corporation incorporated under

5  the laws of , and having its principal places of business in, the State of Washington.  GENERAL

6  DYNAMICS CORPORATION is a corporation incorporated under the laws of , and having its

7  principal places of business in, the State of Maryland.    BELL HELICOPTER TEXTRON, INC.

8  is a corporation incorporated under the laws of , and having its principal places of business in,

9  the State of Rhode Island.

10    This Court has original jurisdiction under 25 USC § 1332, in that it is a civil action

11  between citizens of different states in which the matter in controversy exceeds, exclusive of costs

12  and interest, seventy-five thousand dollars.

13    8.    <u>Venue / Intradistrict Assignment.</u>    Venue is proper in the Northern District of

14  California and assignment to the San Francisco Division of said district is proper as a substantial

15  part of the events or omissions which give rise to the claims asserted by plaintiffs herein

16  occurred  within the County of San Francisco, California,  and all of the defendants are subject to

17  personal jurisdiction in this district at the time the action is commenced.

18                                          **III.**

19                                 **CAUSES OF ACTION**

20                              <u>FIRST CAUSE OF ACTION</u>

21                                    (Negligence)

22  PLAINTIFF JOHN L. DAVIS COMPLAINS OF DEFENDANTS  VIAD CORP., TODD

23  SHIPYARDS CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;

24  PLAINTIFF WILLIAM LARSEN COMPLAINS OF DEFENDANTS BELL HELICOPTER

25  TEXTRON, INC., THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF

26  JAMES PIERCE, SR. COMPLAINS OF DEFENDANTS  TODD SHIPYARDS

27  CORPORATION,  THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;  PLAINTIFF

28  ROBERT SCHOELZEL COMPLAINS OF DEFENDANTS GENERAL ELECTRIC

1    COMPANY, VIAD CORP., TODD SHIPYARDS CORPORATION, THEIR "ALTERNATE

2    ENTITIES," AND EACH OF THEM; PLAINTIFF NORRIS WALLACE COMPLAINS OF

3    DEFENDANTS   GENERAL DYNAMICS CORPORATION, THEIR "ALTERNATE

4    ENTITIES," AND EACH OF THEM;  PLAINTIFF JAMES WATSON COMPLAINS OF

5    DEFENDANTS GENERAL ELECTRIC COMPANY,  THEIR "ALTERNATE ENTITIES,"

6    AND EACH OF THEM;  PLAINTIFF ROBERT KACSUTA COMPLAINS OF DEFENDANTS

7     TODD SHIPYARDS CORPORATION,  THEIR "ALTERNATE ENTITIES," AND EACH OF

8    THEM; PLAINTIFF RICHARD EDDY COMPLAINS OF DEFENDANTS GENERAL

9    ELECTRIC COMPANY,  THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;  AND

10    ALL PLAINTIFFS FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE:

11        9.    At all times herein mentioned, each of the named defendants was the successor,

12    successor in business, successor in product line or a portion thereof, assign, predecessor,

13    predecessor in business, predecessor in product line or a portion thereof, parent, holding

14    company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned

15    by, or the whole or partial owner of or member in an entity researching, studying, manufacturing,

16    fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering

17    for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,

18    promoting, representing, endorsing servicing, installing, contracting for installation, repairing,

19    marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring,

20    mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product,

21    namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter

22    collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable

23    for the tortious conduct of each successor, successor in business, successor in product line or a

24    portion thereof, assign, predecessor in product line or a portion thereof, parent, holding

25    company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or

26    partially owned entity, or entity that it was a member of, or funded, that researched, studied,

27    manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought,

28    offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation,

1   repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain

2   product, namely asbestos, and other products containing asbestos. The following defendants,

3   and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of

4   them, in that there has been a virtual destruction of plaintiff's remedy against each such

5   ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or

6   a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused

7   the destruction of plaintiff's remedy against each such ALTERNATE ENTITY; each such

8   defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY;

9   and that each such defendant enjoys  the goodwill originally attached to each such

10  ALTERNATE ENTITY:

11  | DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
|  | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
|  | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
|  | G E INDUSTRIAL SYSTEMS |
|  | CURTIS TURBINES |
|  | PARSONS TURBINES |
|  | GENERAL ELECTRIC JET ENGINES |
| VIAD CORP. | ARMOUR AND COMPANY |
|  | ARMOUR & CO. |
|  | ARMOUR & COMPANY |
|  | THE GREYHOUND CORPORATION |
|  | G. ARMOUR ARIZONA COMPANY |
|  | ARIZONA DIAL |
|  | 111 CORPORATION |
|  | BALDWIN LOCOMOTIVES |
|  | BALDWIN LOCOMOTIVE WORKS |
|  | LIMA-HAMILTON CORPORATION |
|  | LIMA LOCOMOTIVE WORKS |
|  | BALDWIN-LIMA-HAMILTON CORPORATION |
|  | BALDWIN-LESSING-HAMILTON |
|  | THE MIDVALE COMPANY |
|  | THE DIAL CORPORATION |
|  | THE NEW DIAL CORP. |
|  | ALSTOM POWER, INC. |
|  | ECOLAIRE HEAT TRANSFER, INC, HEAT EXCHANGE DIVISION |
|  | ALSTOM HEAT EXCHANGE DIVISION |
|  | GRISCOM-RUSSELL (product) |
| TODD SHIPYARDS CORPORATION | TODD PACIFIC SHIPYARDS CORPORATION |
|  | SEATTLE-TACOMA SHIPBUILDING CORP. |

1

2     GENERAL DYNAMICS CORPORATION          CONVAIR
                                            VULTEE AIRCRAFT INC.
3                                           CONSOLIDATED VULTEE AIRCRAFT CORPORATION
                                            ASBESTOS CORPORATION LIMITED
4

5          10.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and

6     each of them, were and are engaged in the business of researching, manufacturing, fabricating,

7     designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale,

8     supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating,

9     promoting, representing, servicing, installing, contracting for installation, repairing, marketing,

10    warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating,

11    or otherwise directing and/or facilitating the use of, or advertising a certain product, namely

12    asbestos and other products containing asbestos.

13         11.     At all times herein mentioned, defendants, their ALTERNATE ENTITIES and

14    each of them, singularly and jointly, negligently, and carelessly researched, manufactured,

15    fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed

16    to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale,

17    supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted,

18    installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted,

19    rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos,

20    and other products containing asbestos, in that said products caused personal injuries to users,

21    consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter

22    collectively called "exposed persons"), while being used in a manner that was reasonably

23    foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by

24    "exposed persons".

25         12.     Defendants,  their ALTERNATE ENTITIES, and each of them, had a duty to

26    exercise due care in the pursuance of the activities mentioned above and defendants, and each of

27    them, breached said duty of due care.

28    ////

13. Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

14. Plaintiffs have used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiffs' exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A**, attached to plaintiff's complaint and incorporated by reference herein.

15. As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, plaintiffs' exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the plaintiff as set forth in **Exhibit A,** attached to plaintiffs' complaint and incorporated by reference herein.

16. Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

////

////

17.     Plaintiffs each suffer from a condition related to exposure to asbestos and asbestos-containing products. Plaintiffs are not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

18.     As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, plaintiffs have suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to their general damage.

19.     As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, plaintiffs have incurred, are presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

20.     As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, plaintiffs have incurred pecuniary losses, the full nature and extent of which are not yet known to plaintiffs; and leave is requested to amend this complaint to conform to proof at the time of trial.

21.     Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

22.     Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

////

23.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons".  Plaintiffs, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

SECOND CAUSE OF ACTION
(Products Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY, PLAINTIFFS COMPLAIN AS FOLLOWS: PLAINTIFF JOHN L. DAVIS COMPLAINS OF DEFENDANTS  VIAD CORP., TODD SHIPYARDS CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF WILLIAM LARSEN COMPLAINS OF DEFENDANTS BELL HELICOPTER TEXTRON, INC., THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF JAMES PIERCE, SR. COMPLAINS OF DEFENDANTS  TODD SHIPYARDS CORPORATION,  THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;  PLAINTIFF ROBERT SCHOELZEL COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, VIAD CORP., TODD SHIPYARDS CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF NORRIS WALLACE COMPLAINS OF DEFENDANTS   GENERAL DYNAMICS CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;  PLAINTIFF JAMES WATSON COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,  THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;  PLAINTIFF ROBERT KACSUTA COMPLAINS OF DEFENDANTS  TODD SHIPYARDS CORPORATION,  THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF RICHARD EDDY COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,  THEIR "ALTERNATE ENTITIES," AND EACH OF THEM:

24.    Plaintiffs incorporate herein by reference, as though fully set forth herein, the allegations contained in each paragraph of the First Cause of Action herein.

25.     Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

26.     Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death.  The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them.  Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including plaintiffs herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

27.     "Exposed persons" did not know of the substantial danger of using said products.  Said dangers were not readily recognizable by "exposed persons".  Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which plaintiffs and others similarly situated were exposed.

28.     In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer.  Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of

1  them on or before 1930, and thereafter.

2      29.      On or before 1930, and thereafter, said defendants, their ALTERNATE

3  ENTITIES and each of them, were aware that members of the general public and other "exposed

4  persons", who would come in contact with their asbestos and asbestos-containing products, had

5  no knowledge or information indicating that asbestos or asbestos-containing products could

6  cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

7  members of the general public and other "exposed persons", who came in contact with asbestos

8  and asbestos-containing products, would assume, and in fact did assume, that exposure to

9  asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

10  hazardous to health and human life.

11      30.      With said knowledge, said defendants, their ALTERNATE ENTITIES, and each

12  of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,

13  lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,

14  market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

15  asbestos-containing products without attempting to protect "exposed persons" from or warn

16  "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

17  asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or

18  warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos

19  and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

20  intentionally failed to reveal their knowledge of said risk, and consciously and actively

21  concealed and suppressed said knowledge from "exposed persons" and members of the general

22  public, thus impliedly representing to "exposed persons" and members of the general public that

23  asbestos and asbestos-containing products were safe for all reasonably foreseeable uses.

24  Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and

25  made these implied representations with the knowledge of the falsity of said implied

26  representations.

27  ////

28  ////

31.    The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products.  In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons"  and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including plaintiffs.

32.    Plaintiffs allege that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products to be safe for their intended use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

33.    Plaintiffs further allege their injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised by the aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that plaintiffs cannot identify precisely which asbestos or asbestos-containing products caused the injuries complained of herein.

34.    Plaintiffs relied upon defendants', their "alternate entities'", and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products.  As a direct, foreseeable and proximate result thereof, plaintiffs have been injured permanently as alleged herein.

////

1    35.    As a direct and proximate result of the actions and conduct outlined herein,

2    plaintiffs have suffered the injuries and damages previously alleged.

3    WHEREFORE, plaintiffs pray judgment against defendants, their ALTERNATE

4    ENTITIES, and each of them, as hereinafter set forth.

5                                        **IV.**

6                                      **PRAYER**

7    WHEREFORE, plaintiffs pray judgment against defendants, their ALTERNATE

8    ENTITIES, and each of them in an amount to be proved at trial in each individual case, as

9    follows:

10    (a)    For plaintiffs' general damages according to proof;

11    (b)    For plaintiffs' loss of income, wages and earning potential according to proof;

12    (c)    For plaintiffs' medical and related expenses according to proof;

13    (d)    For plaintiffs' cost of suit herein;

14    (e)    For exemplary or punitive damages according to proof;

15    (f)    For damages for fraud according to proof; and

16    (g)    For such other and further relief as the Court may deem just and proper, including

17    costs and prejudgment interest.

18    Dated: December 17, 2007                    BRAYTON❖PURCELL LLP

19                                                /s/ David R. Donadio

20                                        By: _____

21                                                David R. Donadio
                                                Attorneys for Plaintiffs

22                                      JURY DEMAND

23    Plaintiffs hereby demand trial by jury of all issues of this cause.

24

25    Dated: December 17, 2007                    BRAYTON❖PURCELL LLP

26                                                /s/ David R. Donadio

27                                        By: _____

28                                                David R. Donadio
                                                Attorneys for Plaintiffs

1  ALAN R. BRAYTON, ESQ., S.B. #73685
   DAVID R. DONADIO, ESQ., S.B. #154436
2  BRAYTON❖PURCELL LLP
   Attorneys at Law
3  222 Rush Landing Road
   P.O. Box 6169
4  Novato, California  94948-6169
   (415) 898-1555
5  (415) 898-1247 (Fax No.)

6  Attorneys for Plaintiffs

7

8              THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11

12  JOHN L. DAVIS, WILLIAM LARSEN,        )   No. C08-228-JL
    JAMES PIERCE, SR., ROBERT             )
13  SCHOELZEL, NORRIS WALLACE,            )
    JAMES WATSON, ROBERT KACSUTA,         )   COMPLAINT FOR ASBESTOS
14  and RICHARD EDDY,                     )   PERSONAL INJURY/ PRODUCTS
                                          )   LIABILITY;
15          Plaintiffs,                   )
                                          )   DEMAND FOR JURY TRIAL
16  vs.                                   )
                                          )
17  GENERAL ELECTRIC COMPANY,             )
    VIAD CORP., TODD SHIPYARDS            )
18  CORPORATION, GENERAL                  )
    DYNAMICS CORPORATION, and BELL        )
19  HELICOPTER TEXTRON, INC.,             )
                                          )
20          Defendants.                   )
                                          )
21

22                        I.

23                     PARTIES

24      1.    Plaintiffs in this action are individuals who have sustained asbestos-related lung

25  injuries as a result of their inhalation of asbestos fibers through their occupational exposure to

26  asbestos.

27      2.    Each of these individuals sustained an asbestos-related lung disease by precisely

28  the same mechanism:  the inhalation of asbestos fibers released during the handling of asbestos-

BRAYTON❖PURCELL LLP
ATTORNEYS AT LAW
222 RUSH LANDING ROAD
P O BOX 6169
NOVATO, CALIFORNIA 94948-6169
(415) 898-1555

1  containing products at their jobsites.

2      3.      The pathogenesis of each plaintiffs' asbestos-related diseases is explained on

3  **Exhibit A**, attached to plaintiffs' complaint and incorporated by reference herein.

4      4.      All of plaintiffs' claims arise out of a similar series of occurrences:  repeated

5  exposure to asbestos-containing products manufactured, distributed, and/or sold by defendants

6  and supplied to, installed and/or maintained by defendants at plaintiffs' worksites, over a period

7  of years, caused from release of toxic asbestos fibers and subsequent inhalation by the plaintiffs,

8  resulting in cumulative, progressive, incurable lung diseases.

9      5.       Each plaintiff claims damages for an asbestos-related disease arising from an

10  identical series of occurrences not dependent on each individual plaintiff's worksite but on the

11  fact that asbestos-containing products, when handled in the manner in which they were intended,

12  released harmful asbestos fibers which when inhaled by plaintiffs, caused serious lung disease.

13  The allegations of plaintiffs regarding the nature of their asbestos-related diseases, the nature of

14  asbestos; the propensity of asbestos to cause disease, the criteria for diagnosis of disease, are all

15  identical. As used herein, plaintiffs shall mean the above-captioned asbestos-injured plaintiffs.

16      6.      Plaintiffs are informed and believe, and thereon allege that at all times herein

17  mentioned, defendants were and are corporations, partnerships, unincorporated associations, sole

18  proprietorships and/or other business entities organized and existing under and by virtue of the

19  laws of the State of California, or the laws of some other state or foreign jurisdiction, and that

20  said defendants, and each of them, were and are authorized to do and are doing business in the

21  State of California, and that said defendants have regularly conducted business in the County of

22  San Francisco, State of California.

23                                          **II.**

24                  **JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

25      7.      <u>Jurisdiction</u>:   Plaintiffs JOHN L. DAVIS, WILLIAM LARSEN, JAMES

26  PIERCE, SR., ROBERT SCHOELZEL, NORRIS WALLACE, JAMES WATSON, AND

27  ROBERT KACSUTA, are citizens of the State of California. Plaintiff RICHARD EDDY  is a

28  citizen of the State of Pennsylvania.

1    GENERAL ELECTRIC COMPANY is a corporation incorporated under the laws of ,

2    and having its principal places of business in, the State of Connecticut.    VIAD CORP. is a

3    corporation incorporated under the laws of , and having its principal places of business in, the

4    State of Arizona.    TODD SHIPYARDS CORPORATION is a corporation incorporated under

5    the laws of , and having its principal places of business in, the State of Washington.  GENERAL

6    DYNAMICS CORPORATION is a corporation incorporated under the laws of , and having its

7    principal places of business in, the State of Maryland.    BELL HELICOPTER TEXTRON, INC.

8    is a corporation incorporated under the laws of , and having its principal places of business in,

9    the State of Rhode Island.

10    This Court has original jurisdiction under 25 USC § 1332, in that it is a civil action

11    between citizens of different states in which the matter in controversy exceeds, exclusive of costs

12    and interest, seventy-five thousand dollars.

13    8.    <u>Venue / Intradistrict Assignment</u>.    Venue is proper in the Northern District of

14    California and assignment to the San Francisco Division of said district is proper as a substantial

15    part of the events or omissions which give rise to the claims asserted by plaintiffs herein

16    occurred  within the County of San Francisco, California,  and all of the defendants are subject to

17    personal jurisdiction in this district at the time the action is commenced.

18                                                            **III.**

19                                              **CAUSES OF ACTION**

20                                        <u>**FIRST CAUSE OF ACTION**</u>

21                                                   (Negligence)

22    PLAINTIFF JOHN L. DAVIS COMPLAINS OF DEFENDANTS  VIAD CORP., TODD

23    SHIPYARDS CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;

24    PLAINTIFF WILLIAM LARSEN COMPLAINS OF DEFENDANTS BELL HELICOPTER

25    TEXTRON, INC., THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF

26    JAMES PIERCE, SR. COMPLAINS OF DEFENDANTS  TODD SHIPYARDS

27    CORPORATION,  THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;  PLAINTIFF

28    ROBERT SCHOELZEL COMPLAINS OF DEFENDANTS GENERAL ELECTRIC

1   COMPANY, VIAD CORP., TODD SHIPYARDS CORPORATION, THEIR "ALTERNATE

2   ENTITIES," AND EACH OF THEM; PLAINTIFF NORRIS WALLACE COMPLAINS OF

3   DEFENDANTS   GENERAL DYNAMICS CORPORATION, THEIR "ALTERNATE

4   ENTITIES," AND EACH OF THEM;  PLAINTIFF JAMES WATSON COMPLAINS OF

5   DEFENDANTS GENERAL ELECTRIC COMPANY,  THEIR "ALTERNATE ENTITIES,"

6   AND EACH OF THEM;  PLAINTIFF ROBERT KACSUTA COMPLAINS OF DEFENDANTS

7    TODD SHIPYARDS CORPORATION,  THEIR "ALTERNATE ENTITIES," AND EACH OF

8   THEM; PLAINTIFF RICHARD EDDY COMPLAINS OF DEFENDANTS GENERAL

9   ELECTRIC COMPANY,  THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;  AND

10  ALL PLAINTIFFS FOR A CAUSE OF ACTION FOR NEGLIGENCE ALLEGE:

11      9.      At all times herein mentioned, each of the named defendants was the successor,

12  successor in business, successor in product line or a portion thereof, assign, predecessor,

13  predecessor in business, predecessor in product line or a portion thereof, parent, holding

14  company, affiliate, venturer, co-venturer, subsidiary, wholly or partially owned

15  by, or the whole or partial owner of or member in an entity researching, studying, manufacturing,

16  fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering

17  for sale, supplying, selling, inspecting, testing, authorizing, approving, certifying, facilitating,

18  promoting, representing, endorsing servicing, installing, contracting for installation, repairing,

19  marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring,

20  mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product,

21  namely asbestos, and/or other products containing asbestos. Said entities shall hereinafter

22  collectively be called ALTERNATE ENTITIES. Each of the herein named defendants is liable

23  for the tortious conduct of each successor, successor in business, successor in product line or a

24  portion thereof, assign, predecessor in product line or a portion thereof, parent, holding

25  company, affiliate, venturer, co-venturer, subsidiary, whole or partial owner, or wholly or

26  partially owned entity, or entity that it was a member of, or funded, that researched, studied,

27  manufactured, fabricated, designed, modified, labeled, assembled, distributed, leased, bought,

28  offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation,

1   repaired, marketed, warranted, rebranded, manufactured for others and advertised a certain

2   product, namely asbestos, and other products containing asbestos. The following defendants,

3   and each of them, are liable for the acts of each and every ALTERNATE ENTITY, and each of

4   them, in that there has been a virtual destruction of plaintiff's remedy against each such

5   ALTERNATE ENTITY; defendants, and each of them, have acquired the assets, product line, or

6   a portion thereof, of each such ALTERNATE ENTITY; defendants, and each of them, caused

7   the destruction of plaintiff's remedy against each such ALTERNATE ENTITY; each such

8   defendant has the ability to assume the risk-spreading role of each such ALTERNATE ENTITY;

9   and that each such defendant enjoys  the goodwill originally attached to each such

10  ALTERNATE ENTITY:

11  | DEFENDANT | ALTERNATE ENTITY |
|---|---|
| GENERAL ELECTRIC COMPANY | MATTERN X-RAY |
| | HOTPOINT ELECTRIC APPLIANCE COMPANY LIMITED |
| | TRUMBULL ELECTRIC MANUFACTURING COMPANY |
| | G E INDUSTRIAL SYSTEMS |
| | CURTIS TURBINES |
| | PARSONS TURBINES |
| | GENERAL ELECTRIC JET ENGINES |
| VIAD CORP. | ARMOUR AND COMPANY |
| | ARMOUR & CO. |
| | ARMOUR & COMPANY |
| | THE GREYHOUND CORPORATION |
| | G. ARMOUR ARIZONA COMPANY |
| | ARIZONA DIAL |
| | 111 CORPORATION |
| | BALDWIN LOCOMOTIVES |
| | BALDWIN LOCOMOTIVE WORKS |
| | LIMA-HAMILTON CORPORATION |
| | LIMA LOCOMOTIVE WORKS |
| | BALDWIN-LIMA-HAMILTON CORPORATION |
| | BALDWIN-LESSING-HAMILTON |
| | THE MIDVALE COMPANY |
| | THE DIAL CORPORATION |
| | THE NEW DIAL CORP. |
| | ALSTOM POWER, INC. |
| | ECOLAIRE HEAT TRANSFER, INC, HEAT EXCHANGE DIVISION |
| | ALSTOM HEAT EXCHANGE DIVISION |
| | GRISCOM-RUSSELL (product) |
| TODD SHIPYARDS CORPORATION | TODD PACIFIC SHIPYARDS CORPORATION |
| | SEATTLE-TACOMA SHIPBUILDING CORP. |

GENERAL DYNAMICS CORPORATION        CONVAIR
                                    VULTEE AIRCRAFT INC.
                                    CONSOLIDATED VULTEE AIRCRAFT CORPORATION
                                    ASBESTOS CORPORATION LIMITED

10.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES, and each of them, were and are engaged in the business of researching, manufacturing, fabricating, designing, modifying, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, endorsing, testing, authorizing, approving, certifying, facilitating, promoting, representing, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging, specifying, requiring, mandating, or otherwise directing and/or facilitating the use of, or advertising a certain product, namely asbestos and other products containing asbestos.

11.    At all times herein mentioned, defendants, their ALTERNATE ENTITIES and each of them, singularly and jointly, negligently, and carelessly researched, manufactured, fabricated, designed, modified, tested or failed to test, abated or failed to abate, warned or failed to warn of the health hazards, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, authorized, approved, certified, facilitated, promoted, installed, represented, endorsed, contracted for installation of, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised, a certain product, namely asbestos, and other products containing asbestos, in that said products caused personal injuries to users, consumers, workers, bystanders and others, including the plaintiff herein, (hereinafter collectively called "exposed persons"), while being used in a manner that was reasonably foreseeable, thereby rendering said products hazardous, unsafe and dangerous for use by "exposed persons".

12.    Defendants,  their ALTERNATE ENTITIES, and each of them, had a duty to exercise due care in the pursuance of the activities mentioned above and defendants, and each of them, breached said duty of due care.

////

13.     Defendants, their ALTERNATE ENTITIES and each of them, knew, or should have known, and intended that the aforementioned asbestos and products containing asbestos and related products and equipment, would be transported by truck, rail, ship, and other common carriers, that in the shipping process the products would break, crumble, or be otherwise damaged; and/or that such products would be used for insulation, construction, plastering, fireproofing, soundproofing, automotive, aircraft and/or other applications, including, but not limited to unpacking, preparing, using, sawing, drilling, chipping, hammering, scraping, sanding, breaking, removing, maintaining, inspecting, "rip-out", and other manipulation, resulting in the release of airborne asbestos fibers, and that through such foreseeable use and/or handling "exposed persons", including plaintiff herein, would use or be in proximity to and exposed to said asbestos fibers, which contaminated the packaging, products, environment, and clothing of persons working in proximity to said products, directly or through reentrainment.

14.     Plaintiffs have used, handled, or been otherwise exposed to asbestos and asbestos-containing products referred to herein in a manner that was reasonably foreseeable. Plaintiffs' exposure to asbestos and asbestos-containing products is on current information as set forth at various locations and circumstances in **Exhibit A**, attached to plaintiff's complaint and incorporated by reference herein.

15.     As a direct and proximate result of the acts, omissions, and conduct of the defendants, their ALTERNATE ENTITIES, and each of them, as aforesaid, plaintiffs' exposure to asbestos and asbestos-containing products caused severe and permanent injury, damage, loss, or harm to the plaintiff as set forth in **Exhibit A,** attached to plaintiffs' complaint and incorporated by reference herein.

16.     Plaintiffs are informed and believe, and thereon allege, that progressive lung disease, cancer, and other serious diseases are caused by inhalation or ingestion of asbestos fibers without perceptible trauma and that said injury, damage, loss, or harm results from exposure to asbestos and asbestos-containing products over a period of time.

////

////

17.    Plaintiffs each suffer from a condition related to exposure to asbestos and asbestos-containing products. Plaintiffs are not aware at the time of exposure that asbestos or asbestos-containing products presented risk of injury and/or disease.

18.    As a direct and proximate result of the aforesaid conduct of defendants, their ALTERNATE ENTITIES, and each of them, plaintiffs have suffered, and continue to suffer, permanent injuries and/or future increased risk of injuries to their persons, body and health, including, but not limited to, asbestosis, other lung damage, and cancer, and the mental and emotional distress attendant thereto, from the effect of exposure to asbestos fibers, all to their general damage.

19.    As a direct and proximate result of the aforesaid conduct of the defendants, their "alternate entities," and each of them, plaintiffs have incurred, are presently incurring, and will incur in the future, liability for physicians, surgeons, nurses, hospital care, medicine, hospices, x-rays and other medical treatment, the true and exact amount thereof being unknown to plaintiffs at this time, and plaintiffs pray leave to amend this complaint accordingly when the true and exact cost thereof is ascertained.

20.    As a further direct and proximate result of the said conduct of the defendants, their "alternate entities," and each of them, plaintiffs have incurred pecuniary losses, the full nature and extent of which are not yet known to plaintiffs; and leave is requested to amend this complaint to conform to proof at the time of trial.

21.    Defendants, their ALTERNATE ENTITIES, and each of them, and their officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, each of the acts set forth herein.

22.    Defendants, their "alternate entities," and each of them, are liable for the fraudulent, oppressive, and malicious acts of their ALTERNATE ENTITIES, and each of them, and each defendant's officers, directors and managing agents participated in, authorized, expressly and impliedly ratified, and had full knowledge of, or should have known of, the acts of each of their ALTERNATE ENTITIES as set forth herein.

////

23.    The herein-described conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was and is willful, malicious, fraudulent, outrageous and in conscious disregard and indifference to the safety and health of "exposed persons".  Plaintiffs, for the sake of example and by way of punishing said defendants, seek punitive damages according to proof.

WHEREFORE, plaintiffs pray judgment against defendants, their "alternate entities," and each of them, as hereinafter set forth.

SECOND CAUSE OF ACTION
(Products Liability)

AS AND FOR A SECOND, SEPARATE, FURTHER AND DISTINCT CAUSE OF ACTION FOR PRODUCTS LIABILITY, PLAINTIFFS COMPLAIN AS FOLLOWS: PLAINTIFF JOHN L. DAVIS COMPLAINS OF DEFENDANTS  VIAD CORP., TODD SHIPYARDS CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF WILLIAM LARSEN COMPLAINS OF DEFENDANTS BELL HELICOPTER TEXTRON, INC., THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF JAMES PIERCE, SR. COMPLAINS OF DEFENDANTS  TODD SHIPYARDS CORPORATION,  THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;  PLAINTIFF ROBERT SCHOELZEL COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY, VIAD CORP., TODD SHIPYARDS CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF NORRIS WALLACE COMPLAINS OF DEFENDANTS   GENERAL DYNAMICS CORPORATION, THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;  PLAINTIFF JAMES WATSON COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,  THEIR "ALTERNATE ENTITIES," AND EACH OF THEM;  PLAINTIFF ROBERT KACSUTA COMPLAINS OF DEFENDANTS  TODD SHIPYARDS CORPORATION,  THEIR "ALTERNATE ENTITIES," AND EACH OF THEM; PLAINTIFF RICHARD EDDY COMPLAINS OF DEFENDANTS GENERAL ELECTRIC COMPANY,  THEIR "ALTERNATE ENTITIES," AND EACH OF THEM:

24.    Plaintiffs incorporate herein by reference, as though fully set forth herein, the allegations contained in each paragraph of the First Cause of Action herein.

25. Defendants, their ALTERNATE ENTITIES, and each of them, knew and intended that the above-referenced asbestos and asbestos-containing products would be used by the purchaser or user without inspection for defects therein or in any of their component parts and without knowledge of the hazards involved in such use.

26. Said asbestos and asbestos-containing products were defective and unsafe for their intended purpose in that the inhalation of asbestos fibers causes serious disease and/or death. The defect existed in the said products at the time they left the possession of defendants, their "alternate entities," and each of them. Said products did, in fact, cause personal injuries, including asbestosis, other lung damage, and cancer to "exposed persons", including plaintiffs herein, while being used in a reasonably foreseeable manner, thereby rendering the same defective, unsafe and dangerous for use.

27. "Exposed persons" did not know of the substantial danger of using said products. Said dangers were not readily recognizable by "exposed persons". Said defendants, their ALTERNATE ENTITIES, and each of them, further failed to adequately warn of the risks to which plaintiffs and others similarly situated were exposed.

28. In researching, manufacturing, fabricating, designing, modifying, testing or failing to test, warning or failing to warn, labeling, assembling, distributing, leasing, buying, offering for sale, supplying, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising asbestos and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them, did so with conscious disregard for the safety of "exposed persons" who came in contact with said asbestos and asbestos-containing products, in that said defendants, their ALTERNATE ENTITIES, and each of them, had prior knowledge that there was a substantial risk of injury or death resulting from exposure to asbestos or asbestos-containing products, including, but not limited to, asbestosis, other lung damages and cancer. Said knowledge was obtained, in part, from scientific studies performed by, at the request of, or with the assistance of, said defendants, their ALTERNATE ENTITIES, and each of them, and which knowledge was obtained by said defendants, their ALTERNATE ENTITIES, and each of

1    them on or before 1930, and thereafter.

2          29.    On or before 1930, and thereafter, said defendants, their ALTERNATE

3    ENTITIES and each of them, were aware that members of the general public and other "exposed

4    persons", who would come in contact with their asbestos and asbestos-containing products, had

5    no knowledge or information indicating that asbestos or asbestos-containing products could

6    cause injury, and said defendants, their ALTERNATE ENTITIES, and each of them, knew that

7    members of the general public and other "exposed persons", who came in contact with asbestos

8    and asbestos-containing products, would assume, and in fact did assume, that exposure to

9    asbestos and asbestos-containing products was safe, when in fact said exposure was extremely

10    hazardous to health and human life.

11          30.    With said knowledge, said defendants, their ALTERNATE ENTITIES, and each

12    of them, opted to research, manufacture, fabricate, design, modify, label, assemble, distribute,

13    lease, buy, offer for sale, supply, sell, inspect, service, install, contract for installation, repair,

14    market, warrant, rebrand, manufacture for others, package and advertise said asbestos and

15    asbestos-containing products without attempting to protect "exposed persons" from or warn

16    "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos and

17    asbestos-containing products.  Rather than attempting to protect "exposed persons" from, or

18    warn "exposed persons" of, the high risk of injury or death resulting from exposure to asbestos

19    and asbestos-containing products, defendants, their ALTERNATE ENTITIES, and each of them,

20    intentionally failed to reveal their knowledge of said risk, and consciously and actively

21    concealed and suppressed said knowledge from "exposed persons" and members of the general

22    public, thus impliedly representing to "exposed persons" and members of the general public that

23    asbestos and asbestos-containing products were safe for all reasonably foreseeable uses.

24    Defendants, their ALTERNATE ENTITIES, and each of them, engaged in this conduct and

25    made these implied representations with the knowledge of the falsity of said implied

26    representations.

27    ////

28    ////

31.     The above-referenced conduct of said defendants, their ALTERNATE ENTITIES, and each of them, was motivated by the financial interest of said defendants, their ALTERNATE ENTITIES, and each of them, in the continuing, uninterrupted research, design, modification, manufacture, fabrication, labeling, assembly, distribution, lease, purchase, offer for sale, supply, sale, inspection, installation, contracting for installation, repair, marketing, warranting, rebranding, manufacturing for others, packaging and advertising of asbestos and asbestos-containing products.  In pursuance of said financial motivation, said defendants, their ALTERNATE ENTITIES, and each of them, consciously disregarded the safety of "exposed persons"  and in fact were consciously willing and intended to permit asbestos and asbestos-containing products to cause injury to "exposed persons" and induced persons to work with and be exposed thereto, including plaintiffs.

32.     Plaintiffs allege that the aforementioned defendants, their ALTERNATE ENTITIES, and each of them impliedly warranted their asbestos and asbestos-containing products to be safe for their intended use but that their asbestos and asbestos-containing products, created an unreasonable risk of bodily harm to exposed persons.

33.     Plaintiffs further allege their injuries are a result of cumulative exposure to asbestos and various asbestos-containing products manufactured, fabricated, inadequately researched, designed, modified, inadequately tested, labeled, assembled, distributed, leased, bought, offered for sale, supplied, sold, inspected, serviced, installed, contracted for installation, repaired, marketed, warranted, rebranded, manufactured for others, packaged and advertised by the aforementioned defendants, their ALTERNATE ENTITIES, and each of them and that plaintiffs cannot identify precisely which asbestos or asbestos-containing products caused the injuries complained of herein.

34.     Plaintiffs relied upon defendants', their "alternate entities'", and each of their representations, lack of warnings, and implied warranties of fitness of asbestos and their asbestos-containing products.  As a direct, foreseeable and proximate result thereof, plaintiffs have been injured permanently as alleged herein.

////

1    35.    As a direct and proximate result of the actions and conduct outlined herein,

2  plaintiffs have suffered the injuries and damages previously alleged.

3    WHEREFORE, plaintiffs pray judgment against defendants, their ALTERNATE

4  ENTITIES, and each of them, as hereinafter set forth.

5                                    **IV.**

6                                  **PRAYER**

7    WHEREFORE, plaintiffs pray judgment against defendants, their ALTERNATE

8  ENTITIES, and each of them in an amount to be proved at trial in each individual case, as

9  follows:

10    (a)    For plaintiffs' general damages according to proof;

11    (b)    For plaintiffs' loss of income, wages and earning potential according to proof;

12    (c)    For plaintiffs' medical and related expenses according to proof;

13    (d)    For plaintiffs' cost of suit herein;

14    (e)    For exemplary or punitive damages according to proof;

15    (f)    For damages for fraud according to proof; and

16    (g)    For such other and further relief as the Court may deem just and proper, including

17  costs and prejudgment interest.

18
   Dated: December 17, 2007              BRAYTON❖PURCELL LLP
19
                                         /s/  David R. Donadio
20
                                  By:    _____
21                                       David R.  Donadio
                                         Attorneys for Plaintiffs
22
                                  JURY DEMAND
23
      Plaintiffs hereby demand trial by jury of all issues of this cause.
24

25  Dated: December 17, 2007              BRAYTON❖PURCELL LLP

26                                       /s/  David R. Donadio

27                                By:    _____
                                         David R.  Donadio
28                                       Attorneys for Plaintiffs

EXHIBIT A

Plaintiff:    <u>JOHN L.DAVIS</u>

Plaintiff's injuries:   Plaintiff was diagnosed with asbestosis on or about January 2003.

Defendants:  Plaintiff contends that the asbestos-containing products to which he was or may
have been exposed to were manufactured, supplied, distributed, installed and/or contracted for
by Defendants.    Plaintiff's exposure to asbestos occurred at the following times and places, and
involved exposure to dust created by the contractors and the products of the entities listed below.
The exposure includes, <u>but is not limited,</u> to the following presently known contractors and the
manufacturers and distributors of asbestos-containing products:

| <u>Employer</u> | Location of<br><u>Exposure</u> | <u>Job Title</u> | Exposure<br><u>Dates</u> |
|---|---|---|---|
| Studio Auto Body | Studio Auto Body<br>Glendale, CA | Laborer | 1945-1946 |

Job Duties: Plaintiff worked as a laborer and assistant at his father's auto body car shop.
Plaintiff sanded the paint off cars,  swept up after the mechanics, and ran for auto parts.  Plaintiff
also performed some gas welding.  Plaintiff recalls wetting down asbestos blankets in order to
shield auto parts that could not get hot.   Plaintiffrecalls applying an asbestos putty that had a red
logo on it to automobiles. Plaintiff cut and installed gaskets that came in a roll and were gray.
Plaintiff installed these gaskets on engines by cutting them with metal shears and punching holes
in them.  Plaintiff currently does not recall any co-workers. Plaintiff currently contends that he
was exposed to asbestos during this employment.

| <u>Employer</u> | Location of<br><u>Exposure</u> | <u>Job Title</u> | Exposure<br><u>Dates</u> |
|---|---|---|---|
| Fowler Engineering Co.<br>917 Chestnut St.<br>Burbank, CA  91502 | Fowler Engineering Co.<br>Glendale, CA | Lather | 1948-1950;<br>1960-1962 |

Job Duties: 1948-1950: Plaintiff started out sweeping up dirt and debris.  Later, plaintiff learned
to operate the various milling machines, presses and grinders. Plaintiff worked in a machine shop
as a turret lathe operator.  Plaintiff also operated a drill press and bridgeport mill. Plaintiff made
gear blanks, worm gears, radar conductors, and terminals. Plaintiff manufactured small aircraft
parts, typewriters, model trains, high precision parts, and gear blanks. Plaintiff saw insulation
covering the motors of the machines he was working on.  The insulation was a fabric material
sandwiched between 2 metals and was whitish/gray in color.  From 1960-1962: Plaintiff worked
a hand turret lathe, and a DELTA radial arm drill.  Plaintiff recalls working with metal, bronze,
brass, gold, nylon, and a brown phenolic material used on electronics that had a cloth weave in

1

it. Plaintiff would drill holes into this phenolic material. Plaintiff also believes he worked on GENERAL ELECTRIC electric boxes. Plaintiff recalls working with Bud Bustler, location unknown. Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Navy | US Naval Training Center San Diego, CA | Seaman (Trainee) | 03/02/50-06/17/50 |
| | Naval Training Center Great Lakes, IL | Machinist (Trainee) | 6/20/50-10/6/50 |
| | USS PINE ISLAND (AV-12); Naval Repair Facility, Okinawa, Japan; Naval Repair Facility, Yokosuka, Japan | Machinist (Machinist Mate) | 10/7/50-11/11/52 |
| | USS VALLEY FORGE (CV-45) (boarded at Naval Air Station North Island San Diego, CA) | Machinist (Machinist Mate) | 11/14/52- 12/7/53 |

Job Duties: In San Diego: Plaintiff trained on a full boiler which was located on a land-based mockup ship. Plaintiff underwent firefighter training. Plaintiff wore asbestos gloves and asbestos protective clothing during the training. Plaintiff completed 14 weeks of Class "A" Machinist Mate School at Naval Training Center, Great Lakes, Illinois. Plaintiff performed repairs on the steam engines, generators, fresh water systems, boiler blowers, turbines, and the main propulsion systems in the engine rooms and boiler rooms. Plaintiff removed and replaced gaskets.. Plaintiff made gaskets from sheets of gasket material. Plaintiff installed and removed valves. Plaintiff would take the valves apart and put them back together as part of his auxiliary maintenance training. Plaintiff used formed asbestos cord to repack the steam valves. Plaintiff recalls CRANE CO. and GROVE VALVE & REGULATOR CO. valves. Plaintiff recalls seeing a WORTHINGTON centrifugal pump. Plaintiff learned how to overhaul and reassemble turbines. Plaintiff recalls working on ALLIS-CHALMERS and GENERAL ELECTRIC COMPANY turbines. Plaintiff performed maintenance on the drive units of GENERAL ELECTRIC COMPANY generators. In order to perform his duties, plaintiff removed insulation.

While serving on board the USS PINE ISLAND (AV-12): Plaintiff boarded this ship in Oakland while it was being re-commissioned. Plaintiff spent the first 3-4 weeks down in the engine room cleaning out trash. Plaintiff was ranked as a fireman 1st class. Plaintiff recalls there

were 2 boilers on this ship.  Plaintiff recalls seeing firemen working on the boilers.  Plaintiff was present while the insulation on the boilers was removed and re-applied, which was a very dusty process.  Plaintiff also recalls seeing outside contractors work on the boilers, blowers, and pumps while in drydock in Oakland.  Plaintiff believes they were replacing friction gaskets on the boilers.  Plaintiff recalls the outside contractors wore coveralls that were gray or blue.  This ship initially set sail for Manila and Guam and then underwent repairs in Okinawa, Japan.  While at sea  plaintiff was assigned to the engine room where he packed valves in the engineering spaces.  Plaintiff recalls primarily working on steam valves, and installing GARLOCK rope packing.  Plaintiff recalls removing and installing packing on GLOBE, SERVO and CRANE CO. valves.  Plaintiff also scraped off CRANE flange gaskets with a scraper and wire brush.  Plaintiff believes that the CRANE gasket material and flanges were original to the CRANE CO. valves.  Plaintiff saw a new CRANE CO. valve installed on a steam line.   Plaintiff also saw others remove insulation on the metering valves atop the turbine.  Plaintiff had to remove a WORTHINGTON pump in order to perform maintenance on the turbine shaft.  Plaintiff removed and replaced packing on pumps as part of his service.  Plaintiff also performed maintenance on the gear box assembly which required him to physically enter the turbine.  Plaintiff believes the turbine was manufactured by ALLIS-CHALMERS.  Plaintiff had to repatch insulation on the metering valve on this turbine, as well as remove and install packing glands.  Plaintiff also checked gland seals on the generators.  Plaintiff saw other perform work on the boilers while he stood above them on the upper grating.  Plaintiff was also in close proximity to others who removed and installed pipe insulation.  Plaintiff recalls maintenance materials were stored in the "Pantry" of the ship.  Plaintiff recalls working with Dennis Camping, location unknown.  The <u>PINE ISLAND</u> was also assigned to Iwakuni, Japan, to service aircraft patrolling the Korean Coast, and at the Pescadores Islands to service aircraft patrolling the Formosa Straits and the China Coastline in the East China Sea.  This ship also went into dry dock in Yokosuka for general maintenance after hitting a submarine.

While serving on board the <u>USS VALLEY FORGE</u> (CV-45), plaintiff participated in the North Korean Aggression, Communist China Aggression, Inchon Landing, First UN Counter Offensive, Communist China Spring Offensive, UN Summer and Fall Offensive, Second Korean Winter, Korean Defense Summer and Fall, Third Korean Winter, and Summer and Fall 1953.  Plaintiff served on this ship for 3 years and was ranked a petty officer 3rd class machinist mate.  Plaintiff's duties included standing throttle watch on the number 1 throttle, which controlled the speed of the ship.  This work took place directly in the Engine Room.  Plaintiff also performed general maintenance duties on valves.  Plaintiff recalls replacing a CRANE CO. valve.  Plaintiff scraped off the old gaskets of this CRANE CO. valve with a scraper and hand wire brush.  Plaintiff replaced this valve with another CRANE CO. valve. Plaintiff recalls a red stripe on the box the valve came in.  Plaintiff removed and installed packing on valves.  Plaintiff would sometimes use an air hose to blow the packing material out.  Plaintiff cut new gaskets by hand from sheet gasket material that was dark gray in color.  Plaintiff removed and installed packing and gland seals on ALLIS CHALMERS and WORTHINGTON pumps.  Plaintiff removed and installed insulation on the pipes.  Plaintiff worked on turbines where he would remove the outside insulation and replace a gasket and the packing.  Plaintiff replaced this packing with CERAMETALLIC or GARLOCK packing. Plaintiff visited and saw others working in the boiler rooms.  Plaintiff recalls others peeling off gaskets from the fuel oil pumps in the boiler room.

Plaintiff currently does not recall any co-workers. Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Menasco, Inc. aka Colt Industries, Inc. 430 Park Avenue New York, NY 10022 | Menasco Manufacturing Burbank, California | Machinist | 1954-1959 |

Job Duties: Plaintiff started as a shop cleaner, then became a lathe operator, grinder, hydraulic press operator, and finally a machinist. Plaintiff also worked in the heat treatment facilities, the machine shop, welding, and paint shops. Plaintiff assembled tire and multi-disc brakes components as part of aircraft landing assemblies. Plaintiff replaced parts in the GENERAL ELECTRIC electrical boxes on the machines themselves. Plaintiff worked in the heat treatment and welding areas assembling and manufacturing parts to be used in aircraft landing gear. Plaintiff was saw others working on gaskets that were used with oil and water equipment. Plaintiff also saw others working with packing and compressors. Plaintiff one time went to Los Angeles Airport on one occasion to change out the nose gear to replace a cam and seals in an airplane. Plaintiff worked with the salt pits which were lined with insulation and had a lid that had asbestos insulation. Plaintiff made repairs to the lid and removed some of the insulation in the process. Plaintiff also worked on high pressure vessels for Nike missiles. Plaintiff used asbestos blankets and gloves in the regular performance of his job duties. Plaintiff currently does not recall any co-workers. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Cobra Tools 3001 Floyd Burbank, CA 91504 | Cobra Tools Burbank, CA | Machinist | 1955-1957 |

Job Duties: Plaintiff recalls that this was a part-time job. Plaintiff operated small machines and lathes. Plaintiff currently does not recall any co-workers. Plaintiff is currently unaware if was exposed to asbestos during this employment.

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|

| Falcon Aviation Supply Co.<br>522 W. Garfield<br>Glendale, CA  91204 | Falcon Aviation<br>Supply Co.<br>Glendale, CA | Machinist | 1955-1956 |

Job Duties: Plaintiff operated small machines and lathes. Plaintiff manufactured plastic rings for armatures. Plaintiff currently does not recall any co-workers. Plaintiff is currently unaware if was exposed to asbestos during this employment.

| Employer | Location of<br>Exposure | Job Title | Exposure<br>Dates |
| --- | --- | --- | --- |
| General Controls Co.<br>801 Allen Avenue<br>Glendale, CA 91201 | General Controls Co.<br>801 Allen Avenue<br>Glendale, CA | Machinist | 1960; 1962-1963 |
| ITT General Controls, Inc.<br>801 Allen Avenue<br>Glendale, CA 91201 | General Controls Co.<br>801 Allen Avenue<br>Glendale, CA | Machinist | 1963-1964 |
| ITT Corporation<br>4 West Red Oak Lane<br>White Plains, NY 10604 | General Controls Co.<br>801 Allen Avenue<br>Glendale, CA | Machinist | 1965 |

Job Duties: Plaintiff manufactured aircraft parts. Plaintiff worked with bakelite at this location. Plaintiff worked with bakelite 30-40 times.  Plaintiff would grind the bakelite material.  Plaintiff recalls the bakelite would break and shatter when others tried it with the machining tools..  In the model shop, plaintiff cut out paper gaskets in the model shop that were an orangish-yellow color. Plaintiff recalls a boiler at this location.  Plaintiff also performed work on slide valves that were manufactured by GENERAL CONTROLS.  Plaintiff saw other making airplane valves.  Plaintiff went to Los Angeles International Airport on one occaseion to change out the landing gear, bearings and seals on various aircraft. Plaintiff currently does not recall any co-workers. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of<br>Exposure | Job Title | Exposure<br>Dates |
| --- | --- | --- | --- |
| Caldwell Engine Laboratories<br>8256 San Fernando Road<br>Sun Valley, CA  91352 | Caldwell Engine<br>Laboratories<br>Sun Valley , CA | Machinist | 1964 |

Job Duties: Plaintiff  manufactured metalsdies for aircraft parts. Plaintiff also cast the aircraft parts. Plaintiff currently does not recall any co-workers. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| DII Industries LLC Houston, TX 77242 | DII Industries Los Angeles, CA | Machinist | 1965-1966 |

Job Duties: Plaintiff built parts for train propulsion systems. Plaintiff used asbestos gloves occasionally. Plaintiff currently does not recall any co-workers. Plaintiff currently contends he was exposed asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Garrett Corp. 111 S. 34th Street Phoenix, AZ 85010 | Garrett Airesearch Torrance, CA; Los Angeles International Airport, Los Angeles, CA | Machinist | 1966-1971 |

Job Duties: Plaintiff worked at the Torrance plant and the Los Angeles International Airport site as a machinist making parts for turbines used in jet engines. Plaintiff recalls the machine he worked on was manufactured by PRATT & WHITNEY. Plaintiff believes that POTTER & JOHNSON may have been ordering parts. Plaintiff currently does not recall any co-workers. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Pacific Pumps | Pacific Pumps Burbank, CA | Machinist | 1966-1970 |

Job Duties: Plaintiff manufactured pumps and different parts for various sizes of pumps for the Feather River project. Plaintiff worked in close proximity to the furnace. Plaintiff worked on the manufacturing of the sun shade for the Hubble Telescope. Plaintiff currently does not recall any co-workers. Plaintiff currently contends that he was exposed to asbestos during this employment.

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|

| Howard Turner Manufacturing Co. 2545 N. Palm Drive Signal Hill, CA  90755 | Howard Turner Manufacturing Co. Signal Hill, CA | Machinist | 1971 |

Job Duties: Plaintiff worked in the machine shop fabricating parts for use in the oil fields. Plaintiff currently does not recall any co-workers. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
| --- | --- | --- | --- |
| Murdock, Inc. 15800 S. Avalon Blvd. Compton, CA  90220 | Murdock, Inc. Compton, CA | Machinist | 1971 |

Job Duties: Plaintiff manufactured tool parts, aircraft parts, and parts for the Hubble Telescope. Plaintiff used lathes, grinders, and small part presses. Plaintiff worked on the sun shields that popped out once they units were in space.  Plaintiff currently does not recall any co-workers. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
| --- | --- | --- | --- |
| Hone Manufacturing Co., Inc. 1015 Santa Rosa Avenue Santa Rosa, CA  95404 | Hone Manufacturing Co., Inc. Unknown location Southern California | Machinist (Supervisor) | 1973-1975 |

Job Duties: Plaintiff manufactured automotive parts, internal parts and casings, and external overdrive units,. Plaintiff worked on 4 wheel drive, passenger, and commercial vehicles. Plaintiff volunteered to perform pit crew work on a Formula 5000 LOLA T-4 auto that the company sponsored.  Plaintiff currently does not recall any co-workers. Plaintiff currently contends he was exposed to asbestos during this employment.

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
| --- | --- | --- | --- |
| Trivent Engineering, Inc. 4346 Kings Canyon Road Carson City, NV  89703 | Trivent Engineering, Inc. Unknown location | Machinist | 1975-1976 |

Job Duties: Plaintiff does not recall the specifics of this employment. Plaintiff currently does not recall any co-workers. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| AMI Industries, Inc.<br>1275 N. Newport Road<br>Colorado Springs, CO 80916 | AMI Industries, Inc.<br>1275 N. Newport Road<br>Colorado Springs, CO | Machinist | 1976 |

Job Duties: Plaintiff built parts used to assemble seats for aircraft and automobiles. Plaintiff currently does not recall any co-workers. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Temple Enterprise<br>Penrose, CO 81240 | Temple Enterprise<br>Penrose, CO | Machinist | 1976-1977 |

Job Duties: Plaintiff manufactured aircraft parts using the punch die method. Plaintiff also manufactured wood burning stoves. Plaintiff currently does not recall any co-workers. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Kontinental Industries Corporation<br>84 N. Precision<br>Pueblo West, CO 81007 | Kontinental Industries Corp.<br>84 N. Precision<br>Pueblo West, CO | Machinist | 1977 |

Job Duties: Plaintiff manufactured leather goods.   Plaintiff worked on JUKI industrial sewing machines and installed a roll press.  Plaintiff helped remodel the interior and installed new electrical wiring.  Plaintiff currently does not recall any co-workers. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Wilcoxson Buick-Cadillac-GMC, Inc.<br>902 N. Santa Fe Avenue<br>Pueblo, CO 81003-4146 | Wilcoxson Buick-Cadillac-GMC, Inc.<br>902 N. Santa Fe Avenue<br>Pueblo, CO | Auto Mechanic | 1978-1979 |

8

Job Duties: Plaintiff performed body and fender repair at the auto dealership.  Plaintiff recalls applying and sanding BONDO and BLACK MAGIC FILLER to repair the cars. Plaintiff performed a brake job on a Cadillac at this location.  Plaintiff currently does not recall any co-workers. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| EMS Machine<br>864 Country Rd. 323<br>Rifle, CO  81650 | EMS Machine<br>Rye, CO | Gunsmith | 1978 |

Job Duties: Plaintiff designed and manufactured handguns and rifles. Plaintiff also repaired guns. Plaintiff worked with gasket material.  Plaintiff helped perform mechanical work on a Corvette at this location.   Plaintiff currently does not recall any co-workers. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| CF&I Steel Corporation<br>Pueblo, CO  81002 | CF&I Steel Corporation<br>Pueblo, CO | Machinist | 1979-1982 |

Job Duties: Plaintiff performed duties as a millwright, maintenance man and machinist at a steel mill. Plaintiff was responsible for keeping the machinery running and for repairing the conveyor belts that moved the iron ore.  Plaintiff removed and replaced insulation on the pipes that ran throughout the entire mine.  Plaintiff also performed general overhauls and replacement of valves, including the removal and replacement of packing on valves that regulated water, gas, and air.  Plaintiff recalls using GARLOCK packing.  Plaintiff also worked on flange gaskets and would remove excess gasket material with a scraper or wire brush.   Plaintiff spent 75% of his time maintaining and fixing the massive conveyor belts that ran throughout the plant. Plaintiff currently does not recall any co-workers. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|----------|----------------------|-----------|----------------|
| Jacobi Industries<br>1993 Ritchey St.<br>Santa Ana, CA  92705 | Jacobi Industries<br>1993 Ritchey St.<br>Santa Ana, CA | Machinist | 1983 |

Job Duties: Plaintiff operated vertical lathes. Plaintiff currently does not recall any co-workers. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Voto Machine 1400 E. Katella Ave. #225 Orange, CA  92867 | Voto Machine 1400 E. Katella Ave. #225 Orange, CA | Machinist | 1983-1989 |

Job Duties: Plaintiff performed industrial maintenance repair for Thomas' Muffins, including crane repair and service. Plaintiff performed welding. Plaintiff currently does not recall any co-workers. Plaintiff is currently unaware if he was exposed to asbestos during this employment. for a full

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Dicon, Inc. 24201 Orange Ave. Perris, CA  92570 | Salvation Army Adult Rehabilitation Center Perris, CA | Machinist | 1986-1987 |

Job Duties: Plaintiff built die castings. Plaintiff built a steel cage for a life-size stuffed lion. Plaintiff currently does not recall any co-workers. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| International Permalite, Inc. Pacific Palisades, CA  90272 | International Permalite, Inc Pacific Palisades, CA | Machinist | 1989-1990 |

Job Duties: Plaintiff performed the production of fiberboard for insulation that was to be used as siding on mobile homes. Plaintiff currently does not recall any co-workers. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

Throughout his career plaintiff worked with valves manufactured by GROVE, CRANE CO., DELTA, GRACO, and HAMILTON. Plaintiff worked with pumps manufactured by ALLIS CHALMERS, BUFFALO, and BERKELEY.  Plaintiff worked with WORTHINGTON compressors.

NON OCCUPATIONAL EXPOSURE
1929 Model A Ford - Plaintiff performed the first brake job on this automobile in 1945 or 1946. Plaintiff recalls the vehicle had riveted, drum style brakes.  Plaintiff recalls the car had approximately 50,000 miles on it and the brakes were scrubbed down to the rivets Plaintiff bought new brakes from PEP BOYS in Glendale.  Plaintiff cleaned out all 4 brake assemblies with compressed air from his dad's shop.

10

1949 JAGUAR (FORD MOTOR COMPANY)
Plaintiff purchased this vehicle new. Plaintiff changed the original brakes and installed
RAYBESTOS replacement brakes. Plaintiff used compressed air to blow out the brake assembly.
Plaintiff currently contends that he was exposed to asbestos during this automotive repair.

1950 FORD (FORD MOTOR COMPANY)
Plaintiff bought this vehicle used in 1954. Plaintiff contends that he changed the original brakes
because the car only had approximately 50,000 miles on it.. Plaintiff used compressed air to
blow out the brake assembly. Plaintiff replace these brakes with FORD brakes. Plaintiff
purchased replacement brakes from PEP BOYS in Glendale.   Plaintiff also removed the exhaust
manifold gaskets which plaintiff believes were original to the car.  Plaintiff cleaned these gaskets
off with a wire brush.  Plaintiff bought an exhaust manifold kit from PEP BOYS. Plaintiff recalls
that the box  had FORD written on it.  Plaintiff recalls giving PEP BOYS the part number from
the manual.  Plaintiff currently contends that he was exposed to asbestos during this automotive
repair.

1953 or 1955 Jaguar 120-J: Plaintiff purchased this car used with more than 50,000 miles on it
from Edward Camberg, his brother in law.  Plaintiff converted it to a race car.  Plaintiff recalls
seeing 'Jaguar' written on the back of the caliper assembly bolt.  Plaintiff performed a brake job
on this automobile and used an air hose to clean out the wheel wells.  Plaintiff recalls purchasing
and arcing brakes that said JAGUAR on the box from a parts house in Culver City.  Plaintiff
believes he removed the original clutch from this car and replaced it with a diaphragm clutch.
Plaintiff also installed a new fly wheel and exhaust system.  Plaintiff removed the exhaust
gaskets from the manifold of this automobile, and purchased replacement exhaust gaskets from
MOSS MOTORS.

1957 VOLVO (VOLVO CARS OF NORTH AMERICA, INC.) Sedan
Plaintiff bought this vehicle new. Plaintiff changed the original brakes. Plaintiff used compressed
air to blow out the brake assembly. Plaintiff currently contends that he was exposed to asbestos
during this automotive repair.

Home Remodel

Plaintiff  replaced valves at the family home 8-10 times on the sink and various waterlines.
Plaintiff recalls seeing CRANE on a valve he replaced.  This was a ball valve and was used on a
water line, the valves was 1 inch and bolted on.


Plaintiff:    JAMES L. PIERCE SR.
Plaintiff's injuries:   Plaintiff was diagnosed with asbestosis and asbestos-related pleural disease
on or about November 2004.

Defendants:  Plaintiff contends that the asbestos-containing products to which he was or may

have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.   Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, <u>but is not limited,</u> to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Air Force | US Air Force Various locations including the following: | | 10/3/1946- 12/16/1952 |
| | US Air Force Lackland Air Force Base San Antonio, TX | Private | |
| | US Air Force Lowery Air Force Base Aurora, CO | Auto Mechanic (Trainee) | 12/1946-3/1947 |
| | US Air Force Selfridge Air Force Base Mt. Clemens, MI | Auto Mechanic | |
| | US Air Force Keesler Air Force Base Biloxi, MS | Aircraft Mechanic (Trainee) | |
| US Air Force (CONT.) | US Air Force Yokota Air Force Base Japan | Auto Mechanic | |
| | US Air Force Shaw Air Force Base Sumter, SC | Auto Mechanic | |

Job Duties: Plaintiff completed basic training at Lackland Air Force Base. At Lowery Air Force Base, plaintiff completed auto mechanic training.  Plaintiff took apart engines manufactured by FORD, GENERAL MOTORS, and DAIMLERCHRYSLER JEEPS.  Plaintiff also replaced brakes and gaskets on the vehicles manufactured by the aforementioned companies.  Plaintiff used an air compressor to clean the brakes.  At Selfridge Air Force Base, plaintiff performed inspection and general maintenance in the motor pool.  Plaintiff replaced brakes, clutches, and

gaskets on low mileage vehicles manufactured by GENERAL MOTORS, FORD, and DAIMLERCHRYSLER JEEPS. Plaintiff worked alongside other mechanics performing the same duties. Plaintiff also assisted in repairing and changing filters in air conditioning units and heating units in the base housing. At Keesler Air Force Base, plaintiff received basic aircraft mechanic training before being sent to Yokota Air Force Base. At Yokota Air Force Base and Shaw Air Force Base, plaintiff performed the same auto mechanic duties as mentioned at Selfridge Air Force Base. Plaintiff also assisted in repairing and changing filters in air conditioning units and heating units in the main buildings on base. Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Casper Plumbing & Heating Co., Box 1086 Casper, WY | Casper Tin Shop Casper, WY | Sheet Metal Worker | 1/1953-2/1953 (1 month) |
| | Various homes and businesses in Casper, WY and surrounding area | | |

Job Duties: Plaintiff fashioned metal gutters and drains on homes and businesses. Plaintiff performed heating and air duct installation. Plaintiff insulated cold air and heat ducts with asbestos paper. Plaintiff worked alongside welders. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| The Gallagher Transfer, 1460 W. Dakota Ave. Denver, CO | Gallagher Freight Casper, WY | Dockman | 2/1953-3/1953 (1 month) |

Job Duties: Plaintiff loaded and unloaded boxed items in and from trucks and box cars. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| The Texas Company | Texaco Oil Refinery | Laborer | 4/1953-5/1953 (1 |

135 East 42nd Street          Casper, WY                                    month)
New York, NY

Job Duties: Plaintiff assisted pipefitters, insulators, and welders.  Plaintiff laid pipes, removed
and applied PABCO insulation and installed PABCO pre-fabricated pipecovering.  Plaintiff
replaced valves, pumps, and steam traps.  Plaintiff dug trenches.  Plaintiff replaced refractory
inside the boilers due to a burn out.  Plaintiff hammered and chipped the old refractory and
mixed the refractory mortar.  Plaintiff insulated turbines, heat exchangers, and generators.
Plaintiff used an air compressor to clean the finished products.  Plaintiff swept and cleaned up
after the other employees.  Plaintiff loaded and unloaded shingles and roofing felt to from trucks
and box cars.  Plaintiff worked alongside the following trades: pipefitters, welders, insulators,
boilermakers, and steamfitters.  Plaintiff recalls others removing asbestos gaskets near him.
Plaintiff recalls supervisor Dick Folk, address currently unknown.  Plaintiff currently contends
that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Swain Construction Company Corp., PO Box 498 St. Matthews, SC | Swain Construction Co. Various residential and commercial buildings in Kingstree, SC and surrounding area | Laborer | 6/1953-7/1953 |

Job Duties: Plaintiff recalls working mainly on remodeling projects.  Plaintiff performed tear
downs and demolition work.   Plaintiff removed construction materials and walls.  Plaintiff
cleaned and swept after the trades.  Plaintiff helped the insulators install pipe insulation.
Plaintiff assisted roofers in cutting roofing felt and installing shingles.  Plaintiff worked with
roofing gravel and tar.  Plaintiff assisted the following trades: carpenters, plumbers, pipefitters,
roofers, and insulators.  Plaintiff recalls working alongside electricians cutting and routing
electrical wires.  Plaintiff drove trucks and assisted mechanics with repairs on trucks and
machinery.  Plaintiff recalls supervisor John Spearman, Kingstree, South Carolina.  Plaintiff
currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Unknown employer | Various residential buildings, Kingstree, SC | Exterminator | 5/1953-6/1953 (about 1 month or less) |

Job Duties: Plaintiff sprayed pesticides in and around residential buildings.  Plaintiff recalls
employer Dick (last name unknown), address currently unknown.  Plaintiff is currently unaware
if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Moses Collis (Collis Plumbing) 303 W. Academy St. Kingstree, SC | Collis Plumbing Various residential and commercial locations in Kingstree, SC | Plumber (Helper) | 7/1953-12/1953 |

Job Duties: Plaintiff performed work on new construction and existing buildings. Plaintiff assisted a plumber with plumbing repairs, removed insulation, and removed sections of pipes. Plaintiff installed and removed heaters and furnaces. Plaintiff used OWENS ILLINOIS KAYLO and PABCO insulating cement. Plaintiff poured sacks of asbestos insulation powder, added water, and mixed them in a trough. Plaintiff applied the insulation to pipes alongside a plumber who did the same thing. Plaintiff was near the plumber when he was performing welding and soldering work. Plaintiff recalls supervisor Mose Collis, deceased; and co-worker Bob Sypolt, Kingstree, South Carolina. Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Unknown employer | Various locations in and around Columbia, SC and Georgia | Professional Athlete | 1/1954-3/1954 |

Job Duties: Plaintiff boxed professionally. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Interstate Life & Accident Insurance Company, 1301 Gulf Life Drive Jacksonville, FL | Interstate Life & Accident Insurance Company, Various locations in Columbia, SC | Insurance Agent | 3/1954-9/1954 |

Job Duties: Plaintiff collected insurance premiums and sold insurance. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Palmetto State Life Insurance Company, | Palmetto Life Insurance Company, | Insurance Agent | 9/1954-3/1955 |

Box 528                          Various locations in
Columbia, SC                     Sumter, SC

Job Duties: Plaintiff collected insurance premiums and sold insurance.  Plaintiff is currently
unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Princeton Worsted Mills Inc.<br>129 Bloomsbury Street<br>Trenton, NJ | Princeton Worsted Mill<br>Kingstree, SC | Maintenance<br>Mechanic | 3/1955-4/1955 (1 month) |

Job Duties: Plaintiff maintained electric and steam machinery.  Plaintiff oiled, lubricated, and
helped repair the machines.  Plaintiff recalls a mechanic replaced clutches.  Plaintiff loaded and
unloaded textile materials.  Plaintiff is currently unaware if he was exposed to asbestos during
this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Crane Co.<br>836 S. Michigan Ave.<br>Chicago, IL | Crane-O'Fallon Plumbing<br>& Heating,<br>Warehouse and Loading<br>Area,<br>Casper, WY | Warehouseman | 4/5/1955-<br>5/29/1956 |

Job Duties: Plaintiff took inventory on pipes (copper, steel, and pvc); furnaces; heaters; CRANE
CO. valves; pumps; gaskets; packing; and other plumbing materials.  Plaintiff loaded and
unloaded  these items from box cars and trucks.  Plaintiff handled OWENS ILLINOIS KAYLO,
PABCO sacks of insulating cement and boxes of pre-fabricated pipecovering, and JOHNS-
MANVILLE sacks of insulating cement and boxes of pre-fabricated pipecovering.  Plaintiff
recalls supervisor Roberts (first name unknown), address currently unknown.  Plaintiff recalls
co-worker and brother Bob Pierce, deceased.  Plaintiff currently contends that he was exposed to
asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Rocky Mountain Nurseries<br>726 No. Park Street<br>Casper, WY | Rocky Mountain Nurseries,<br>Casper, WY | Gardener<br>(helper) | 4/1956-6/1956<br>(spring: 1-2 months) |

Job Duties: Plaintiff performed gardening duties part time.  Plaintiff loaded customers' cars and

unloaded merchandise from delivery trucks.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Wyoming Air National Guard, 153 AT GP Cheyenne, WY | Air National Guard Casper, WY | Cook | 1957-1965 |
| Army National Guard | Army National Guard Long Beach, CA | Trainee | 1965-1967 |

Job Duties: Plaintiff cooked.  While in Long Beach, plaintiff recalls receiving routine military training, including drilling exercises and weapons handling.   Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| ExxonMobil Oil Corp. PO Box 3187 Houston, TX | Mobil Oil Refinery E. Yellowstone Highway Casper, WY | Loader | 5/1956-1/1/1957 |
| | | Insulator (apprentice) | 1/2/1957-5/31/1959 (little over 2 years) |
| | | Water Tester & Treater | 6/1959-7/1965 |

Job Duties: Plaintiff loaded asphalt into trucks and tankers as a loader for about six months.  Plaintiff then became an insulator apprentice.  Plaintiff removed pipe insulation from pipes and stripped insulation from pumps, furnaces, steam drums, and heaters.  Plaintiff removed and laid new refractory materials inside the boiler.  Plaintiff wore 3M mask when inside the boiler.  Plaintiff used OWENS ILLINOIS KAYLO, PABCO, JOHNS-MANVILLE, ARMSTRONG, and CELOTEX pre-fabricated pipecovering and insulation.  Plaintiff assisted insulators in this work.  Plaintiff re-packed INGERSOLL-RAND pumps and other brands of pumps.  As a water tester, plaintiff tested and treated water in the boiler house and all other areas of the refinery.  Throughout his employment at Mobil Oil Refinery, plaintiff worked alongside operators, pipefitters, insulators insulating pipes, electricians wiring, boilermakers performing work on

17

tubes and boilers, steamfitters working on pipes, and carpenters building scaffolds. Plaintiff used an air compressor to blow the residue from the work. Plaintiff recalls supervisor George Clark, deceased. Plaintiff recalls the following co-workers: brother Ray Pierce, deceased; and Cal Campbell, deceased. Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Home Reader Service Inc.<br>111 10th Street<br>Des Moines, IA | Home Reader Service Inc.<br>Various locations in<br>Casper, WY | Salesman | 7/1958-9/1959<br>(evenings) |

Job Duties: Plaintiff sold magazine and periodical subscriptions door-to-door of residential homes. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Culverts & Industrial Supply Inc.,<br>PO Box 1300<br>Mills, WY | Culverts & Industrial Supply Inc.,<br>Unknown location | Laborer | 7/1962-9/1962 |

Job Duties: Plaintiff is currently unable to recall the specifics of this employment. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| H. P. Blake<br>1207 N. Durbin<br>Casper, WY | Shoshone Indian Reservation,<br>WY | Laborer | 7/1962-9/1962 |

Job Duties: Plaintiff dug trenches. Plaintiff installed galvanized culverts and resurfaced the road. Plaintiff recalls working with three other Mobil employees, other contractor employees, and tribal laborers. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| ExxonMobil Oil Corp.<br>West Coast Pipeline (part of | West Coast Pipeline<br>Terminal Island, CA | Gauger | 7/1965- 9/1974 |

Mobil Oil Corp. subsidiary)
PO Box 3187
Houston, TX

Job Duties: Plaintiff gauged oil tanks and checked that pumps and valves were operating properly. Plaintiff ensured there were no leakage in the pipes. Plaintiff assisted pipefitters in re-packing valves and pumps. Plaintiff was in close proximity when MOBIL OIL employees from Torrance/Wilmington, California, replaced valves and pumps. Plaintiff assisted the MOBIL OIL employees in valve and pump replacements and pipefitters in repairing broken pipes. Plaintiff also assisted insulators with insulating pipes. Plaintiff used OWENS-CORNING KAYLO, PABCO, JOHNS-MANVILLE, ARMSTRONG, and CELOTEX. Plaintiff also mixed these insulation himself. Plaintiff recalls facility manager Harris (first name unknown), address currently unknown; and foreman Ray Hietala, address currently unknown. Plaintiff recalls the following co-workers: Ray Hardy, Eddie Miller, Gene Eggleston, Archy Pearce, Bill Barnes, Stan Lopp, David Mejia, Jack Rogers, Bill Sheehan, Ralph Ackert, Tom Egdahl, Keith Hancock, Jim Hamlett, Frank Suarez, John Bowen, Roy Ericksen, all addresses currently unknown. Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Department of Defense | Long Beach Naval Shipyard, Shop 64 (later became Shop 56) Long Beach, CA | Insulator | 11/8/1976-1/3/1994 |

Job Duties: Plaintiff worked in Insulation Shop 64, which later became 56 when it was moved to a different facility. Plaintiff recalls the Navy was mandated to replace all asbestos insulation pads on ships with fiberglass insulation pads. In order to create these pads, plaintiff used old asbestos insulation pads that came directly off of the ships. Plaintiff opened the insulation pads and removed the asbestos filling with an electric knife. Plaintiff would then use the insulation pads as patterns to replicate the shape and size. Plaintiff cut fiberglass for the new insulation pads and sewed up the pads with a sewing machine and pneumatic button machine. Plaintiff recalls the asbestos insulation pads were from all parts of ships, including boilers, pumps, valves, pipes, and furnaces. Plaintiff stayed in the shop and the insulators brought the asbestos insulation pads to him. Plaintiff replicate new insulation pads off of existing asbestos insulation pads from various ships including the following: ANCHORAGE (LSD-36); ARNOLD J. ISBELL (DD-869); BALLIS; BELLEAU WOOD (LHA-3); BERKELEY (DDG-15); BRADLEY (DE-1041; FF-1041); BRINKELY BASS (DD-887); BRISBANE (DDG-27); BUCHANAN (DDG-14); CAMDEN (AOE-2); CANBERRA (CA-70; CAG-2); CONSTELLATION (CVA-64); CORAL SEA (CVB-43; CVA-43); COWELL (DD-547); DAVID R. RAY (DD-971); DEFIANCE (PG-95); ENTERPRISE (CVAN-65; CVN-65); GRIDLEY (DLG-21; CG-21); HALSEY (DLG-23; CG-23); HORNE (CG-30); HORNET (CV-

12; CVA-12; CVS-12); <u>HULL</u> (DD-945); <u>MISSOURI</u> (BB-63); <u>MORTON</u> (DD-948); <u>NEW JERSEY</u> (BB-62); <u>NORTON SOUND</u> (AV-11; AVM-1); <u>O'CALLAHAN</u> (DE-1051; FF-1051); <u>OGDEN</u> (LPD-5); <u>OKINAWA</u> (LPH-3); <u>OLDENDORF</u> (DD-972); <u>PAUL F. FOSTER</u> (DD-964); <u>PAUL REVERE</u> (APA-248; LPA-248); <u>PELELIU</u> (LHA-5); <u>PIGEON</u> (ASR-21); <u>POINT DEFIANCE</u> (LSD-31); <u>ROANOKE</u> (AOR-7); <u>SCHOFIELD</u> (DEG-3; FFG-3; 6/1975); <u>TACOMA</u> (PG-92); <u>TARAWA</u> (LHA-1); <u>TURNER JOY</u> (DD-951); <u>VALLEY FORGE</u> (CV-45; LPH 8; 7/1961); <u>WABASH</u> (AOR-5); and <u>YORKTOWN</u> (CV-10; CVA-10; CVS-10).  Plaintiff wore 3M masks at various times.  At various times, plaintiff stripped insulation off and re-insulated pipes, pumps, and boilers in the shipyard.  Plaintiff used an air compressor to blow his work area.  Plaintiff was in close proximity to insulators and other co-workers who had asbestos dust on their cloth coveralls when coming into the shop.  Plaintiff recalls his co-workers removing the cloth overalls in the shop near him every single day before they went home. Plaintiff recalls at times wearing paper masks supplied by MINNESOTA MINING & MANUFACTURING COMPANY (3M).  Plaintiff currently contends that he was exposed to asbestos during this employment.

Throughout plaintiff's career, plaintiff insulated A.O. SMITH boilers, AMERICAN STANDARD boilers, and INGERSOLL-RAND turbines.  Plaintiff used INGERSOLL-RAND air compressors to clean his work place.

For the purpose of this case, plaintiff currently does not contend exposure to asbestos after 1986.

////

////

NON-OCCUPATIONAL EXPOSURE:

FRICTION EXPOSURE:

When replacing brakes, plaintiff generally removed the wheels, sanded down the drums and new brake pads, wiped down with a dry rag, replaced the brake pads, and put the wheels back on. Plaintiff worked on the following vehicles:

1949 MERCURY: Plaintiff bought this used vehicle and owned it from 1953 to 1954.  Plaintiff purchased replacement brakes and gaskets from WESTERN AUTO, located near Main Street in Kingstree, South Carolina.

1956 PONTIAC: Plaintiff bought this vehicle new in 1956 from the PONTIAC dealership in Casper, Wyoming.  Plaintiff replaced the original brakes.

1968 PLYMOUTH station wagon: Plaintiff owned this new vehicle from 1968 to 1976.  Plaintiff purchased the vehicle from a MOOTHART CHRYSLER PLYMOUTH dealership on

Candlewood Street, Lakewood, California. Plaintiff replaced the original brakes and original gaskets.

1976 TOYOTA Corolla: Plaintiff owned this new vehicle from 1976 to 1986.  Plaintiff purchased the vehicle from CIRCLE TOYOTA dealership, 4401 East Pacific Coast Highway, Long Beach, California.  Plaintiff replaced the original brakes.

<u>HOME REMODELING</u>:

From September 1956 to January 1991, plaintiff repaired and replaced damaged insulated hot and cold waterlines on the following homes:
9/1956 to 7/1959: 342 Robin Street, Casper, Wyoming
7/1959 to 9/1959: 2120 East Fifth Street, Casper, Wyoming
9/1959 to 6/1964: 3140 Allendale Boulevard, Casper, Wyoming
6/1964 to 11/1964: 617 Kirk Street, Casper, Wyoming
11/1964 to 7/1965: Airport Highway, Casper, Wyoming
3/1968 to present: 7009 East El Paseo Street, Long Beach, California

Plaintiff currently contends that he was exposed to asbestos during this vehicle and home repair work.


////


////


Plaintiff:   <u>JAMES WATSON</u>

Plaintiff was diagnosed with asbestosis and asbestos-related pleural disease on or about May 2007.

Defendants:  Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.   Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, <u>but is not limited,</u> to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Matson's Creamery Concord, CA | Matson's Creamery Concord, CA | Food Server | 1964-1965 |

21

Job Duties: Plaintiff cleaned tables, washed dishes and served ice cream. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Smorgy Boys Concord, CA | Smorgy Boys Willow Pass Road Concord Park & Shop Shopping center Concord, CA | Food Server | 1966-1967 |

Job Duties: Plaintiff cleaned tables, performed light cooking, cleaned dishes and prepared salads. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Department of Defense | Naval Weapons Station, Concord, CA | Stevedore | 1967-1968 |

Job Duties: Plaintiff loaded ammunition onto Victory and Liberty ships and barges. Plaintiff drove a fork lift and placed ammunition into railroad cars. Plaintiff recalls placing the ammunition into the ship and boxing it in with wood. Plaintiff recalls that the pipes surrounding them were heavily insulated. Plaintiff removed excess insulation with his hands, placed it in piles, and then swept it up. Plaintiff further recalls that old insulation would fall off pipelines. Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Dept. of Defense | Hunters Point Naval Shipyard, San Francisco, CA  USS MIDWAY (CVB-41)  USS RANGER (CVA-61)  USS CORAL SEA (CVB-43) | Pipefitter (Helper) | 1968-1970 |

Job Duties: Plaintiff removed steam lines, water lines and fire lines. Plaintiff used a 12,000 RPM grinder to cut off the pipe lagging on steam lines. Plaintiff cut a straight line down the middle of the pipe insulation, then removed the pieces. Plaintiff removed and replaced GARLOCK and FLEXITALLIC gaskets. Plaintiff also worked in the shop, repairing piping that had been removed from ships.  Plaintiff recalls that on the <u>USS MIDWAY</u>, there were 12 boilers on board that were being replaced.  Plaintiff worked in close proximity to boilermakers removing firebrick and ripping out the asbestos mortar to take out the old boilers. Plaintiff recalls some of the boilers were manufactured by BABCOCK & WILCOX. Plaintiff recalls that the boilers on the <u>USS CORAL SEA</u> were manufactured by FOSTER WHEELER. Plaintiff used PABCO pipecovering and JOHNS-MANVILLE pipe-covering to insulate pipes. Plaintiff recalls supervisor John Musanite, deceased. Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Ronald Harris Harris Lawn, San Jose, CA | Various locations through San Jose, CA | Supervisor | 1970-1974 |
| | Veteran's Hospital Palo Alto, CA | | |
| | various schools in Los Altos | | |
| | various schools  in Cupertino | | |
| | Golf Courses throughout the Bay Area | | |

Job Duties: Plaintiff scheduled jobs and set up training for the business. Plaintiff took care of the equipment and purchased materials. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Concord Taxi | Various Locations throughout Concord, CA | Taxi Driver | 1974-1975 |

Job Duties: Plaintiff drove a taxi. Plaintiff is currently unaware if he was exposed to asbestos

during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Department of Defense | Mare Island Naval Shipyard Vallejo, CA | Pipefitter | 1975-1981 |

<u>BARB</u>
(SSN-596)

<u>BONEFISH</u>
(SS-582)

<u>ETHAN ALLEN</u>
(SSN-608)

<u>FLASHER</u>
(SSN-613)

<u>GUARDFISH</u>
(SSN-612)

<u>HALIBUT</u>
(SSN-587)

<u>NAUTILUS</u>
(SSN-571)

<u>PERMIT</u>
(SSN-594)

<u>PLUNGER</u>
(SSN-595)

<u>POLLACK</u>
(SSN-603)

SAILFISH
(SS-572)

SCAMP
(SSN-588)

SEA WOLF
(SSN-575)

SHARK
(SSN-591)

SNOOK
(SSN-592)

SWORDFISH
(SSN-579)

Job Duties: Plaintiff removed pipe insulation from submarines. Plaintiff recalls that most of the piping on steam lines was wrapped with asbestos lagging. Plaintiff removed the lagging with a 12, 000 RPM grinder. Plaintiff placed the old insulation on the dock and then threw it away. Plaintiff installed new piping and applied PABCO pipecovering and JOHNS-MANVILLE pipecovering on the new pipelines. Plaintiff was in close proximity to insulators insulating the new piping. Plaintiff was in close proximity to welders using asbestos blankets to contain sparks. Plaintiff recalls using GARLOCK and FLEXITALLIC gaskets. Plaintiff recalls working in proximity to GENERAL ELECTRIC turbines. Plaintiff recalls the following coworkers: James McCarthy, Sonoma, California; James Nutley, Napa California; P. Peterson, Napa, California; J. Molenar, Vallejo, California; Tom Plantzky, Alaska. Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Self Employed Carpet Cleaning business | Apartments throughout Concord, Fairfield and Benicia, CA | Cleaner | 1981-1984 |

Job Duties: Plaintiff cleaned carpets in various residences. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|

| | | | |
|---|---|---|---|
| Sun Valley Ford<br>Concord, CA | Sun Valley Ford,<br>Concord, CA | Salesman | 1984-1985 |

Job Duties: Plaintiff sold cars. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of<br>Exposure | Job Title | Exposure<br>Dates |
|---|---|---|---|
| Self Employed<br>Carpet Cleaning business | Apartments throughout<br>Concord and Benicia, CA | Cleaner | 1985-1989 |

Job Duties: Plaintiff cleaned carpets in various residences. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

////

| Employer | Location of<br>Exposure | Job Title | Exposure<br>Dates |
|---|---|---|---|
| Self Employed | Locations throughout<br>Concord, CA | Laborer | 1989-1995 |

Job Duties: Plaintiff was self employed, performing various duties for people around his neighborhood, including gardening, landscaping, cutting wood and fixing cars. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

NON OCCUPATIONAL EXPOSURE:

1975 TOYOTA, acquired in 1979. Plaintiff replaced the original clutch. Plaintiff purchased the replacement clutch from the TOYOTA dealer in Walnut Creek, California. Plaintiff performed this work in his driveway.

1956 VOLKSWAGEN, acquired in 1966. Plaintiff replaced the original clutch. Plaintiff purchased the replacement clutch from MONUMENT AUTO, in Pleasant Hill, California. Plaintiff performed this work in his driveway.

1968 FORD truck owned by Harris Lawn. Plaintiff replaced the original clutch in the owner's driveway. Plaintiff purchased the replacement clutch in San Jose, California.

1970 CHEVROLET truck acquired by Bruce Harris, from Harris Lawn, in 1970. Plaintiff replaced the original clutch. Plaintiff performed this work in the owner's garage. Plaintiff purchased the replacement clutch in San Jose, California.

1975 GMC truck, owned by Bruce Harris, from HARRIS LAWN. Plaintiff replaced the original clutch.  Plaintiff recalls purchasing the replacement parts from an unknown GM dealership in Sonora, California.

Plaintiff recalls using BORG-WARNER auto parts.

HOME REPAIRS:

Plaintiff removed and replaced OWENS-ILLINOIS KAYLO insulation in his home at 17 Buena Vista, Benicia, California 94520, in 1976. Plaintiff used a hand brush to clean up asbestos dust. Plaintiff replaced the insulation with OWENS CORNING FIBERGLASS pink insulation purchased at ORCHARD SUPPLY, Vallejo, CA.


Plaintiff:    NORRIS WALLACE

Plaintiff's injuries: Plaintiff was diagnosed with asbestosis and asbestos-related pleural disease on or about January 2003.

Defendants:  Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.   Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Best Machine Shop, Houma, LA | Best Machine Shop, Houma, LA | Welder | 1947-1948 |

Job Duties:  Plaintiff recalls participating in the manufacture of marsh boats.  Plaintiff recalls operating welding equipment and performing various welding duties.  Plaintiff recalls using asbestos-containing welding blankets and mitts.  Plaintiff recalls working in close proximity to insulators applying asbestos-containing insulation to boat parts and components.  Plaintiff recalls performing various clean-up tasks throughout his work area.  Plaintiff recalls working around UNION CARBIDE welding products.  Plaintiff recalls co-workers Bill Chauvin, address currently unknown; and Dave Chauvin, address currently unknown.  Plaintiff currently contends

that he may have been exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Brown Oil Tool Company, Houma, LA | Brown Oil Tool Company, Houma, LA | Laborer | 1948-1949 |

Job Duties:  Plaintiff recalls loading and unloading metal pipe and supplies for oil field drilling and pumping equipment.  Plaintiff recalls removing asbestos-containing insulation from pipes. Plaintiff recalls working in close proximity to welders, pipefitters and insulators.  Plaintiff currently contends that he may have been exposed to asbestos during this employment.

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Kettle & Muffler Engineering Company, Los Angeles, CA | Kettle & Muffler Engineering Company, Los Angeles, CA | Welder | 1950-1951 |

Job Duties:  Plaintiff recalls participating in the manufacture of industrial mufflers.  Plaintiff recalls operating welding equipment and performing various welding duties.  Plaintiff recalls using asbestos-containing welding blankets and HOBART mitts.  Plaintiff recalls working with HOBART welding rods.  Plaintiff recalls working in close proximity to insulators applying asbestos-containing insulation to mufflers.  Plaintiff recalls performing various clean-up tasks throughout his work area.  Plaintiff currently contends that he may have been exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| United States Army | Fort Ord, Monterey, CA | Trainee | 8/3/1951-8/2/1954 |
|  | US Army, Okinawa, Japan | Maintenance Engineer |  |
|  | Presidio, San Francisco, CA |  |  |

Job Duties:  Plaintiff recalls receiving basic military training.  Plaintiff recalls receiving specialty training in welding and fuel system maintenance and engineering.  Plaintiff recalls using welding

equipment manufactured by UNION CARBIDE.  Plaintiff recalls performing welding tasks on tractors, bulldozers, jeeps and trucks.  Plaintiff recalls using asbestos-containing welding blankets and mitts.  Plaintiff recalls seeing the name JOHNS MANVILLE printed on the blankets.  Plaintiff recalls working in close proximity to mechanics performing brake pad replacements on the abovementioned military equipment.  Plaintiff recalls mechanics using a portable grinder to sand brakes and an air compressor to blow off parts, and plaintiff recalled that this created a lot of dust.  Plaintiff recalls performing welding tasks and recalls brake pad replacements being performed on tractors, bulldozers, jeeps and trucks manufactured by FORD and INTERNATIONAL HARVESTER and CATERPILLAR.  Plaintiff recalls being assigned to the repair area and working on tanks, trucks, gun ships, bulldozers, and building pontoon bridges.  Plaintiff specifically recalls some of the vehicles on which brake replacements were done, including but not limited to: 1949 FORD Jeep; 1951 FORD truck; 1950 FORD truck; and two 1948 CATERPILLAR bulldozers.  Plaintiff recalls the mechanics were Mr. Topel; Mr. Rodriguez; and Mr. Jenkins, first names and addresses unknown.  Plaintiff currently contends that he may have been exposed to asbestos during this employment.


////


| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Benicia Arsenal, Benicia, CA | Benicia Arsenal, Benicia, CA | Welder | 1955-1958 |

Job Duties:  Plaintiff recalls performing welding tasks and using a chipping gun on tractors, bulldozers, jeeps and trucks. Plaintiff recalls using asbestos-containing welding blankets and asbestos-containing HOBART mitts.  Plaintiff recalls using welding equipment manufactured by UNION CARBIDE.  Plaintiff recalls working in close proximity to mechanics performing brake pad replacements on the abovementioned military equipment.  Plaintiff recalls performing welding tasks being performed on tractors, CATERPILLAR bulldozers, jeeps and trucks manufactured by FORD and INTERNATIONAL HARVESTER.  Plaintiff recalls others performing gasket and valve work on INTERNATIONAL trucks.  Plaintiff currently contends that he may have been exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Kaiser Steel, Napa, CA | Kaiser Steel, Napa, CA | Welder | 1958 |

Job Duties:  Plaintiff recalls performing welding tasks on pipes and other metals.  Plaintiff recalls using asbestos-containing welding blankets and HOBART mitts.  Plaintiff recalls working in close proximity to insulators applying asbestos-containing insulation and pipefitters and burners.  Plaintiff recalls JOHNS-MANVILLE insulation at this site.  Plaintiff currently contends that he may have been exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Mare Island Naval Shipyard, Vallejo, CA | Mare Island Naval Shipyard, X11, X17, X26, Vallejo, CA | Welder | 1958-1985 |
| | DRUM (SSN-677) | | |
| | HALIBUT (SSN-587) | | |
| | MARIANO G. VALLEJO (SSBN-658) | | |
| | PERMIT (SSN-594) | | |
| | PLUNGER (SSN-595) | | |
| | SARGO (SSN-583) | | |
| | GUITARRO (SSN-665) | | |
| | PINTADO (SSN-672) | | |
| | HAWKBILL (SSN-666) | | |
| | KAMEHAMEHA (SSBN-642) | | |
| | PARCHE (SSN-683) | | |
| | STINSON CLARENCE K. BRONSON (DD-668) | | |

Job Duties:  Plaintiff recalls performing welding tasks on ships and submarines.  Plaintiff recalls performing welding tasks in on deck housing, ship engine and boiler rooms and in reactor compartments.  Plaintiff recalls using asbestos-containing rope, fiber, pads, paper, sheets and felts.  Plaintiff recalls working close proximity to insulators, boilermakers and pipefitters.  Plaintiff recalls seeing other workers using asbestos-containing gaskets, insulation, insulation pads, pipe, cloth, wallboard and tape.  Plaintiff recalls seeing other workers installing and removing valve packing, gaskets, boiler jackets and steam line insulation.  Plaintiff recalls seeing and using asbestos-containing products manufactured by JOHNS-MANVILLE.  Plaintiff recalls GENERAL DYNAMICS and CUMMINS INSULATION supplied UNIBESTOS and asbestos

tape.  Plaintiff recalls asbestos gaskets supplied by CONDREN CORPORATION.  Plaintiff recalls asbestos packing supplied by the NEW ENGLAND BRADING COMPANY and TRI STATE TECHNICAL SALES.  Plaintiff recalls gaskets and packing manufactured by GARLOCK, FLEXITALLIC and A.W. CHESTERTON.  Plaintiff recalls insulation workers using PLANT products.  Plaintiff currently contends that he may have been exposed to asbestos during this employment.

NON-OCCUPATIONAL EXPOSURE

1957 CHEVROLET Impala.  Plaintiff recalls purchasing this vehicle new at the CHEVROLET dealership located on Virginia Street, Vallejo, California.  Plaintiff changed the brakes on all four wheels some time after 1960.  Plaintiff also removed and replaced the muffler. Plaintiff sanded the brakes and sprayed RUSTOLEUM aerosol solvent to clean the assembly creating visible dust.  Plaintiff recalls purchasing replacement brake parts from GRAND AUTO SUPPLY in Vallejo, California.

////

1964 CHEVROLET Half-ton pickup truck.  Plaintiff recalls this vehicle had approximately 46,000 miles on it when he purchased it used from a private party in 1966. Plaintiff performed one brake job in approximately 1966.  Plaintiff recalls removing FIRESTONE brakes.  Plaintiff sanded the brakes and sprayed RUSTOLEUM aerosol solvent to clean the assembly, creating visible dust.  Plaintiff recalls purchasing replacement brake parts from GRAND AUTO SUPPLY in Vallejo, California.

1953 CHEVROLET Bel Air.  Plaintiff recalls purchasing this vehicle new at the CHEVROLET dealership located on Central Street, Los Angeles, California.  Plaintiff performed one brake job in approximately 1955 and recalls removing the original brakes. Plaintiff sanded the brakes and sprayed RUSTOLEUM aerosol solvent to clean the assembly, creating visible dust.  Plaintiff recalls purchasing replacement brake parts from FIRESTONE in Los Angeles, California.

1952 PONTIAC.  Plaintiff recalls this vehicle was purchased new by his brother James Wallace.  Plaintiff was in close proximity to his brother James, who performed one brake job in approximately 1955 and who removed original brakes.  Plaintiff recalls the replacement brakes were purchased from FIRESTONE, Central Avenue, Los Angeles, California.

1982 CHRYSLER Half-ton pickup truck.  Plaintiff recalls this was owned by Tim De Campo, address unknown.  Plaintiff performed one brake job in approximately 2001.  Plaintiff sanded the brakes and sprayed RUSTOLEUM aerosol solvent to clean the assembly, creating visible dust.  Plaintiff recalls purchasing replacement brake parts from GRAND AUTO SUPPLY in Vallejo, California.

1952 CHEVROLET car.  Plaintiff recalls this was owned by Clint Dixon, address

unknown. Plaintiff removed and reinstalled the muffler in about 1984, using an electric sander and grinder. Plaintiff recalls purchasing the replacement muffler from GRAND AUTO SUPPLY in Vallejo, California.

1951 CHEVROLET Half-ton pickup truck. Plaintiff recalls this was owned by Catherine Bloomfield, address unknown. Plaintiff performed one brake job in approximately 1992. Plaintiff sanded the brakes and sprayed RUSTOLEUM aerosol solvent to clean the assembly creating visible dust. Plaintiff used a compressed air lug wrench to remove the lugs on the wheels. Plaintiff recalls purchasing replacement brake parts from GRAND AUTO SUPPLY in Vallejo, California.

1960s DODGE truck. Plaintiff recalls this was owned by Clint Dixon, address unknown. Plaintiff performed one brake job in approximately 1985. Plaintiff sanded the brakes and sprayed RUSTOLEUM aerosol solvent to clean the assembly, creating visible dust. Plaintiff recalls purchasing the RUSTOLEUM aerosol solvent and replacement brake parts from GRAND AUTO SUPPLY in Vallejo, California.

1956 CHEVROLET Impala. Plaintiff recalls this was owned by Willie Smith, address unknown. Plaintiff performed one brake job in approximately 1961. Plaintiff used a screwdriver to remove old brakes, sanded the new brakes, and sprayed RUSTOLEUM aerosol solvent to clean the assembly, creating visible dust. Plaintiff is unable to recall where he purchased replacement brake parts.

Plaintiff recalls performing a brake job on a 1970s-era VOLVO Sedan owned by Linda Combs. Plaintiff sprayed RUSTOLEUM aerosol solvent to clean the assembly, creating visible dust. Plaintiff recalls purchasing replacement brake parts from GRAND AUTO SUPPLY in Vallejo, California.

Plaintiff recalls performing one brake job on a 1962 CHEVY van owned by Gwen Chavaria in 2001. Plaintiff purchased replacement brakes at GRAND AUTO in Vallejo, California. Plaintiff sprayed RUSTOLEUM aerosol solvent to clean the assembly, creating visible dust.

Plaintiff also recalls purchasing vehicle replacement parts at SEARS, KRAGEN, MONTGOMERY WARD, and VALLEJO SALVAGE.


Plaintiff:   UNDERLINE_ROBERT SCHOELZEL

Plaintiff's injuries:     Plaintiff was diagnosed with asbestosis on or about January 2006.

Defendants: Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.    Plaintiff's exposure to asbestos occurred at the following times and places, and

involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Jampac Inc. Fullerton, CA | Jampac Inc. Fullerton, CA | Unknown | 1971-1972 |

Job Duties:  Plaintiff is unable to recall the specifics of this employment.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.


////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Two Guys California Inc. Whittier, CA | Two Guys California Inc. Huntington Beach, CA | Automobile Parts Man | 1970-1972 |

Job Duties:  Plaintiff worked as an automotive parts manager.  Plaintiff stocked and handled various automotive parts, including drum brakes, water pumps, brake shoes.  Plaintiff recalls the following brands of brakes:  RAYBESTOS and BORG-WARNER.  Plaintiff recalls opening brake shoes boxes and showing them to customers.  Plaintiff recalls handling VICTOR gaskets for engines.  Plaintiff recalls the following co-worker: Paul Snyder, address unknown.  Plaintiff recalls seeing an INGERSOLL-RAND compressor on site.  Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| A-Ames Plumbing & Heating Garden Grove, CA | A-Ames Plumbing & Heating Garden Grove, CA | Plumber (Apprentice) | 1972 (6 months) |

Job Duties:  Plaintiff worked as a plumber (apprentice).  Plaintiff recalls having to cut and thread pipes and dig water line trenches for both commercial and residential areas.  Plaintiff cut cement pipe.  Plaintiff recalls working with air conditioning units, heating units, piping, and compressors.  Plaintiff recalls working with pre-formed sheet garlock-type gaskets.  Plaintiff recalls working with flanged gaskets.  Plaintiff recalls working on RHEEM and CARRIER air conditioning and heating units.  Plaintiff recalls changing HAYDEN water pumps in swimming pools in apartment complex.  Plaintiff recalls seeing other plumbers.  Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Self-employed | Various housing tracts in Orange County, CA owned by the following: S&S Homes, Broan Homes, Sunkist Homes | Painter | 1972-1976 |

Job Duties:  Plaintiff worked as a subcontractor and painted homes.  Plaintiff used paint manufactured by the following: VISTA, OLD QUAKER, DUNN EDWARDS, SINCLAIR, SHERWIN WILLIAMS, MARTIN SENOUR, AMERITONE, and OLYMPIC.  Plaintiff recalls purchasing the paint directly from the manufacturer.  Plaintiff recalls the following outside contractors: CRANK BROTHERS ROOFING (Costa Mesa, California), AMES PLUMBING HEATING & ELECTRICAL (Garden Grove, California), JIM'S DRYWALL.  Plaintiff worked in close proximity to others who were installing drywall, performing taping, applying stucco, performing electrical work, spraying acoustic ceilings.  Plaintiff recalls other trades using the following: LEVITAN electrical switches, ARMSTRONG and CONGOLEUM flooring, GEORGIA-PACIFIC CORPORATION joint compound and drywall, CAROL CO. electrical wiring, MONOLITE stucco, JOHNS MANVILLE shingles, and READY-CRETE cement.  Plaintiff recalls the following contractor: CRANK BROTHERS AND ROOFING.  Plaintiff recalls NATIONAL LUMBER, Huntington Beach, California supplied drywall and joint compound; BARR LUMBER, Costa Mesa, California supplied roofing materials, drywall, joint compound.  Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Safeway Stores Inc. Pleasanton, CA | Safeway Stores Inc. Fountain Valley, CA | Grocery Clerk | 1972 (3-4 months) |

Job Duties:  Plaintiff worked as a grocery clerk.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Department of Defense | Long Beach Naval Shipyard Long Beach, CA | Electrician (Helper) | 8/1974-12/1974 |
| | | Marine Mechanic | 12/1974-12/1978 |

34

| | | |
|---|---|---|
| <u>AJAX</u> (AR-6), Long Beach, CA<br>San Diego, CA | Marine Mechanic | 1975 or 1976 |
| <u>ALBERT DAVID</u> (FF-1050) | | |
| <u>ANCHORAGE</u> (LDS-36) | Marine Mechanic | 1976 or 1977 (1 year) |
| <u>BAGLEY</u> (FF-1069) | Marine Mechanic | 1975 (6 months) |
| <u>BELLEAU WOOD</u> (LHA-3) | Marine Mechanic | end of 1974-1975 (2-3 months) |
| <u>BIDDLE</u> (DLG-34) | Marine Mechanic | 1975 (6 months) |
| <u>BOLD</u> (MSO-424) | | |
| <u>BRADLEY</u> (FF-1041) | Marine Machinist | late 1974 (couple of months) |
| <u>CAMDEN</u> (AOE-2) | Marine Mechanic (Journeyman) | 1975 (2 months) |
| <u>CHICAGO</u> (CG-11) | Marine Machinist | 1976 or 1977 |
| <u>CONSTANT</u> (MSO-427) | | |
| <u>CONSTELLATION</u> (CVA-64) | Marine Machinist | 1976-1977 (2-3 months) |
| <u>CORAL SEA</u> (CVA-43) | Marine Machinist | 1974-1975 (4 months) |
| <u>DECATUR</u> (DDG-31) | Marine Machinist | 1976-1977 (4-5 months) |

(Journeyman)

ENTERPRISE (CVN-65)

| FOX (CG-33) | Marine Machinist | 1974-1975 (on and off for 3 months) |
|---|---|---|

GLACIER (WAGB-4)

GLOMAR EXPLORER          1976 (5 months)
(T-AG-193)

HALSEY (CG-23)          1976

| HIGHPOINT (PCH-1) | Journeyman level | early 1977 (1 ½ months) |
|---|---|---|
| HOEL (DDG-13) | Marine Mechanic | early 1977 (1 ½ months) |
| HOLLISTER (DD-788) | Marine Mechanic | 1977 (2-4 months) |
| HORNE (CG-30) | Marine Mechanic | 1976 (1 month) |

HULL (DD-945)

IWO JIMA (LPH-2)

JOHN PAUL JONES
(DDG-32)

JOUETT (CG-29)

KITTY HAWK (CVA-63)

KNOX (FF-1052)

LANG (FF-1060)

LEAHY (CG-16)

| | |
|---|---|
| <u>LONG BEACH</u> (CGN-9) | |
| <u>LYNDE MCCORMICK</u> (DDG-8) | |
| <u>MARVIN SHIELDS</u> (FF-1066) | |
| <u>MISSOURI</u> (BB-63) | |
| <u>NORTON SOUND</u> (AVM-1) | 1976-1977 (45 days) |
| <u>O'CALLAHAN</u> (FF-1051) | |
| <u>OKLAHOMA CITY</u> (CLG-5) | |
| <u>ORISKANY</u> (CV-34) | late 1974 (6-8 months) |
| <u>OULLET</u> (FF-1077) | 1974-1975 (5-6 months) |
| <u>PAUL F. FOSTER</u> (DD-964) | 1976 (2 months) |
| <u>PELELIU</u> (LHA-5) | late 1976-1977 (3 months) |
| <u>PERTH</u> (DDG-25) | 1975 (7-8 months) |
| <u>RAMSEY</u> (FFG-2) | 1975 (6 months) |
| <u>RANGER</u> (CVA-61) | 1977 (5-6 months) |
| <u>ROBISON</u> (DDG-12) | |
| <u>SAMUEL GOMPERS</u> (AD-37) | late 1976 (3 months) |
| <u>ROANOKE</u> (AOR-7) | 1976 (6-7 months) |

37

| | SCHOFIELD (DE-3) | Marine Mechanic | 1975 (4 months) |
|---|---|---|---|
| | STERETT (DLG-31) | | 1976 (6 months) |
| | TARAWA (LHA-1) | | |
| | TURNER JOY (DD-951) | | 1976 |
| | WADDELL (DDG-24) | | 1975 |
| | WILLIAM H. STANDLEY (CG-32) | | |
| | QUEEN MARY (1930) | | |
| US Department of Defense (Contd) | Long Beach Naval Shipyard Long Beach, CA | Automobile Mechanic | 12/1978-3/1980 |

On the AJAX:  Plaintiff worked on the main sea water system.  Plaintiff had to dismantle the system.  Plaintiff recalls having to repair pumps to cool the condenser for the main engine.  Plaintiff recalls a WESTINGHOUSE motor.  Plaintiff recalls removing packing and installing JOHN CRANE packing.  Plaintiff recalls having to working on a steam DELAVAL turbine.  Plaintiff directed laggers to remove pipe insulation.  Plaintiff recalls seeing shipyard workers remove and install insulation.  Plaintiff recalls dismantling about a dozen flanged gaskets and installing about six FLEXITALLIC gaskets.  Plaintiff also recalls installing GARLOCK gaskets.  Plaintiff recalls seeing work performed to flooring and decking.  Plaintiff was told by the yard workers that the green square floor tiles were asbestos-impregnated.  Plaintiff recalls installing and applying thermal insulation on equipment.  Plaintiff recalls seeing boxes of OWENS CORNING and PABCO insulation.  Plaintiff recalls seeing insulation being removed from boxes and applied to the exterior of turbines.  All the supplies and materials came out of Shop 38.  Plaintiff recalls seeing DEX-O-TEX adhesive on the floor.  Plaintiff recalls the following co-workers:  Tom Hudson, address unknown and William Due (Buena Park, California).

On the ANCHORAGE:  Plaintiff worked on two WESTINGHOUSE generators and on sea water pumps.  Plaintiff removed gaskets and installed GARLOCK gaskets, both sheet and pre-formed.  Plaintiff recalls working on a TERRY turbine.  Plaintiff recalls seeing the removal of a WORTHINGTON compressor.  Plaintiff recalls seeing OWENS CORNING insulation.  Plaintiff recalls using JOHN CRANE packing for steam valves, drain valves and high pressure steam valves.  Plaintiff recalls installing ANCHOR PACKING packing.  Plaintiff recalls seeing work to the flooring and decking of the passageways on the main deck.  Plaintiff recalls seeing floor tiles removed via chipping guns and sanders.  Plaintiff recalls co-worker, Tom Hudson (address unknown).

On the <u>BAGLEY</u>:  Plaintiff worked on the supercharger on the boiler in the fire room.  Plaintiff recalls spending five months to overhaul the supercharger in one piece.  Plaintiff directed the laggers to put asbestos pads on the supercharger.  Plaintiff recalls removing BYRON JACKSON fire pumps and sent to shop for overhaul.  Plaintiff recalls having to remove and install GARLOCK gaskets.  Plaintiff recalls having to remove safeties on top of BABCOCK WILCOX boilers.  Plaintiff installed emergency shut off valves.  Plaintiff recalls seeing JOHN CRANE packing.  Plaintiff recalls others installing PABCO and OWENS CORNING insulation.  Plaintiff recalls others performing work the flooring and decking of the passageways on the main deck.  Plaintiff recalls seeing green floor tiles via chipping guns and sanders blue tiles installed.  Plaintiff recalls the following co-workers:  Charlie Vandeveer (address unknown), Don Jankus (address unknown) and Tom Hudson (address unknown).

On the <u>BELLEAU WOOD</u>:  Plaintiff worked in three auxiliary machinery rooms.  Plaintiff recalls working on the distilling plant.  Plaintiff had to overhaul, disassemble, clean the tubes.  Plaintiff recalls removing and installing GARLOCK gaskets.  Plaintiff used ANCHOR PACKING packing on the water valves.  Plaintiff recalls working on INGERSOLL-RAND air compressor.  Plaintiff removed the electric motors and tore down the cylinders and heads.

Plaintiff recalls installing overhaul package from INGERSOLL-RAND.  Plaintiff recalls seeing OWENS CORNING and PABCO insulation boxes.

On the <u>BIDDLE</u>:  Plaintiff worked on four WESTINGHOUSE draft blowers in the number one fire room.  Plaintiff recalls Shop 41 workers removed refractory materials and retubed the interior of the BABCOCK WILCOX boilers.  Plaintiff recalls working on WORTHINGTON feed pumps.  Plaintiff recalls installing GARLOCK gaskets.  Plaintiff recalls seeing work to the flooring and decking of the passage ways on the main deck.  Plaintiff recalls seeing the removal of black tiles with DEX-O-TEX underneath the black tile.  Plaintiff recalls seeing the installation of blue linoleum tiles by Shop 71 tilesetters.  Plaintiff recalls co-worker, Monty Hall (address unknown).

On the <u>BRADLEY</u>:  Plaintiff worked on the prairie master and fin stabilizers.  Plaintiff dismantled the prairie master and the heads, and sent them to Shop 51 for overhaul.  Plaintiff recalls removing gaskets and installing GARLOCK gaskets.  Plaintiff installed ANCHOR PACKING packing.

On the <u>CAMDEN</u>:  Plaintiff worked in the steering room.  Plaintiff had to disassemble the PARKER HANNIFIN hydraulic pumps for overhaul.  Plaintiff recalls seeing a WHITON fire pump in the fire room.  Plaintiff recalls disassembling every LESLIE CONTROLS steam valve on the boilers.  Plaintiff removed packing materials from the steam valves and installed JOHN CRANE packing.  Plaintiff recalls LESLIE CONTROLS steam valves.  Plaintiff reinstalled steam valves and used GARLOCK flat sheet gasket material.  Plaintiff recalls foreman William Due.

On the <u>CHICAGO</u>:  Plaintiff worked on the boat davits.  Plaintiff dismantled bearings and

bushings.

On the <u>CONSTELLATION</u>:  Plaintiff worked on the flight deck and control rooms.  Plaintiff worked on PARKER HANNIFIN hydraulic pumps and valves.  Plaintiff recalls JOHN CRANE packing material.  Plaintiff recalls installing rubber gasket material that was impregnated with cloth material.  Plaintiff recalls seeing work to the flooring and decking of the passageways on the hangar deck.  Plaintiff recalls seeing the removal of tiles with DEX-O-TEX underneath the tile.  Plaintiff dismantled steam valve that were packed with JOHN CRANE packing.

On the <u>CORAL SEA</u>:  Plaintiff worked on the fire pumps in the chain locker, auxiliary machinery spaces and fire rooms.  Plaintiff installed gaskets that he made from GARLOCK sheet gasket material.  Plaintiff had to remove insulation pads.  Plaintiff saw the installation of JOHNS MANVILLE insulation.  Plaintiff recalls seeing refractory work, the retubing of boilers and overhaul of boilers.  Plaintiff recalls seeing installation of new refractory bricks.  Plaintiff worked on steam drain valves and installed FLEXITALLIC gaskets.  Plaintiff recalls installing new JOHN CRANE packing.  Plaintiff recalls seeing work to the flooring and decking.  Plaintiff recalls seeing the removal of green tiles and the replacement of blue tiles.  Plaintiff recalls co-worker, Roger Dinsmore (address unknown).

On the <u>DECATUR</u>:  Plaintiff worked on the main engines in the number two engine room, as well as on generators and pumps.  Plaintiff recalls GENERAL ELECTRIC motors in the main engine room.  Plaintiff removed FLEXITALLIC gaskets from the lube oil system and installed FLEXITALLIC gaskets.  Plaintiff worked on BYRON JACKSON electric booster pumps.  Plaintiff installed JOHN CRANE packing that was black in color and one inch thick.  Plaintiff cut GARLOCK sheet gasket material.  Plaintiff installed ANCHOR PACKING packing.  Plaintiff recalls seeing Shop 56 laggers install thermal insulation on the turbines of the generator.  Plaintiff recalls seeing PABCO insulation boxes.  Plaintiff recalls foreman, William Due.

On the <u>FOX</u>:  Plaintiff assisted in the overhaul of a GENERAL ELECTRIC generator and worked on the lube oil system.  Plaintiff removed GARLOCK gaskets and JOHN CRANE packing.  Plaintiff recalls seeing an INGERSOLL-RAND compressor disassembled and removed.  Plaintiff recalls seeing the removal of thermal insulation and the installation of PABCO block type insulation.  Plaintiff worked on 16 to 20 steam valves.  Plaintiff removed flanged gaskets on the valves and installed GARLOCK gaskets that he made.  Plaintiff repacked valves and reinstalled packing.

On the <u>GLOMAR EXPLORER</u>:  Plaintiff worked in the 2 fire rooms and 2 engine rooms.

On the <u>HALSEY</u>:  Plaintiff worked on the propeller and shafting.  Plaintiff installed new GARLOCK sheet gaskets and installed JOHN CRANE packing material.

On the <u>HIGHPOINT</u>:  Plaintiff recalls removing ROLLS ROYCE gas turbines.  Plaintiff recalls unbolting the turbines from mounting bolts and disconnecting all sensors.  Plaintiff disassembled the pumps from the hydrofoils.  Plaintiff recalls ROLLS ROYCE fuel controls on the gas

turbines.  Plaintiff recalls co-worker, Charlie Vanderveer (address unknown).

On the <u>HOEL</u>:  Plaintiff worked in the #2 Engine Room.  Plaintiff recalls working on two WORTHINGTON compressors.  Plaintiff removed the heat exchangers and dry motors from the WORTHINGTON compressors.  Plaintiff installed sheet gaskets that came from a WORTHINGTON kit.  Plaintiff recalls working on steam driven fire pumps on a WHITON turbine.  Plaintiff disassembled the turbine.  Plaintiff installed FLEXITALLIC gaskets.  Plaintiff disassembled and inspected the main steam valves.  Plaintiff had to cut out one of the valves.  Plaintiff installed JOHN CRANE packing.  Plaintiff recalls seeing the removal of thermal block-type insulation.  Plaintiff recalls pads being removed from around the flanged pipes.

On the <u>HOLLISTER</u>:  Plaintiff worked in the #2 Engine Room.  Plaintiff recalls working on two generators.  Plaintiff worked on eight seat valves.  Plaintiff removed gaskets from the generators.  Plaintiff worked on auxiliary sea water pumps that were associated with the generators.  Plaintiff removed packing materials from the pumps and installed GARLOCK gaskets.  Plaintiff recalls seeing work done to a DELAVAL main engine.  Plaintiff recalls NORTHERN CALIFORNIA INSULATION working ripping out existing insulation and installing insulation on this ship.  Plaintiff recalls the following co-workers:  Monty Hall (address unknown) and Roger Dinsmore (address unknown).

On the <u>MYRACORD</u>:  Plaintiff worked as a journeyman and worked on the main engine.  Plaintiff had to dismantle the lube oil system.  Plaintiff recalls installing flanged FLEXITALLIC gaskets.  Plaintiff recalls seeing the removal, via chipping guns and sanders, of green tiles and installation of blue tiles.

On the <u>SCHOFIELD</u>:  Plaintiff recalls working on the WESTINGHOUSE electric motor of the supercharger, boiler, safety valves and feed pumps.  Plaintiff recalls removing FLEXITALLIC gaskets and removing JOHN CRANE packing materials out of steam valves and pumps.  Plaintiff used GARLOCK sheet and pre-formed gaskets.  Plaintiff recalls installing ANCHOR PACKING packing.  Plaintiff recalls seeing others replace refractory and retube the interior of the boiler.  Plaintiff recalls removing the main feed pumps from a WORTHINGTON compressor.  Plaintiff recalls seeing the removal, via chipping guns and sanders of green tiles and installation of blue tiles.  Plaintiff recalls Shop 41 employees working on the interior of the BABCOCK & WILCOX boilers.  Plaintiff overhauled two WARREN PUMPS on this ship.  Plaintiff recalls the following co-workers:  Charlie Vandeveer (address unknown), Don Jankus (address unknown) and Tom Hudson (address unknown).

On the <u>NORTON SOUND</u>:  Plaintiff overhauled a generator.  Attached to the generator was a DELAVAL turbine.  Plaintiff removed and installed GARLOCK and FLEXITALLIC gaskets.  Plaintiff removed JOHN CRANE packing.  Plaintiff recalls seeing PABCO boxes.  Shop 56 laggers were doing the block insulation work on the turbine.  Plaintiff recalls seeing outside contractors with orange hard hats working in the engine room.  Plaintiff saw boxes that had the words ALL CLAD and "Johns Manville" on them.  Plaintiff recalls DEX-O-TEX bags that were used to adhere the tiles onto the ground.  Plaintiff worked on GRINNELL valves.  Plaintiff

recalls NORTHERN CALIFORNIA INSULATION doing work ripping out existing insulation and installing insulation on this ship.  Plaintiff recalls the following co-workers: Wiliam Due (address  unknown), Roger Dinsmoore (address unknown).

On the O'CALLAHAN:  Plaintiff worked in the fire room and overhauled the superchargers. Plaintiff removed and installed FLEXITALLIC gaskets on a fuel oil transfer pump and an oil bilge and stripping pump.  Shop 56 laggers removed the insulation on the pump in plaintiff's presence.  Plaintiff used asbestos cloth from the Shop 38 store.  Plaintiff recalls the following co-workers: John Holmes (address unknown), Roger Dinsmoore (address unknown), William Due (address unknown).

On the ORISKANY:  Plaintiff removed pumps, the main engine and steam valves.  Plaintiff was present when insulation was removed and installed.  Plaintiff recalls seeing insulation boxes with the word MANSVILLE and ALL CLAD on them.  Plaintiff recalls seeing ALL CLAD employees.  Plaintiff recalls seeing work performed on boilers, including carbon arching, fire boxes being cut open, refractory removal and tubing work.  Plaintiff removed INGERSOLL RAND compressors and installed new INGERSOLL RAND compressors.  Plaintiff recalls private contractors tearing up the flooring and decking.  Plaintiff recalls the floor bags containing the words SB DECKING.

On the OULLET:  Plaintiff worked on the fins stabilizer and  prairie/masker system.  Plaintiff removed the WORTHINGTON feed pumps and worked on the main steam valves.  Plaintiff removed and installed FLEXITALLIC gaskets.  Plaintiff removed and installed JOHN CRANE and ANCHOR PACKING packing.  Plaintiff removed insulation from the feed pumps in the fire room.  Plaintiff recalls seeing PABCO insulation boxes in the fire room.  Plaintiff saw flooring and decking work.  Plaintiff recalls DEX-O-TEX underlayment.

On the PAUL F. FOSTER:  Plaintiff replaced the valves on the sea water pumps, hydraulic work, waste heat boiler, and anchor windlass.  Plaintiff replaced the gate and globe valves on the generators and installed JOHN CRANE packing and FLEXITALLIC gaskets.  Plaintiff removed and replaced an asbestos band from the anchor windlass which had the word BENDIX on the side of the band.  Plaintiff replaced the igniter on the GENERAL ELECTRIC main engine. Plaintiff recalls the following co-workers: William Due (address unknown), Monty Hall (address unknown), "Meathead" (address unknown) and Roger Dinsmoore (address unknown).

On the PELELIU:  Plaintiff worked on the main sea engines, ship turbo generators and auxiliary sea water pumps.  Shop 56 employees removed the insulation from the pumps, generators and main engines.  Plaintiff removed and installed GRINNELL valves.  Plaintiff recalls seeing work to the flooring and decking.  Plaintiff recalls seeing DEX-O-TEX underlayment.  Plaintiff recalls the following co-workers: William Due (address unknown) and Tom Hudson (address unknown).

On the RAMSEY:  Plaintiff disassembled the supercharger and pulled off WORTHINGTON feed pumps.  Plaintiff reinstalled the feed pumps and used GARLOCK and FLEXITALLIC

gaskets.  Plaintiff recalls Shop 56 employees installed PABCO insulation.  Plaintiff installed JOHN CRANE packing on steam valves.  Plaintiff removed asbestos cloth from the supercharger.  Plaintiff recalls overhaul of FOSTER WHEELER boilers.  Plaintiff recalls seeing DEX-O-TEX underlayment for the flooring and decking.

////

On the <u>RANGER</u>:  Plaintiff worked in the #1 engine room and on generators.  Plaintiff removed and installed FLEXITALLIC and GARLOCK gaskets.  Plaintiff watched Shop 57 laggers install JOHNS MANVILLE insulation.

On the <u>ROBISON</u>:  Plaintiff worked on WHITTON fire pumps.  Plaintiff removed the WHITTON fire pumps and sent them to the shop for repairs.

On the <u>SAMUEL GOMPERS</u>:  Plaintiff worked on the generators.  Plaintiff removed and installed GRINNELL valves.  Plaintiff installed FLEXITALLIC and GARLOCK gaskets on the generators.  Plaintiff recalls co-worker: Ron Crutcher (address unknown).

On the <u>ROANOKE</u>:  Plaintiff worked on the main engine and generators.  Plaintiff removed WORTHINGTON compressors and installed new WORTHINGTON compressors.  Plaintiff recalls DEX-O-TEX underlayment for the flooring and decking.  Plaintiff recalls co-worker: William Due.

On the <u>STERETT</u>:  Plaintiff worked in the #1 engine room.  Plaintiff removed feed pumps.  Plaintiff recalls seeing installation of ANCHOR PACKING packing.  Plaintiff installed GARLOCK sheet gaskets.  Plaintiff recalls DEX-O-TEX underlayment for the deck.  Plaintiff worked on the lube oil valves and took them apart.  Plaintiff recalls FLEXITALLIC inserts.

On the <u>TURNER JOY</u>:  Plaintiff worked on the force draft blowers.

On the <u>PIGEON</u>:  Plaintiff disassembled WORTHINGTON air compressors and installed new WORTHINGTON air compressors.  Plaintiff worked on the gaskets on the new air compressors that was provided in an overhaul kit from WORTHINGTON.

On the <u>PERTH</u>:  Plaintiff worked on the WORTHINGTON feed pumps.  Plaintiff installed and removed FLEXITALLIC and GARLOCK gaskets.

Plaintiff worked in the engine rooms and the boiler rooms in close proximity to insulators who were ripping out insulation while working as an electrician helper.  Plaintiff pulled cables and wired electrical lights.  Plaintiff recalls working with 110, 220, and 440v cables.  Plaintiff installed lighting.  Plaintiff worked near insulators who were ripping out insulation from steam lines and feed pumps.  Plaintiff worked near insulators who were removing pads from the boilers.  Plaintiff recalls boilers manufactured by BABCOCK & WILCOX COMPANY and

FOSTER WHEELER CORPORATION.

As a marine machinery mechanic, plaintiff repaired overhauled and maintained all major components on the ships. Plaintiff performed repairs on feed pumps. Plaintiff recalls others removing insulation and asbestos pads from the feed pumps while he was working on them. Plaintiff recalls using asbestos sheets to make gaskets for flanges. Plaintiff recalls installing GARLOCK and FLEXITALLIC gaskets. Plaintiff recalls disassembling and re-assembling flanges. Plaintiff recalls replacing the brake pad on an anchor windlass. Plaintiff recalls replacing the asbestos band on the jacking gear of the ships' main steam engine. Plaintiff recalls working near asbestos covered piping while performing repairs on navy tugboats.

On all ships and submarines, plaintiff recalls removing and overhauling CRANE CO. valves. On a number of ships and submarines plaintiff recalls removing and overhauling LESLIE valves.

As an automotive mechanic, plaintiff performed overhaul and maintenance on a wide variety of equipment, including but not limited to: CUSHMAN scooters, fire trucks, police trucks, semi trucks and school buses. Plaintiff recalls installing RAYBESTOS, BENDIX & ALLIED brakes. Plaintiff recalls installing BORG-WARNER CORPORATION and SPICER clutches. Plaintiff recalls the following supplier of replacement parts: LONG BEACH TRUCK & AUTO, Long Beach, California. Plaintiff performed the following repairs:

Plaintiff recalls 1962 & 1964 model AMERICAN LAFRANCE CORPORATION fire trucks. Plaintiff recalls removing OEM clutches on AMERICAN LAFRANCE CORPORATION firetrucks.

Plaintiff recalls performing repairs on brand new 1977 CHEVY NOVA police cars. Plaintiff recalls removing OEM brakes at 5000 miles. Plaintiff recalls installing RAYBESTOS & BENDIX brakes.

Plaintiff recalls performing clutch and brake repairs on FORD fuel tankers and one DODGE 8000 fuel tanker.

Plaintiff recalls performing clutch and brake repairs on an INTERNATIONAL HARVESTER 6000 semi tractor.

Plaintiff recalls performing brake repairs on DODGE D200 3/4 ton crew cab trucks. Plaintiff recalls installing RAYBESTOS & BENDIX brakes.

Plaintiff recalls the following supervisors: William H. Due, Buena Park, California; Ray Hale, deceased. Plaintiff recalls the following co-workers: Charlie Vanderveer, address unknown; Tom Hudson, Bremerton, Washington. Plaintiff currently contends that he was exposed to asbestos during this employment.

////

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Department of Defense | Marine Corps Air Station El Toro, CA | Mechanic | 3/1980-10/1980 |

Job Duties:  Plaintiff recalls performing the same or similar automotive mechanic duties as those described for US Department of Defense, above.  Plaintiff recalls performing repairs on OSHKOSH TRUCK CORPORATION fire trucks.  Plaintiff recalls the following supervisors: Chuck Hernandez, address unknown; Ray Hale, deceased.  Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Department of Defense | Long Beach Naval Shipyard Long Beach, CA | Inspector | 10/1980-3/1982 |

Job Duties:  Plaintiff performed estimates for accident damage.  Plaintiff supervised mechanics. Plaintiff worked in close proximity to mechanics who were performing brake & clutch repairs. Plaintiff recalls that the mechanics were using BENDIX and RAYBESTOS brakes and BORG-WARNER CORPORATION and SPICER clutches.  Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| City & County of Denver, CO | City & County of Denver, CO | Heavy Equipment Mechanic | 3/1982-4/1983 |

Job Duties:  Plaintiff performed brake, clutch, diesel engine and hydraulic repair on garbage trucks.  Plaintiff recalls the following truck manufacturer:  INTERNATIONAL HARVESTER. Plaintiff recalls removing OEM parts.  Plaintiff currently contends that he was exposed to asbestos during this employment.

45

//// 

//// 

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Department of Defense | Puget Sound Naval Shipyard Bremerton, WA | Marine Mechanic | 5/1983-1986 |

ARKANSAS (CGN-41)

BAINBRIDGE (CGN-25)

BLUEBACK (SS-581)

CARL VINSON (CVN-70)

ETHAN ALLEN (SSN-608)

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| US Department of Defense (contd.) | Puget Sound Naval Shipyard Bremerton, WA | Marine Mechanic | 5/1983-1986 |

GEORGE C. MARSHALL (SSBN-654)

GEORGE WASHINGTON (SSBN-598)

GROWLER (SSG-577)

JOHN ADAMS (SSBN-620)

MISSOURI (BB-63)

NATHAN HALE
(SSBN-623)


Puget Sound Naval          Marine          5/1983-1986
Shipyard                   Mechanic
Bremerton, WA

PAGASUS (PHM-1)

PLUNGER (SSN-595)

QUEENFISH (SSN-651)

SILVERSIDES (SNN-679)

TEXAS (CGN-39)

TRUXTUN (CGN-35)

Job Duties:  Plaintiff recalls performing the same or similar marine machinery mechanic duties as those described for US Department of Defense, above.  Plaintiff worked on ships and submarines at this location.  Plaintiff recalls the following supervisor:  Floyd Forbes, address unknown.  Plaintiff currently contends that he was exposed to asbestos during this employment.

HOME REMODEL:

Plaintiff recalls building a walk-in closet in the mid-1970s at his home in Cypress, California.  He used GEORGIA-PACIFIC CORPORATION drywall and joint compounds he bought from Southerland Lumber in Anaheim, California.  Plaintiff recalls removing and re-installing linoleum flooring.  Plaintiff installed ARMSTRONG linoleum and 3M mastic material.

Plaintiff did roofing work on the side when he lived in Colorado.  Plaintiff used JOHNS MANVILLE and OWENS CORNING materials.

AUTOMOTIVE REPAIR WORK:

Plaintiff did a brake job on a 1963 Chevrolet Impala.  Plaintiff bought the Impala used.  Plaintiff bought new BENDIX brakes from TWO GUYS.  Plaintiff sanded the brakes before installation of the brake linings.  Plaintiff also did work on the engine.  He bought FEL-PRO gaskets from C&D AUTO.  Plaintiff scraped and wire brushed the old gaskets.  Plaintiff removed OEM intake manifold gasket material.  He then installed a VICTOR replacement intake manifold gasket.  Plaintiff installed a CHERRY BOMB muffler.

Plaintiff replaced an engine on a 1958 FORD Anglia with and AUSTIN HEALY engine. Plaintiff had to remove asbestos gaskets for this work. Plaintiff installed asbestos VICTOR gaskets.

Plaintiff:    WILLIAM LARSEN

Plaintiff's injuries:  Plaintiff was diagnosed with asbestosis on or about October 2007.

Defendants:  Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.   Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Air Station Ream Field Imperial Beach, CA | Aircraft Mechanic | 06/01/60-08/31/81 |
| | Naval Air Station Key West, FL | | |
| | STATEN ISLAND (AGB-5) | | |
| | BURTON ISLAND (AGB-1) | | |
| | SACRAMENTO (AOE-1) | | |
| | EPPING FOREST (LSD-4) | | |
| | CONSTELLATION (CV-64) | | |

Job Duties:  Plaintiff worked as an aircraft mechanic in the machine shops. Plaintiff removed and replaced gaskets on helicopter engines. Plaintiff removed, ripped, and installed insulating blankets and heat shields around the engines on the helicopters. Plaintiff worked in close proximity to wheel mechanics.

Plaintiff worked on SIKORSKY (UNITED TECHNOLOGIES CORPORATION) RH53D helicopters with GENERAL ELECTRIC COMPANY engines; KAMAN (KAMAN INDUSTRIAL TECHNOLOGIES CORPORATION) HH2D, SH2D, UH2A helicopters; BOEING (THE BOEING COMPANY) helicopters; BOEING-VERTOL (THE BOEING COMPANY) helicopters; and BELL (BELL HELICOPTER TEXTRON, INC.) HTL, HUL helicopters with FRANKLIN engines.

Plaintiff currently does not recall any co-workers. Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Composite Optics San Diego, CA | Composite Optics San Diego, CA | Engineer | 08/01/82-06/01/84 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| SDF Job Placement Agency | | | 1987-1994 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Gold Post Engineering | Gold Post Engineering | Engineer | 09/01/87-01/01/88 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Global Technology Service | Norton Air Force Base San Bernardino,CA | Aircraft Services | 02/01/88-09/30/94 |

Plaintiff does not contend exposure to asbestos after 1980.

NON-OCCUPATIONAL EXPOSURE

Plaintiff repaired GENERAL ELECTRIC (GENERAL ELECTRIC COMPANY) and SUNBEAM (JARDEN CORPORATION) toasters. Plaintiff removed the heating elements and disturbed the asbestos insulation. Plaintiff currently contends that he was exposed to asbestos during these repairs.

Plaintiff performed brake jobs on his own vehicles. Plaintiff used BENDIX (HONEYWELL INTERNATIONAL, INC.) brakes at least once. Plaintiff currently contends that he was exposed

to asbestos during these automotive repairs.


Plaintiff:    ROBERT KACSUTA,

Plaintiff's injuries:    Plaintiff was diagnosed with colon cancer on or about November 2006, and with asbestosis on or about November 2005.

Defendants:  Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.    Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Marwen L Sladen Sladens Cash Food Market 3948 Murray Ave Pittsburgh, PA | Sladens Cash Food Market Pittsburgh, PA | Stock clerk | 1/1960-1/1962 |

Job Duties:  Plaintiff stocked shelves and delivered groceries.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | U.S. Navy locations including, but not limited to: | Electrician | 8/27/1962-9/9/1966 |
| | Naval Training Center, San Diego, CA | Trainee | 11 weeks |
| | Naval Training Center, Electrician Training San Diego, CA | Trainee | 13 weeks |
| | CATAMOUNT (LSD-17) | Electrician | 1963-1964 |

Naval Repair Facility (32nd
Street Annex)
San Diego, CA; Todd
Shipyard, Seattle, WA;
Naval Weapons Station,
Seal Beach, CA; Naval
Repair Facility, Subic Bay,
Philippines

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy (Contd) | PAGE COUNTY (LST-1076) | Electrician | 1964-1966 |
| | Pearl Harbor Naval Shipyard, Honolulu, HI | | |
| | National Steel & Shipyard, San Diego, CA | | |
| | Long Beach Naval Shipyard, Long Beach, CA | | |
| | Todd Shipyard, San Pedro, CA | | |
| | Aleutian Islands | | |
| | Vietnam | | |
| | Sasebo, Japan | | |
| | Naval Station Treasure Island, San Francisco, CA | | |

Job Duties:  Plaintiff joined the Navy in 1962 and between 1962 and 1966, he worked as an electrician on the following ships:  the CATAMOUNT (LSD-17) and the PAGE COUNTY (LST-1076).  Plaintiff monitored the switchboards in the engine room and was in all the engineering spaces, including the boiler room, the auxiliary engine room, and in all the shops, including the welding, electric, and shipfitters shops.  Plaintiff open ed and rebuilt switch panels

that contained electrical control equipment; cleaning electrical contacts; using air hoses to blow fine dust out of switchgear; and cutting/splicing asbestos wires.

Plaintiff cut, stripped and ran ANACONDA WIRE & CABLE COMPANY (ERICSSON, INC.) wire. Plaintiff removed, installed and serviced control panels, starters and relays made by the following manufacturers: WESTINGHOUSE, GENERAL ELECTRIC, CUTLER HAMMER and SQUARE D, from 110 to 440 volts. In the process, plaintiff often inadvertently scraped non-metal insulating material. Plaintiff cut sheets of Bakelite BAKELITE material for installation with the control panels. Plaintiff also drill holes in the Bakelite BAKELITE which took approximately 20-40 minutes. Some of the BAKELITE was supplied by TODD SHIPYARD. Plaintiff used wrenches and screwdrivers to open up the switch panels. Plaintiff recalls GENERAL ELECTRIC COMPANY turbines aboard the CATAMOUNT (LSD-17). In the course of plaintiff's work on the CATAMOUNT, plaintiff cut and installed CROWN sheet gaskets and GARLOCK rope packing. Plaintiff also serviced and repaired the SPERRY electronic gyros on the ship. Plaintiff replaced electronic components and gaskets. Plaintiff serviced the HONEYWELL control panel associated with the evaporator and other HONEYWELL thermo-controls. Plaintiff worked around an INGERSOLL RAND compressor that was being serviced. Plaintiff assisted the welders in their duties. During this work, plaintiff wore GUARD LINE gloves, and used GUARD LINE asbestos blankets. Plaintiff worked in the proximity of insulators who installed new OWENS CORNING KAYLO pipe insulation, and mixed and applied PABCO insulating mud. Some of this work was performed by TODD SHIPYARD employees. Plaintiff recalls extensive drydock periods at Todd Shipyard in Seattle, Washington, in 1963, and at Todd Shipyard in San Pedro, California, in 1965, and being around other trades including boilermakers, machinist mates, and engine mates. Plaintiff recalls that the boilermakers always needed an electrician to go "down into the hole" to disconnect or shut down power or replace a short circuit. Plaintiff recalls standing firewatch for the boilermakers, with fire extinguisher in hand to put out a fire, which would occur frequently. Plaintiff also serviced and re-packed a PEERLESS PUMP fuel oil pump. On the PAGE COUNTY, plaintiff serviced SUPERIOR ENGINES. Plaintiff replaced the linoleum flooring with ARMSTRONG floor tiles. Plaintiff cut them to the shape of his department logo. Plaintiff worked in proximity to others who performed maintenance work on GENERAL MOTORS diesel engines. Plaintiff also worked in proximity to TODD SHIPYARD employees servicing a SKINNER and a BABCOCK & WILCOX boiler. Plaintiff was exposed to dust on a daily basis from welders cutting KAYLO (OWENS CORNING FIBERGLAS) brand insulation on pipes. The pipes ran overhead throughout the ship. Plaintiff recalls the following co-workers from the PAGE COUNTY (LST-1076): Ed Dolzal, White Plains, Texas; Ed Storme, Phoenix, Arizona; Jim Bean, Colorado; Wayne Bue; Fred Smith; Jim Lake; and Larry Smith, all addresses presently unavailable. Plaintiff currently contends that he was exposed to asbestos during this service.

////

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | U.S. Navy: locations including but not limited to: | Reservist | 1977-1985 |
| | Naval Submarine Base Point Loma, San Diego, CA | | 1977-1978 |
| | DIXON (AS-37) | | |
| | Naval Station Newport, RI | Electrician | 1983-1985 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy (Cont'd) | EDSON (DD-946) | Electrician | 1983-1985 |
| | CAPADONNO (FF-1093) | | |
| | VALDEZ (FF-1096) | | |
| | MILLER (FF-1091) | | |
| | SIMS (FF-1059) | | |
| | PAGE (FFG-5) | | |
| | AFFRAY (MSO-511) | | |
| | EXPLOIT (MSO-440) | | |
| | Charleston Naval Shipyard Charleston, SC | | 1984-1985 |
| | HOLLAND (AS-32) | | |

Job Duties: Plaintiff was a reservist in the Navy from 1966 to 1968 (on inactive status) and

again from 1977 to 1979. Plaintiff was stationed at the Naval Station in Newport, Rhode Island, and also at Charleston Naval Shipyard. Plaintiff was a member of the Electrical Division, Maintenance Facility, at Shore Intermediate Maintenance Activity (Naval Reserve Maintenance Facility) in Newport, Rhode Island, and worked in the Electrical Repair shop (51A) and as an electrician's mate on the following ships: EDSON (DD-946), CAPADONNO (FF-1093), VALDEZ (FF-1096), MILLER (FF-1091), SIMS (FF-1059, PAGE (FFG-5), AFFRAY (MSO-511) and EXPLOIT (MSO-440). As a member of the team, plaintiff worked as an electrician's mate aboard these ships and repaired, rebuilt and did troubleshooting of automatic bus transfer switch type (ABT-A2 and ABT-A3) for both lighting systems and 54 caliber gun mount number 53. These ABT switches were located in the forward fire room, the forward diesel emergency room, the supply department, the radio shack, and the machinist's mate shop. Plaintiff performed electrical system overhaul, which included the following components: navigation lights, voltage regulator, fuse box starter, alternator, battery, and ammeter. Plaintiff performed a complete rebuild and restoration of a welding machine unit, restoring it to design specifications. Plaintiff made emergency electrical repairs to motors and controllers on the main fire room vent, supply fan number 2-101-2. The ship board motor controllers and motor start/stop stations were manufactured by GENERAL ELECTRIC COMPANY, ALLEN BRADLEY and WESTINGHOUSE. Plaintiff also serviced CUTLER HAMMER pressure switches and relays. In the course of this work, plaintiff inadvertently etched non-metal insulating material. Plaintiff also performed work on oil mist precipitator 5000 volt systems MOD 42511, a shipboard galley dishwasher, and a boat davit controller. Plaintiff served aboard the HOLLAND (AS-32) for approximately three weeks in 1978 or 1979. Plaintiff recalls opening and rebuilding switch panels that contained electrical control equipment, cleaning electrical contacts, using air hoses to blow fine dust out of switchgear, and cutting/splicing asbestos wires. Plaintiff installed new GARLOCK packing in some of the equipment. Plaintiff recalls tearing out old asbestos wire from an old, World War I-era officers' club while at Naval Submarine Base at Point Loma in San Diego in 1978. On the USS PAGE (FFG-5) plaintiff repaired a LINCOLN welding machine. Plaintiff recalls the following co-worker: P.R. Ferguson, address unknown. Plaintiff currently contends that he was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Jones & Laughlin Steel Corp Emp Ben Trust P90748 1211 Avenue of the Americas New York, NY | Jones & Laughlin Steel Company Pittsburg, PA | Laborer | 1966-1968 |

Job Duties: Plaintiff performed maintenance work in the rolling mill. Plaintiff cleaned out furnaces and shoveled slag. Plaintiff recalls wearing GUARD LINE (GUARD-LINE, INC.) asbestos gloves and blankets. Plaintiff worked around asbestos block insulation in the boilers. Plaintiff recalls the firebrick and refractory materials were manufactured by A.P. GREEN (A.P. GREEN INDUSTRIES, INC.) and KAISER REFRACTORIES. Plaintiff currently contends that

he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| F H Hunter, et al.<br>1146 Union Trust Bdg<br>Pittsburgh, PA | F H Hunter<br>Pittsburgh, PA | Unknown | 4/1967-6/1967 |

Job Duties:  Plaintiff does not currently recall the specifics of this employment.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Allied Signall Corp. | Signal Oil & Gas Company; later known as | Electrician | 12/1974 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Burmah Oil & Gas Co a<br>Delaware Corp<br>P.O. Box 94193<br>Houston, TX | Burmah Oil<br>Huntington Beach, CA | | |
| Aminoil USA, Inc.<br>P.O. Box 924193<br>Houston, TX | Aminoil USA, Inc.<br>Huntington Beach, CA | Electrician | 1/1975-9/1976;<br>1/1977-1978 |

Job Duties:  Plaintiff worked at Signal Oil, Burmah Oil, and Aminoil as an electrician on their natural gas engines.  Plaintiff recalls working on chemical pump motors, pumping unit motors, and high voltage down-hole submersible motors.  Plaintiff recalls using all electrical hand tools and meters, making repairs to electrical control panels, and working on relays, switches, and timers.  Plaintiff recalls opening and rebuilding switch panels that contained electrical control equipment, cleaning electrical contacts, using air hoses to blow fine dust out of the switchgear; and cutting/splicing asbestos wires.  Plaintiff rebuilt GOULDS pumps and recalls using GARLOCK rope to re-pack pump seals.  Plaintiff used ANACONDA WIRE & CABLE WIRE (ERICSSON, INC.); SQUARE D COMPANY switchgear (high voltage – 12,000 volts); GENERAL ELECTRIC COMPANY switchgear, WESTINGHOUSE (VIACOM, INC.) breakers (up to 440 volts); Plaintiff cut and drilled sheets of BAKELITE for use in conjunction with the electrical equipment.  Plaintiff recalls REPUBLIC SUPPLY was the supplier of valves, gaskets, and gasket material. Plaintiff recalls GAINES ELECTRICAL SUPPLY was the supplier of

electric components including switchgears, relays, and control panels. Plaintiff opened, cleaned, operated, and maintained steam boilers in wells. Plaintiff was in charge of steam generators in the oil fields. Plaintiff recalled opening up and being inside the fireboxes. Plaintiff recalls working around WORTHINGTON pumps and valves, INGERSOLL-RAND compressors and a RILEY STOKER boiler that were being serviced. Plaintiff recalls the firebrick and refractory materials inside the boilers were manufactured by A.P. GREEN (A.P. GREEN INDUSTRIES, INC.). Plaintiff performed work and adjusted controls inside a FOSTER WHEELER boiler which caused him to go waist deep inside the boiler and remove refractory materials, the process of which created dust. Plaintiff performed this type of work multiple times between 1970 and 1975. Plaintiff recalls applying or removing valve packings and being near others who were doing same. Plaintiff recalls repairing DEMCO VALVES by taking them apart and replacing their linings, o-rings, seals, and packing material and reinstalling the valves back in the pipeline. Plaintiff also took apart and replaced GRINNELL steam valves that contained gaskets. Plaintiff worked around PRATT & WHITNEY (UNITED TECHNOLOGIES CORPORATION) air compressors. Plaintiff removed and installed new JOHNS MANVILLE gaskets on said air compressors. Plaintiff had to change out GRINELL valves on the machine to complete his work. Plaintiff recalls EAGLE PICHER insulating cement was mixed and applied over the pipe insulation. Plaintiff was also around masons and other contractors who were mixing and pouring PABCO CALTEMP CEMENT. Plaintiff recalls being around workers for HALLIBURTON, which was a contractor at the Huntington Beach location during the years plaintiff worked there. Plaintiff worked near DEL BLACK ELECTRICIANS who were running high voltage and transformer lines. Plaintiff worked near pipefitters and welders from PLANT & FIELD SERVICE CORPORATION who were running pipelines, welding, and insulating tanks. Plaintiff recalls STEPHENSON BROS. was the vacuum truck contractor that removed oil from tanks. Plaintiff recalls JOHN THOMAS CO. was a construction contractor that used bulldozers and heavy equipment. Plaintiff   Plaintiff also worked around contractors from the following companies:  BAKER PACKER, BAKER TANKS. Plaintiff worked in the immediate proximity of oil field workers, and outside contractors including DOW SCHLUMBERGER who mixed IMCO drilling mud (HALLIBURTON ENERGY SERVICES) in his immediate proximity. Plaintiff was often present in the mechanical shop in his first few years of employment, as CHEVROLETS were being serviced. Plaintiff recalls working with or around JOHNS-MANVILLE flue pipe, pipecovering, block insulation, asbestos cements and cloth. Plaintiff recalls the following co-workers:  Gene Witfield (maintenance supervisor), Huntington Beach, California; Bob Burten, Huntington Beach, California; Dennis Chappell, deceased, Ron Smith, Huntington Beach, California; Joe Davis, Garden Grove, California; Bob White, Huntington Beach, California; Dick Smith, Huntington Beach, California; Norm Barnett, deceased; Ernie Weiss, Garden Grove, California; and Don Good, address presently unavailable, Harold Stump, Anaheim; Ron Greer (mechanic in auto and transmission shop), Huntington Beach; Lee Eckenrod (carpenter), Huntington Beach; Bob Hudson (mechanic), Oklahoma; Bob Boring (electrician supervisor); Van Stephenson- (vacuum truck driver), John Travis, Mike Hughes, Ron Barnett and Jack Roderick, Huntington Beach, California. Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Hoover H Pratt<br>493 N Glassell St<br>Orange, CA | Hoover H Pratt<br>Orange, CA | Unknown | 10/1970-9/1971 |

Job Duties:  Plaintiff does not currently recall the specifics of this employment.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Pathfinder Mines Corp<br>A Delaware Corp<br>3315 Old Forrest Rd OF-4<br>Lynchburg, VA | Lucky Mack Mine<br>Riverton, WY | Electrician | 1978 |

Job Duties:  Plaintiff worked as an electrician at this open pit mine, which refined "yellow cake" uranium.  Plaintiff recalls changing meters out, cleaning contacts and boxes, repairing pumps, and maintaining the control panels.  Plaintiff worked around GENERAL ELECTRIC and WESTINGHOUSE motors on some of the PEERLESS pumps.  Plaintiff recalls that GARLOCK gaskets were used in conjunction with the pumps.  Plaintiff used ANACONDA WIRE & CABLE WIRE (ERICSSON, INC.); SQUARE D COMPANY switchgear (high voltage – 12,000 volts); CUTLER-HAMMER (EATON ELECTRICAL INC.) switchgear and relays (up to 440 volts); GENERAL ELECTRIC COMPANY switchgear; WESTINGHOUSE (VIACOM, INC.) breakers (up to 440 volts); and ALLEN-BRADLEY COMPANY (ROCKWELL AUTOMATION, INC.) switches and transformers (up to 440 volts).  Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Northrop Grumman Space &<br>Mission Systems Corp<br>1 Northrop Grumman Ave.<br>El Segundo, CA | TRW Reda Pump<br>Long Beach, CA | Electrician | 1979-1981 |
| | Libya | | |
| | Egypt | | |
| | Italy | | |

Elk City, NB

Gainesville, TX

Job Duties:  Plaintiff installed REDA electrical submersible pumps overseas, in Libya, Egypt, and Italy.  Plaintiff installed SQUARE D COMPANY switchgear (up to 440 volts); CUTLER-HAMMER (EATON ELECTRICAL INC.) switchgear and relays (up to 440 volts); WESTINGHOUSE (VIACOM, INC.) breakers (up to 440 volts); and ALLEN-BRADLEY COMPANY (ROCKWELL AUTOMATION, INC.) switches and transformers (up to 440 volts).  Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Plant & Field Service Corporation 17525 Ventura Blvd Ste 201 Encino, CA | Plant & Field Service Corporation Santa Fe Springs, CA | Electrician | 1981 |

Job Duties:  Plaintiff worked as an oil field electrician.  Plaintiff worked on motors, pumps, and control panels, breakers, timers and switchgear.  Plaintiff recalls opening and rebuilding switch panels that contained electrical control equipment, cleaning electrical contacts, using air hoses to blow fine dust out of the switchgear; and cutting/splicing asbestos wires.  Plaintiff used ANACONDA WIRE & CABLE WIRE (ERICSSON, INC.); SQUARE D COMPANY switchgear (high voltage – 12,000 volts); CUTLER-HAMMER (EATON ELECTRICAL INC.) switchgear and relays (up to 440 volts); GENERAL ELECTRIC COMPANY switchgear, WESTINGHOUSE (VIACOM, INC.) breakers (up to 440 volts); and ALLEN-BRADLEY COMPANY (ROCKWELL AUTOMATION, INC.) switches and transformers (up to 440 volts).  Plaintiff recalls WORTHINGTON pumps and valves, and INGERSOLL-RAND compressors.  Plaintiff recalls repairing DEMCO VALVES by taking them apart and replacing their linings, o-rings, seals, and packing material and reinstalling the valves back in the pipeline.  Plaintiff also worked with and around insulators who installed JOHNS MANVILLE pipe insulation.  This was a very dusty process.  Plaintiff currently contends that he was exposed to asbestos during this employment.

////

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Centrilift Inc<br>200 W Stuart Roosa Dr<br>Claremore, OK (fka Byron Jackson Pumps) | Centrilift Inc. locations, including but not limited to:<br><br>Burmah Oil,<br>Huntington Beach, CA<br><br>THUMS (Oil Reserves)<br>Long Beach, CA<br><br>Santa Barbara, CA | Electrician | 1981 |

Job Duties:  Plaintiff installed BYRON JACKSON (BW/IP INTERNATIONAL INC.) pumps at oil companies in Southern California.  Plaintiff installed SQUARE D switchgear (up to 440 volts); CUTLER-HAMMER (EATON ELECTRICAL INC.) switchgear and relays (up to 440 volts); WESTINGHOUSE (VIACOM, INC.) breakers and starters (up to 1200 volts); and ALLEN-BRADLEY (ROCKWELL AUTOMATION, INC.) overload and underload protection and HONEYWELL and FISHER flowchart meters.  Plaintiff observed the following BURMAH OIL employees performing maintenance work in his presence, including but not limited to:  Joe Davis, Ernie Weiss, Harold Stump, Freddie Bacbock, Bob Dunlap, Bob White, Dick Smith and John Travis.  Plaintiff observed BURMAH OIL employees performing electrical work, and mixing and working with drilling mud and sack of drilling mud additive.  Plaintiff took instructions from some of the BURMAH OIL supervisors, though he was employed by CENTERLIFT.  Plaintiff worked around the following outside contractors, including but not limited to SANTA FE DRILLING, HALLIBURTON, SCHLUMBERGER, DOWELL and HUGHES TOOL CO., as well as SIGNAL and AMINOIL employees.  Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Powerine Oil Co. | Powerine Oil Co.<br>Santa Fe Springs, CA | Electrician | 1981-1982 |

Job Duties:  Plaintiff worked as an electrician and instrument man at Powerine Oil Co.  Plaintiff installed the following products:  SQUARE D switchgear (up to 440 volts); CUTLER-HAMMER (EATON ELECTRICAL INC.) switchgear and relays (up to 440 volts); WESTINGHOUSE (VIACOM, INC.) breakers (up to 440 volts); ALLEN-BRADLEY (ROCKWELL AUTOMATION, INC.) switches and transformers (up to 440 volts); and

performed maintenance work on ALLIS-CHALMERS turbines. Plaintiff was in charge of steam generators in the refinery area and recalls that he would assist welders cutting and sizing VENTMESH (ASTEN JOHNSON, INC.) 875-R to cover the exposed pipe. Plaintiff recalls applying or removing valve packings and being near others who were doing same. Plaintiff recalls RILEY STOKER boilers and EAGLE PICHER insulating cement applied over the steam pipes. Plaintiff recalls the firebrick and refractory materials inside the boilers were manufactured by A.P. GREEN (A.P. GREEN INDUSTRIES, INC.). Plaintiff recalls working with or around JOHNS-MANVILLE pipe covering, block insulation, asbestos cements and cloth. Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Robert Kacsuta, Self-employed | Various homes in Pittsburgh, PA | Handyman | 1982-1986 |

Job Duties: Plaintiff recalls doing home remodel work, including knocking down walls, installing sheetrock, remodeling bathrooms, building kitchen counters, and building game and spare rooms for friends and neighbors in the Pittsburgh, Pennsylvania area. Plaintiff currently contends that he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Naval Reserve | Long Beach Naval Station, Long Beach, CA; | Electrician | 11/1/1983-3/22/1984 |

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Naval Reserve | Naval Reserve Station, Commander of Submarine Squadron (COMSUBRON) 18 1005 Pittsburgh, PA | Electrician | 11/1/1983-3/22/1984 |
| | Navy Reserve Station, Shore Intermediate Maintenance Activity (SIMA)CHASN DET 805 N&MCRC Pittsburgh, PA | | 3/23/1984-6/10/1984; 6/11/1984-10/28/1984; 11/10/1984 -10/28/1985 |

|  | | |
|---|---|
| Naval Station<br>SUBMARINE<br>SQUADRON 18<br>Charleston, SC | 6/11/1984-<br>6/22/1984 |
| Naval Reserve Readiness<br>Command,<br>Naval Education and<br>Training Center<br>Newport, RI | 10/29/1984 -<br>11/9/1984 |

Job Duties:  Plaintiff did electrical maintenance at maintenance and shore facilities while serving in the Naval Reserve.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of<br>Exposure | Job Title | Exposure<br>Dates |
|---|---|---|---|
| M B Haynes Corporation<br>P.O. Box 16589<br>Asheville, NC | M B Haynes Corporation<br>Asheville, NC | Electrician | 1985<br>(approximately 2<br>weeks) |

Job Duties:  Plaintiff worked as an electrician's helper running conduit and pulling wire on new construction sites.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of<br>Exposure | Job Title | Exposure<br>Dates |
|---|---|---|---|
| Eldeco Inc<br>5751 Augusta Rd<br>Greenville, SC | Paragon Plastic Plant<br>Union, SC | Laborer | 1986 |

Job Duties:  Plaintiff worked as a laborer.  Plaintiff recalls cleaning up the Paragon Plastic Plant, a fairly new building in Union, South Carolina after a fire.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of<br>Exposure | Job Title | Exposure<br>Dates |
|---|---|---|---|
| IH Services Inc<br>P.O. Box 5033<br>Greenville, SC | IH Services Inc<br>Greenville, SC locations<br>including, | Maintenance<br>Mechanic | 1987-1988 |

Milliken & Company
Union, SC
(Monarch Hwy plant)

Union Buffalo Mills Co.
Union, SC

Job Duties:  Plaintiff worked as a maintenance mechanic at various cotton mills listed above. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Dept of the Army - SRD AC RC DFAS-IN-FJC 8899 E. 56th Street Indianapolis, IN | South Carolina National Guard locations in South Carolina including Union, Mullins, Whitmire, Marion, and Fountain Inn | Sergeant | 5/28/1986-11/27/1996 |
| | US Army, Fort Stewart, GA | | 1990-1991 |
| | Fort Irwin, Barstow, CA | | 11/30/1990-4/22/1991 |

Job Duties:  Plaintiff served in the South Carolina National Guard from May 28, 1986 to November 27, 1996.  Plaintiff was on active from Nov. 30, 1990 to April 22, 1991.  Plaintiff received an honorable discharge and was retired from the South Carolina National Guard and placed on retired reserve status effective November 28, 1996.  Plaintiff is currently unaware if he was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Burnsed Marble & Granite Co., 285 Wilson Landing Rd Prosperity, SC | Burnsed Marble & Granite Co., Union, SC | Laborer | 1988-1989 |

Job Duties:  Plaintiff poured cement to make trash cans.  Plaintiff is currently unaware if he was exposed to asbestos during this service.

///

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Granart Inc.<br>516 N Pinckney St<br>P.O. Box 37<br>Union, SC | Granart Inc.<br>Union, SC | Laborer | 1988 |

Job Duties:  Plaintiff poured concrete, hauled granite rock, and installed tombstones and markers.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| W E Baker & Son Inc<br>P.O. Box 307<br>Whitmire, SC | W E Baker & Son Inc<br>Whitmire, SC | Electrician | 1990 |

Job Duties:  Plaintiff worked as an electrician's helper on new construction sites and on old remodel jobs.  Plaintiff removed walls and tore out old electrical wiring.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Labor Plus<br>212 Rolling Hills Ct<br>West Columbia, SC | Labor Plus<br>West Columbia, SC | Laborer | 1993-1994 |

Job Duties:  Plaintiff performed cleanup after buildings were torn down.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Sisson Welding &<br>Construction Co Inc<br>1637 North Highway 79<br>Fordyce, AR | Unknown | Unknown | 1993 |

Job Duties:  Plaintiff does not currently recall the specifics of this employment.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Manpower Wisconsin Inc<br>5301 N Ironwood Rd<br>Milwaukee, WI 53217-4910 | Spartanburg, SC | Laborer | 1994 |

Job Duties:  Plaintiff worked as a laborer in factories and mills, performing cleanup work and removing old construction sites.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Work Mates of the Piedmont Inc., 1216 S Spring St Spartanburg, SC | Unknown | Laborer | 1994 |

Job Duties:  Plaintiff performed clean up of construction sites.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| DFAS-Denver Center<br>Code Ft RRMIIP<br>1240 E Ninth St Rm 2983<br>Cleveland, OH | Naval Weapons Station Seal Beach, CA | Warehouseman | 1997-1998 |

Job Duties:  Plaintiff inventoried ordnance and loaded and unloaded weapons and equipment onto ships.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Envisionneering<br>4485 Danube Drive, Ste. 46<br>King George, VA | Naval Weapons Station Seal Beach, CA | Warehouseman | 1998-2000 |
|  |  | Ordnance Technician (Manager) | 2000-2007 |

Job Duties:  Plaintiff is involved with demilitarizing old Naval equipment from shipyards by junking or recycling it.  Plaintiff is currently unaware if he was exposed to asbestos during this service.

PARA-OCCUPATIONAL EXPOSURE:

Plaintiff's father, Thomas Kacsuta, Sr., deceased, worked for Jones & Laughlin Steel in Pittsburgh, Pennsylvania, while plaintiff was growing up.  Plaintiff recalls that his father would come home in his dirty work clothes and his mother would do the laundry.  Plaintiff was around her as she would shake the clothes out.

Plaintiff's father's work history is as follows:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Jones & Laughlin Steel Corp Emp Ben Trust P90748 1211 Avenue of the Americas New York, NY | Jones & Laughlin Steel Pittsburgh, PA | Various jobs, from laborer to ingot roller | 1944-1962 |

Job Duties:  Plaintiff's father, Thomas Kacsuta, deceased, performed various duties in a steel mill.  Many of plaintiff's father's jobs were in the "blooming mill."  Plaintiff's father did everything from laborer, where he would shovel slag, to running the mill machinery to keep the steel running; his last job was as an ingot roller.  Plaintiff recalls that all his uncles, John, George, Paul, Joe, and Eddie Kacsuta, as well as plaintiff's brother, Thomas Kacsuta, Jr., also worked at Jones & Laughlin and plaintiff was around them all the time.  George Kacsuta is the only one of plaintiff's uncles still living.  Plaintiff currently contends that he was exposed to asbestos as a result of his father's employment.

NON-OCCUPATIONAL EXPOSURE:

FRICTION

1947 BUICK- Plaintiff assisted his uncle Joe Kacsuta, deceased, with a brake replacement, in approximately 1952.  Plaintiff and his uncle installed new BENDIX replacement brakes.  They performed this work in a garage.  Plaintiff's friend Rick Menzy was present during these repairs.  Plaintiff currently contends he was exposed to asbestos during these automobile repairs.

1969 FORD LTD, Station Wagon- Plaintiff purchased this car new from WILSON FORD in Huntington Beach, California.  Plaintiff performed the first brake replacement.  Plaintiff removed the OEM brake and replaced them with HONEYWELL brakes which he purchased from AUTOZONE in Huntington Beach, California.  Plaintiff currently contends he was

exposed to asbestos during these automobile repairs.

1973 DODGE (DAIMLERCHRYSLER CORPORATION) motor home- Plaintiff bought this vehicle new from HUNTINGTON BEACH DODGE on Beach Blvd. in Huntington Beach, California.  Plaintiff performed brake work on this vehicle in 1975.  Rick Menzy assisted. Plaintiff removed OEM CHRYSLER brake parts, and bought new BENDIX replacement brakes from same AUTOZONE in Huntington Beach.  Plaintiff currently contends he was exposed to asbestos during these automobile repairs.

HOME REMODEL

In 1961, plaintiff removed the pre-existing linoleum tile in his parents kitchen and bathroom and replaced it with ARMSTRONG linoleum tile.  The tiles came in squares, some of which plaintiff had to cut down to size.  This process created dust. Plaintiff currently contends he was exposed to asbestos during this home remodeling project.

Plaintiff:   RICHARD EDDY

Plaintiff's injuries:  Plaintiff was diagnosed with asbestosis on or about March 2003.

Defendants:  Plaintiff contends that the asbestos-containing products to which he was or may have been exposed to were manufactured, supplied, distributed, installed and/or contracted for by Defendants.   Plaintiff's exposure to asbestos occurred at the following times and places, and involved exposure to dust created by the contractors and the products of the entities listed below. The exposure includes, but is not limited, to the following presently known contractors and the manufacturers and distributors of asbestos-containing products:

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Unknown Body Shop Owned by Dallas Petty | Body Shop Mogadore, OH | Laborer | Summer 1962 |

Job Duties:  Plaintiff worked as a laborer, assisting mechanics with auto body and auto mechanic work.  Plaintiff swept work areas and cleaned work areas and auto parts with compressed air. Plaintiff assisted in auto repair work including brake jobs, clutch jobs and transmission jobs. Plaintiff cleaned up after these jobs were completed.  Plaintiff recalls cleaning up the shop after new BENDIX brakes were taken out of the box, ground with an arcing machine, and installed on vehicles.  Plaintiff recalls working on the head gasket of a 1956 DODGE, and holding the new gasket in place while it was installed.  Plaintiff recalls removing an OEM clutch from a 1954

FORD in order to install a new one. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Umbaugh Pole Building, Ravenna, OH | Umbaugh Pole Building Various commercial and agricultural buildings, Ravenna, OH | Carpenter | 1963 (6 months) |

Job Duties: Plaintiff performed new construction and renovation of various commercial and residential buildings in the Ravenna area. Plaintiff installed CELOTEX roof shingles. Plaintiff recalls installing CELOTEX insulation board at this site and cutting the material with a knife and saw. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | Naval Training Center, Great Lakes, IL | Trainee | 8/26/1963-11/1963 |

Job Duties: Plaintiff completed basic training. Plaintiff is currently unaware if he was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| U.S. Navy | USS TULARE (AKA-112) Various ports, including but not limited to: | Machinist Mate | 11/1963-4/19/1967 |
|  | Naval Air Station, North Island, San Diego, CA |  | (1 week) |
|  | Naval Repair Facility, Subic Bay, Philippines |  | (1-2 weeks) |
|  | Naval Air Station, Atsugi, Japan |  | (1-2 weeks) |

| | |
|---|---|
| Naval Repair Facility, Sasebo, Japan | (1-2 weeks) |
| Naval Repair Facility, Okinawa, Japan | (1-2 weeks) |
| U.S. Air Force Base, Kadena AFB, Japan | (1-2 weeks) |
| Naval Air Station, Naha, Japan | (1-2 weeks) |
| White Beach, Japan | (1-2 weeks) |
| Pearl Harbor Naval Shipyard, Honolulu, HI | (1-2 weeks) |
| Vietnam | 1 year |
| Mare Island Naval Shipyard, Vallejo, CA | 3 months |
| Long Beach Naval Shipyard, Long Beach, CA | (1-2 weeks) |

Job Duties:  Plaintiff boarded the <u>USS TULARE</u> at the Naval Air Station in San Diego in November, 1963.  Plaintiff worked in the engine and boiler rooms of the ship, repairing and re-insulating steam lines, boilers, engines and blowers.  Plaintiff used a mule skinner and serrated knife to remove existing insulation from steam pipes.  Plaintiff removed, repaired and then replaced WORTHINGTON valves and FLEXITALLIC gaskets.  Plaintiff used a knife to cut and fit asbestos cloth which he used to re-insulate the pipes after making repairs.  When working in the boiler rooms, plaintiff removed and applied boiler lagging, jackets and feed pumps, which were insulated with asbestos.  Plaintiff stood fire watch in the engine room when he was not performing repairs.  Plaintiff used asbestos-containing cloth and millboard as a fire shield which he cut and fit according to the size of the space he was watching.  The <u>USS TULARE</u> had asbestos-insulated steam pipes running throughout; plaintiff cleaned his bunk space daily and recalls it was dusty with asbestos insulation from the overhead pipes.  Plaintiff worked in very dusty conditions while in the engine and boiler rooms, his clothing and hair were covered in white dust and debris.  Plaintiff recalled working on DELAVAL pump and turbine parts.  Plaintiff recalled replacing gaskets, impellers and pump parts on DELAVAL equipment.  Plaintiff recalls doing extensive work on an air ejector located in the smoke stack of the ship.  Plaintiff recalls working on two evaporators on this ship.  Plaintiff removed and installed gaskets

in connection with these evaporators. On a daily basis, plaintiff used rough brushes to sweep and clean insulation debris from the floor and engine spaces. Plaintiff performed his duties within several feet of other machinists mates, boilermakers, electricians and refrigeration specialists who were also disturbing and applying asbestos-containing insulation to pipes and other machinery. Plaintiff recalls Commanders: first name unknown, Wynn, deceased; first name unknown Negle, address unknown. Plaintiff recalls shipmates: Otto Fulse, deceased; Robert Wilms, Cincinnati, Ohio; Robert Malin, Cincinnati, Ohio; Terri Weiss, Colorado; Enson Turner, California. Plaintiff currently contends he was exposed to asbestos during this service.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Umbaugh Pole Building Ravenna, OH | Umbaugh Pole Building Various commercial and agricultural buildings, Ravenna, OH | Carpenter | 1967 (8 months) |

Job Duties: Plaintiff performed new construction and renovation of various commercial and residential buildings in the Ravenna area. Plaintiff installed CELOTEX and OWENS CORNING roof shingles. Plaintiff recalls co-workers Hobart Eddy, Tom Eddy and Gary McNeil (Rootstown, Ohio). Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Jeff Eddy Pole Building | Various commercial and residential sites in Stow, Brimfield, Rootstown, Kent and Akron, OH | Carpenter | Late 1967-early 1968, again in 1979 |

Job Duties: Plaintiff performed new construction and renovation of various commercial and residential buildings in Ohio. Plaintiff installed CELOTEX and OWENS CORNING roof shingles. Plaintiff recalls using the following JOHNS MANVILLE products: insulation board, felt paper. ceiling tiles and floor tiles. In 1979, Plaintiff recalls obtaining supplies from CARTER LUMBER in Mogadore, Ohio. Plaintiff recalls co-workers Hobart Eddy, Jim Wallaby, (Brimfield, Ohio), Larry Right. Plaintiff currently contends he was exposed to asbestos during this employment.

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| JRC Holding Inc. Rootstown, OH | Jet Rubber Co. Rootstown, OH | Laborer | 1968-1970 |

Job Duties:  Plaintiff put solid rubber into molds where it would be shaped into various rubber products. Plaintiff was in proximity to insulated presses as they were being repaired by others. Plaintiff recalls the insulation was removed before the machines were torn apart and the parts replaced. Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Flintkote Company Ravenna, OH | Flintkote Company Ravenna, OH | Laborer | 1968- 1971 |

Job Duties:  Plaintiff worked as a laborer for the Flintkote Company for three years and performed a different job during each year of his employment, as described below:

1968:  Plaintiff unloaded asbestos insulation from boxcars.  Plaintiff unloaded 75 pound bags of JOHNS-MANVILLE 450 CEMENT and THERMOBESTOS block.  Plaintiff recalls unloading bags of asbestos-containing materials and seeing the brand names:  CONGOLEUM and ARMSTRONG on the packaging.  Plaintiff swept and cleaned the work area on a daily basis, as the boxes and bags of insulation and block were sometimes broken and the work site was dusty with asbestos fiber.

1969:  Plaintiff worked inside the plant, dumping bags of asbestos into a 4-by-6-foot hopper called "The Willow."  Plaintiff ripped open the bags using a knife and dumped the dry asbestos into the hopper which finely chopped the fibers and created clouds of dust.  Plaintiff's clothing and beard were constantly covered in white asbestos dust.  On a daily basis, plaintiff swept and cleaned the work area, which was also covered in asbestos fiber.  Plaintiff recalls using a forklift to move asbestos cement pipe around the facility.  Plaintiff recalls that these pipes would often break, creating visible dust.

1970:  Flintkote built a plastic production plant next door to the asbestos manufacturing plant. Plaintiff worked in the plastic plant, mixing resin to make plastic pipes.  Plaintiff frequently went next door to the asbestos plant to pick up materials.

Plaintiff recalls co-workers Ronald Philpot (Ravenna, Ohio), Joe Schowalter (Ravenna, Ohio), Bob Moore (Ravenna, Ohio), Ronald Rogers, Bill Evans (Ravenna, Ohio).  Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Wyman L. Swain | Custom Homes Mantua, OH | Carpenter | 1970 (1 day) |

Job Duties:  Plaintiff recalls carrying CELOTEX roof shingles during this one day of employment.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Cypress Inn | Cypress Inn Rootstown, OH | Bartender | 1970 |

Job Duties: Plaintiff worked part time as a bartender. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Consyst | Consyst, Streetsboro | Crane Operator | 1970 |

Job Duties:  Plaintiff worked as a crane operator manufacturing concrete walls in a factory.  Plaintiff recalls that he worked here for about one year in the same building where the concrete was mixed.  Plaintiff recalls co-worker Tom Eddy. Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Clearwater Roof Tresses | Clearwater Roof Tresses Clearwater, FL | Carpenter | 1971 |

Job Duties:  Plaintiff built tresses out of wood or metal.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

/////

/////

K:\Injured\104383\Fed\Feda (Group PI).wpd

71

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Irwin Yachts Clearwater, FL | Irwin Yachts Clearwater, FL | Carpenter | 1971 (8 months) |

Job Duties:  Plaintiff built boats and performed interior carpentry.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Pinellas Framing St. Petersburg, FL | Pinellas Framing, St. Petersburg, FL; Various high-rise buildings in Florida.. Cities include, but are not limited to: Tampa; St. Petersburg; Clear Water; Sun Eaton; and Clear Water Beach, FL | Carpenter | 1972-1973 |

Job Duties:  Plaintiff performed both new construction and renovation of high rise buildings in Florida.  Plaintiff installed floor tile manufactured by JOHNS-MANVILLE, ARMSTRONG, CELOTEX, CONGOLEUM and GAF COMPANY.  Plaintiff installed ceiling tile manufactured by JOHNS-MANVILLE, ARMSTRONG, CELOTEX, CONGOLEUM and GAF COMPANY. Plaintiff applied GOLD BOND and BONDEX joint compound.  Plaintiff installed OWENS CORNING roof shingles and pipe insulation.  Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Various Employers including Joe Seeter, WFH Construction Trafalgar Community Developers | Various high-rise buildings in Florida. Cities include, but are not limited to: Tampa; St. Petersburg; Clear Water; Sun Eaton; and Clear Water Beach<br><br>Sand Castle Clear Water Beach, FL | Carpenter (Foreman) | 1974-1976; 1979 |

Job Duties:  Plaintiff performed both new construction and renovation of high-rise buildings in Florida.  Plaintiff installed floor tile manufactured by JOHNS-MANVILLE, ARMSTRONG, CELOTEX, CONGOLEUM and GAF COMPANY.  Plaintiff installed ceiling tile manufactured by JOHNS-MANVILLE, ARMSTRONG, CELOTEX, CONGOLEUM and GAF COMPANY.  Plaintiff applied GOLD BOND and BONDEX joint compound.  Plaintiff installed OWENS CORNING roof shingles and pipe insulation.  Plaintiff recalls co-worker:  Thomas Eddy, Florida.  Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Self-employed Richard Eddy | Various high-rise buildings and restaurants in Florida:  Cities include, but are not limited to:  Tampa;  St. Petersburg; Clear Water; Sun Eaton; and Clear Water Beach, FL | Construction Worker/Owner | 1976-1978 |

Job Duties:  Plaintiff performed new construction and renovation of various high-rise buildings and restaurants in Florida.  Plaintiff purchased supplies from former employer, Pinellas FRAMING.  Plaintiff installed floor tile manufactured by JOHNS-MANVILLE, ARMSTRONG, CELOTEX, CONGOLEUM and GAF COMPANY.  Plaintiff installed ceiling tile manufactured by JOHNS-MANVILLE, ARMSTRONG, CELOTEX, CONGOLEUM and GAF COMPANY.  Plaintiff applied GOLD BOND and BONDEX joint compound.  Plaintiff installed OWENS CORNING roof shingles and pipe insulation.  Plaintiff currently contends he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Umbaugh, Pole Building, Ravenna, OH | Fox Aero, Ravenna, OH | Carpenter | 1979 |

Job Duties:  Plaintiff performed new construction of an aircraft facility.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

////

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Schlosser & Trevethic Morgantown, WV | Schlosser & Trevethic Various commercial and residential buildings, Morgantown, VW,. Including, but not limited to: | Carpenter (Foreman) | 1980-1984 |
| | University of West Virginia, dormitories and fraternity houses, Morgantown, VW; | | (1 month) |
| | Vincent Paloti Hospital, Morgantown, WV | | (1 month) |

Job Duties:  Plaintiff oversaw and performed new construction and renovation of various commercial and residential buildings in Morgantown, West Virginia.  Plaintiff worked in close proximity to carpenters, electricians, drywall installers, plumbers, painters and flooring installers.  Plaintiff recalls co-workers:  Ken Schlosser, New Jersey; Steve Trevethic, Morgantown, West Virginia; James Blosser, Morgantown, West Virginia.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

| Employer | Location of Exposure | Job Title | Exposure Dates |
|---|---|---|---|
| Dick Builders Dilliner, PA | Dick Builders Various commercial and residential buildings in the Dilliner, PA, and Morgantown, WV, areas | Owner (Foreman) | 1985-Present |

Job Duties:  Plaintiff oversaw and performed new construction and renovation of various commercial and residential buildings in the Dilliner, Pennsylvania area, and Morgantown, West Virginia.  Plaintiff recalls employees:  James Blosser, Morgantown, West Virginia, George Presock, Dilliner, Pennsylvania; Gary Saraba, Dilliner, Pennsylvania; Troy Jenkins,

Morgantown, West Virginia.  Plaintiff is currently unaware if he was exposed to asbestos during this employment.

Plaintiff currently contends he was not exposed to asbestos after 1980.

NON-OCCUPATIONAL EXPOSURE:

Plaintiff performed brake and clutch repair on his vehicles as described below:

1963 FORD Station Wagon:  Plaintiff's father purchased this car in 1969 with 50,000 miles on it.  Plaintiff removed the brakes on this car in 1972 and replaced them with new BENDIX brakes.

1966 FORD F-150:  Plaintiff purchased this car in 1972 with about 80,000 miles on it.  Plaintiff performed clutch and brake jobs on this vehicle.  Plaintiff replaced all four brakes with new BENDIX brakes that he purchased from NAPA AUTO PARTS in Florida.  Plaintiff recalls having to remove one large gasket from this vehicle

1969 CHEVROLET Impala:  Plaintiff purchased the car from a private owner in 1973, with 50,000 miles.  Plaintiff replaced the original brakes and clutch with parts purchased from NAPA AUTO PARTS, Ravenna, Ohio.  Plaintiff purchased BENDIX brakes.  Plaintiff performed the brake and clutch replacements in his father in-law's home garage.  Plaintiff removed the wheels and tires, and then the drum brakes, which he beat against the garage floor to remove dust.  Plaintiff used generic parts cleaner and a rag to scrape dust from the drum brakes.

1972 FORD F-150:  Plaintiff purchased the truck in 1976, used, with 50,000 miles, from James Stoneking, deceased.  Plaintiff performed a full overhaul of the car, including motor, transmission, and original brakes.  Plaintiff purchased RAYBESTOS disc and drum brakes at NAPA AUTO PARTS on University Avenue in Morgantown, West Virginia.  Plaintiff performed the car repair in his garage.  Plaintiff removed the wheels and tires, and then the

brakes, he used an air compressor to blow out dust from the original brakes.  Plaintiff ground his own brakes with a grinding machine in his garage.

1976 FORD F150:  Plaintiff purchased the truck in 1980, used, with 40,000 miles, from James Stoneking, deceased.  Plaintiff purchased BENDIX disc and drum brakes at AUTOZONE on Main Street in Waynesburg, Pennsylvania.  Plaintiff replaced the original brakes in his garage.  Plaintiff removed the wheels and tires, and then the brakes; he used an air compressor to blow out dust from the original brakes.  Plaintiff ground his own brakes with a grinding machine in his garage.

1990 FORD F-150:  Plaintiff purchased the truck in 1990, used, with 10,000 miles, from FOX FORD in Morgantown, West Virginia.  Plaintiff replaced the original brakes in 1995 with

BENDIX drum and disc brakes, purchased at AUTOZONE on Main Street in Waynesburg, Pennsylvania.  Plaintiff removed the wheels and tires, and then the brakes; he used an air compressor to blow out dust from the original brakes.  Plaintiff ground his own brakes with a grinding machine in his garage.

Plaintiff currently contends he may have been exposed to asbestos during these activities.