Stephen K. Brunk, Esq. (Bar No. 53238)
LAW OFFICES OF STEPHEN K. BRUNK
6098 La Jolla Mesa
La Jolla, California 92037
Telephone: (619) 234-3300
Fax: (619) 234-3331

Attorney for defendant Bell Helicopter Textron Inc.

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN L. DAVIS, WILLIAM LARSEN, JAMES PIERCE, SR., ROBERT SCHOELZEL, NORRIS WALLACE, JAMES WATSON, ROBERT KACSUTA, and RICHARD EDDY, <br><br> Plaintiffs, <br><br> vs. <br><br> GENERAL ELECTRIC COMPANY, VIAD CORP., TODD SHIPYARDS, GENERAL DYNAMICS CORPORATION, and BELL HELICOPTER TEXTRON, INC. <br><br> Defendants. | CASE NO. CV 08-0228 JSW <br><br> **RESPONSE BY DEFENDANT BELL HELICOPTER TEXTRON INC. TO ORDER TO SHOW CAUSE DATED FEBRUARY 26, 2008** <br><br> *Filing deadline: March 3, 2008* |

By its Order dated February 26, 2008, the Court requested the parties to show cause why this matter should not be stayed pending a determination by the Judicial Panel on Multi-District Litigation (the "JPML") as to whether this matter should be transferred to MDL 875 (the "MDL court"), which is handling asbestos litigation. This is the response of defendant Bell Helicopter Textron Inc. ("Bell").

While Bell does not disagree with plaintiffs' suggestion that some of the scheduling dates established by the Court may arrive before the JPML makes its decision, Bell opposes

/ / /

1  the entry of a blanket stay that would vacate the date set for its FRCP 12(b)(7) motion to

2  dismiss for the following reasons:

3  **The RPJPML provide that the pendency of a conditional transfer order does not suspend pretrial proceedings at the District Court.**

4

5      While plaintiffs' briefing here, in favor of a stay pending a decision by the JPML on

6  a transfer order, cites the case of In re Asbestos Prods. Liab. Litig. v. Int'l Paper Co., 170 F.

7  Supp. 2d 1348, 1349 (J.P.M.L. 2001), for the general proposition that a stay can be issued,

8  the following language in the partial quotation is at least as important as plaintiffs' citation of

9  only a portion of it:

10      *Panel Rule 1.5, R.P.J.P.M.L., 199 F.R.D. at 427, expressly provides that the*

11  *pendency of a conditional transfer order does not in any way i) suspend orders and pretrial proceedings in the district court in which the action that is the*

12  *subject of the conditional transfer order is pending, or ii) limit the pretrial jurisdiction of that court; and 3) accordingly, those courts wishing to address*

13  *such motions have adequate time in which to do so, those courts concluding that such issues should be addressed by the transferee judge need not rule on*

14  *them, and the process of 1407 transfer in MDL-875 can continue without any unnecessary interruption or delay.*

15  Id.

16  **This motion to dismiss does not require the expertise of the MDL court, and this Court is**

17  **as, if not more, qualified as the MDL to evaluate the issue presented by Bell's motion.**

18      There has been no suggestion by plaintiffs in their briefing about a stay that a

19  determination of whether an action should proceed at all in Federal court because of plaintiffs'

20  failure to join indispensable parties is within the exclusive jurisdiction of the MDL court. And,

21  in fact, because the question of whether the omitted parties were indispensable because of

22  California's fairly unique statute providing only several liability of defendants for the non-

23  economic damages of personal injury plaintiffs, this Court may in fact be more qualified to rule

24  on an issue so closely entwined with California law than is the MDL court. Nothing should

25  prevent this Court from making a decision that could potentially result in the dismissal of this

26  action, in which case there would be nothing to transfer to MDL 875. A situation where a

27  defendant moves to dismiss a Federal action because of plaintiffs' failure to join indispensable

28  parties is little different than plaintiffs usually claiming that a stay is inappropriate in response

to their request that the District Court determine if it has jurisdiction in connection with a motion to remand. And Courts have recognized that deferral to the MDL court is not only not required it is sometimes not desirable:

> As noted, Union Carbide has requested that the Court stay this litigation, including the motion to remand, pending transfer of this case to the MDL asbestos docket in the Eastern District of Pennsylvania. The Court concludes that the requested stay should be denied. The issue presented by the motion to remand, i.e., whether Union Carbide properly removed this action under 28 U. S.C. § 1442(a)(1) *does not raise issues exclusively within the area of expertise of the MDL court. This Court is as qualified to evaluate the factors establishing federal jurisdiction as any other federal court. Where, as here, the motion to remand does not "implicate[ ] issues that are within the exclusive jurisdiction of the MDL Court . . . the motion[ ] to remand can be resolved without encroaching on the exclusive territory of the MDL Court."* In re Massachusetts Diet Drug Litig., 338 F. Supp. 2d 198, 201 (D. Mass. 2004). Under such circumstances, a stay is not warranted. See id. See also Greene v. Wyeth, 344 F. Supp. 2d 674, 678-79 (D. Nev. 2004) (noting that *the purpose of the statute governing transfer to MDL proceedings, 28 U.S.C. § 1407, is not furthered by referring to a transferee court issues of law that the transferor court is equally competent to decide*); Conroy v. Fresh Del Monte Produce, Inc., 325 F. Supp. 2d 1049, 1054 (N.D. Cal. 2004) (holding that a stay pending transfer of a case to an MDL proceeding would be *"judicially inefficient" where "[t]his Court is readily familiar with federal law, Ninth Circuit law, and California law, the laws applicable to Plaintiff's motion [for remand] and Complaint."*); Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1048-49 (E.D. Wis. 2001) (holding that a stay of proceedings pending transfer to an MDL court generally should be denied where a transferor court's "preliminary assessment" of a notice of removal suggests that a case was improperly removed).

> Moreover, the resolution of the motion to remand requires an analysis of the unique facts of this case as presented to this Court. The issue is whether Union Carbide met its burden of proving the elements necessary for removal under 28 U.S.C. § 1442(a)(1). "The same degree of judicial resources must be expended here or in the District of [Pennsylvania] to make an assessment of which party should prevail." Pennsylvania v. Tap Pharm. Prods., Inc., 415 F. Supp. 2d 516, 521 (E.D. Pa. 2005). *Since only one federal court needs to "make an individualized assessment of the jurisdictional issues in this case" there is no reason to transfer the jurisdictional issue to the MDL court.* Id. See also Minnesota v. Pharmacia Corp., No. 05-1394 (PAM/JSM), 2005 U.S. Dist. LEXIS 27638, 2005 WL 2739297, at *2 (D. Minn. Oct. 24, 2005)(*"[G]ranting a stay solely based on the existence of a factually-related MDL proceeding, without undertaking an individualized analysis of subject matter jurisdiction, would run counter to established case law, congressional intent, and . . . Rule 1.5 [of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation], all of which contemplate a district court will act to resolve threshold jurisdictional concerns[.]"*).Cf.Dean v. Eli Lilly & Co., Civil Action No. 06-1375 (EGS), 2007 U.S. Dist. LEXIS 39603, 2007 WL 1589496, at *4 n.2 (D.D.C. June 1, 2007)(in the context of a motion for transfer under 28 U.S.C. § 1404, holding that it was a factor weighing against transfer that the same legal question regarding the statute of limitations would have to be decided regardless of whether the case was transferred or not). Finally, the Court sees

1
*no reason to require* Weese to suffer the *undeniable delays inherent in all MDL asbestos cases unless there is federal jurisdiction. To undergo such a lengthy*
2
*process to find out that there is no federal jurisdiction would be frankly unjust,* in view of Weese's serious medical condition. For all these reasons, the Court
3
concludes that Union Carbide's request for a stay should be denied.

4
Weese v. Union Carbide Corp., 2007 U.S. Dist. LEXIS 73970, 4-8 (D. Ill. 2007)

5
The issue raised by the motion to remand, i.e. whether Northrop properly removed this action under 28 U.S.C. § 1442(a)(1) (federal officer removal)
6
does not raise issues exclusively within the area of expertise of the MDL Court. This court is as qualified to evaluate the factors establishing federal
7
jurisdiction as any other federal court. Where, as here, the motion to remand does not "implicate[] issues that are within the exclusive jurisdiction of the
8
MDL Court . . . the motion[] to remand can be resolved without encroaching on the exclusive territory of the MDL Court." In re Massachusetts Diet Drug
9
Litigation, 338 F. Supp.2d 198, 201 (D. Mass. 2004). Under such circumstances, a stay is not warranted. Id., and cases cited.
10

11
Moreover, the resolution of the motion to remand requires an analysis of the unique facts of this case as presented to this court. The issue is whether
12
Northrop met its burden of proving the elements of federal officer jurisdiction, not whether all manufacturers of products containing asbestos who sold such
products to the Navy are entitled to invoke this court's jurisdiction. *"The same*
13
*degree of judicial resources must be expended here or in the District of [Pennsylvania] to make an assessment of which party should prevail."*
14
Commonwealth of Pennsylvania v. TAP Pharmaceutical Products, Inc., 415 F.Supp. 2d 516, 521 (E.D. Penn. 2005). Since only one federal court needs
15
to "make an individualized assessment of the jurisdictional issues in this case" there is no reason to transfer the jurisdictional issue to the MDL Court. Id.
16

17
Finally, *this court finds no reason to require the plaintiffs to suffer the undeniable delays inherent in all MDL asbestos cases unless there is federal*
18
*jurisdiction.* To undergo such a lengthy process to find out that there is no federal jurisdiction would be a travesty of justice given Mr. Hilbert's medical
19
condition. For all these reasons, this court recommends that the motion to stay be denied and that the motion to remand be addressed.

20
Hilbert v. Aeroquip, Inc., 2007 U.S. Dist. LEXIS 29597, 15-16 (D. Mass. 2007)

21
**Many courts, including this Court, have frequently denied a**
**request for a stay in asbestos cases pending transfer to MDL 875.**
22

23
     The issue presented here is no different than threshold jurisdictional questions (usually
24
in the context of motions to remand removed cases, which are frequently opposed by
25
plaintiffs' law firm in this case on the grounds that a Court should decide a motion to remand
26
without deferring to the JPML by staying the action pending the transfer order process). Courts
27
in this District have routinely denied defendants' requests for stays of remand motions pending
28
/  /  /

1  a determination by the JPML on transfer to MDL 875; it should be no different for a plaintiffs'

2  request for a stay of a motion to dismiss and for the same reasons:

3              This Court is readily familiar with federal law, Ninth Circuit law, and
             California law, the laws applicable to Plaintiff's motion and Complaint.
4            Moreover, the parties have already fully briefed the issue of remand.
             Thus, staying the motion will not save either party any time. Finally,
5            *it is in the interest of judicial economy to decide issues of jurisdiction
             as early in the litigation process as possible.* If federal jurisdiction does
6            not exist, the case can be remanded before federal resources are further
             expended. In the Court's view, judicial economy dictates a present
7            ruling  on the remand issue.

8              Accordingly, Defendants' Motion to Stay is DENIED.

9  Conroy v. Fresh Del Monte Produce Inc., 325 F. Supp. 2d 1049, 1054 (*Northern District Cal.*

10 2004)(Order and opinion by Judge Saundra Brown Armstrong).

11       See also, Baker v. Asbestos Defendants (BP), 2004 U.S. Dist. LEXIS 20152 (*Northern*

12 *District Cal.* 2004)(Order and opinion by Judge Saundra Brown Armstrong, denying

13 defendant's requested stay of proceedings pending a JPML ruling on transfer and granting

14 motion to remand);[1] Burton v. AW Chesterton Co.), 2007 U.S. Dist. LEXIS 36990 (*Northern*

15 *District Cal.* 2007)(Order and opinion by Judge Susan Illston, granting motion for remand and

16 denying motion to stay).

17       Similarly, if plaintiffs in this case have failed to join indispensable party defendants,

18 that determination can be and should be made here and now before further Federal resources

19 are expended.

20       If this Court, then, is inclined to stay this action at all pending a decision by the

21 JPML, Bell suggests that its FRCP 12(b)(7) motion not be included in such a stay.

22

23 Dated: 3/3/08

24                                          Stephen K. Brunk, attorney for defendant
                                          Bell Helicopter Textron Inc.

25

26

27

28 [1] Plaintiffs' counsel in this case, Brayton PUrcell, were plaintiff's counsel in the Baker case
   and in fact argued against a stay being entered pending a decision by the JPML.

1  Stephen K. Brunk, Esq. (Bar No. 53238)
   LAW OFFICES OF STEPHEN K. BRUNK
2  6098 La Jolla Mesa
   La Jolla, California 92037
3  Telephone: (619) 234-3300
   Fax: (619) 234-3331
4

5  Attorney for defendant Bell Helicopter Textron Inc.

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11  JOHN L. DAVIS, WILLIAM LARSEN,           )   CASE NO. CV 08-0228 JSW
    JAMES PIERCE, SR., ROBERT SCHOELZEL,     )
12  NORRIS WALLACE, JAMES WATSON, ROBERT     )
    KACSUTA, and RICHARD EDDY,               )   SEPARATE LODGEMENT OF COPIES OF
13                                           )   NON-REPORTED CASES CITED IN
                   Plaintiffs,               )   RESPONSE OF DEFENDANT BELL
14                                           )   HELICOPTER TEXTRON INC. TO
                                             )   ORDER TO SHOW CAUSE DATED
15  vs.                                      )   FEBRUARY 26, 2008
                                             )
16  GENERAL ELECTRIC COMPANY,                )   Filing deadline: March 3, 2008
    VIAD CORP., TODD SHIPYARDS,              )
17  GENERAL DYNAMICS CORPORATION, and        )
    BELL HELICOPTER TEXTRON, INC.            )
18                                           )
                   Defendants.               )
19                                           )
                                             )
20  _____ )

21          In connection with its response to the Court's February 26, 2008 Order to Show

22  Cause, defendant Bell Helicopter hereby attaches copies of the following opinions cited in its

23  response:

24          1)    Baker v. Asbestos Defendants (BP), 2004 U.S. Dist. LEXIS 20152
                  (ND Cal. 2004)
25

26          2)    Burton v. AW Chesterton Co.), 2007 U.S. Dist. LEXIS 36990
                  (ND Cal. 2007)
27

28  /    /    /

1

    3)    <u>Hilbert v. Aeroquip, Inc.</u>, 2007 U.S. Dist. LEXIS 29597, 17-16
        (D. Mass. 2007)

2

3

    4)    <u>Weese v. Union Carbide Corp.</u>, 2007 U.S. Dist. LEXIS 73970
        (D. Ill. 2007)

4

5  Dated: 3/3/08

6                              Stephen K. Brunk, attorney for defendant
                              Bell Helicopter Textron Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LexisNexis® *Total Research System*                    Switch Client ⁞ Preferences ⁞ Sign Off ⁞ ?Help

*My Lexis™* ▼ Search ▼ Research Tasks ▼ Get a Document ▼ *Shepard's®* ▼ Alerts ▼ Total Litigator ▼ Transactional Advis

Source: My Sources > Federal Legal - U.S. > Federal Court Cases, Combined ⓘ
Terms: **stay w/s pending w/s transfer w/p asbestos**  (Edit Search | Suggest Terms for My Search | Feedback on Your Search)

↵Select for FOCUS™ or Delivery
☐

*2004 U.S. Dist. LEXIS 20152, \**

TOM BAKER, Plaintiff, v. ASBESTOS DEFENDANTS (B P) Defendants TEXTRON, INC. Removing Defendant.

No. C 04-2066 SBA, [Docket Nos. 10 & 26]

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2004 U.S. Dist. LEXIS 20152

September 27, 2004, Decided

**DISPOSITION:** Plaintiff's Motion to Remand granted and Plaintiff's request for fees and costs denied. Plaintiff's Second Supplemental Memorandum stricken from Record

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff individual initially filed the instant action in state court, seeking damages for asbestos-related personal injuries and disease stemming from occupational exposure to asbestos-containing products. Defendants, the government and others, including a helicopter builder, removed the action to federal court, and the individual moved to remand the instant action to state court and for his fees and costs.

**OVERVIEW:** The individual claimed that he had been exposed to asbestos while working as a mechanic in the United States Navy. The government speculated that the individual must have been exposed to asbestos while working in the Navy on certain helicopters. The helicopter builder based this determination on the fact that its "alternate entity" was named in the amended complaint. The helicopter builder reasoned that, because the alternate entity's only involvement with the Navy was through the helicopters, the individual's exposure must have occurred when working on those helicopters. Therefore, the helicopter builder justified removal under 28 U.S.C.S. § 1442(a)(1) on the grounds that production of its helicopters was "directed and controlled" by the government, and inter alia, that there was a causal nexus between the individual's claims and the acts the helicopter builder performed under color of federal office, because the government directly controlled the design and development of the helicopters. The individual however, declared unequivocally that his claims against the helicopter builder did not relate, in any way, to the helicopters.

**OUTCOME:** The individual's motion to remand was granted, and his request for costs and fees was denied. The matter was remanded to state court.

**CORE TERMS:** helicopter, removal, federal law, supplemental, transferee, briefing, stay proceedings, exposed to asbestos, attorney's fees, involvement, color, exposure to asbestos, federal office, failed to meet, failed to demonstrate, multidistrict, colorable, remanding, exposure, mechanic, causal, notify, nexus, supplemental briefing, stricken

EXHIBIT ___1___

## LEXISNEXIS® HEADNOTES                                                          ⊣ **Hide**

Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Federal Questions >
Well-Pleaded Complaint Rule 🔧
    Civil Procedure > Removal > Postremoval Remands > General Overview 🔧

**HN1** On a motion for remand, the burden of proving the propriety of removal rests in the
party who has removed. A cause of action arises under federal law only when the
plaintiff's well pleaded complaint raises issues of federal law. Thus, claims brought
under state law may arise under federal law, if vindication of the state right
necessarily turns upon construction of a substantial question of federal law, i.e., if
federal law is a necessary element of one of the well-pleaded claims.  More Like This Headnote

Civil Procedure > Removal > Basis > General Overview 🔧
Governments > Federal Government > Claims By & Against 🔧
Governments > Federal Government > Employees & Officials 🔧

**HN2** Removal jurisdiction is proper under 28 U.S.C.S. § 1442 (a)(1) when any officer of
the United States or person acting for him, for any act under color of such office seeks
removal to federal court. In order to remove under 28 U.S.C.S. § 1442(a)(1), the
defendant must: (1) demonstrate that it acted under the direction of a federal officer;
(2) raise a colorable federal defense to the plaintiff's claims; and (3) demonstrate a
causal nexus between the plaintiff's claims and the acts the defendant performed
under color of federal office. A corporation can be a "person" for purposes of 28
U.S.C.S. § 1442(a)(1).  More Like This Headnote | Shepardize: Restrict By Headnote

Civil Procedure > Removal > Postremoval Remands > General Overview 🔧

**HN3** An order remanding a case may require payment of just costs and any actual
expenses, including attorney's fees, incurred as a result of the removal. 28 U.S.C.S. §
1447(c). A court has "wide discretion" in deciding whether to award attorney's fees
under this provision.  More Like This Headnote

Civil Procedure > Venue > Multidistrict Litigation 🔧

**HN4** The decision to grant or deny a temporary stay of proceedings pending a ruling on the
transfer of the matter to the Judicial Panel on Multidistrict Litigation (JPML) lies within
a federal district court's discretion. Such a stay is appropriate when deferring to the
multi-district litigation transferee court for resolution of a motion to remand would
provide uniformity and efficiency in litigation that underlies the multidistrict litigation
system. 28 U.S.C.S. § 1407. Motions to remand are often decided by the district court
in which the motion was filed before consideration of transfer to the JPML.  More Like This Headn·

**COUNSEL:** **[\*1]** For Tom Baker, Plaintiff: David R. Donadio, Brayton Purcell, Novato, CA;
Kimberly J. Chu, Brayton & Purcell, Novato, CA; William A. Levin, Levin & Simes, San
Francisco, CA; David Lee Fiol, Brayton Purcell, Novato, CA.

For Asbestos Defendants (B P), Defendant: Stephen K. Brunk, Law Offices of Stephen K. Brunk,
La Jolla, CA.

For Textron Inc., Defendant: Stephen K. Brunk, Law Offices of Stephen K. Brunk, La Jolla, CA.

For Fiberite, Inc., Defendant: William Edward Steimle, **Filice** Brown Eassa & McLeod LLP,
Oakland, CA.

For American Cyanamid Company, Defendant: William Edward Steimle, Filice Brown Eassa &
McLeod LLP, Oakland, CA.

**JUDGES:** SAUNDRA BROWN ARMSTRONG, United States District Judge.

I-2

**OPINION BY:** SAUNDRA BROWN ARMSTRONG

**OPINION**

**ORDER**

This matter comes before the Court on the motion of Plaintiff Tom Baker to remand this action to California Superior Court, and for his fees and costs associated with bringing the motion [Docket No. 10]. In addition, the Court sought supplemental briefing from the parties on whether proceedings should be stayed pending potential transfer of the action to the Judicial Panel on Multidistrict Litigation ("JPML").

Having read and considered **[*2]** the arguments presented by the parties in their moving papers, the Court finds this matter appropriate for disposition without a hearing. The Court HEREBY GRANTS Plaintiff's Motion to Remand, and DENIES Plaintiff's request for fees and costs. The Court also declines to exercise its discretion to stay proceedings. The Court STRIKES Plaintiff's Second Supplemental Memorandum, filed on September 7, 2004 [Docket No. 26] from the record and directs the Clerk of the Court to return the document to Plaintiff.

**BACKGROUND**

Plaintiff Tom Baker ("Plaintiff") initially filed this action in San Francisco Superior Court on April 4, 2004, seeking damages for asbestos-related personal injuries and disease stemming from occupational exposure to asbestos-containing products. (Opposition to Motion to Remand ("Opp."), at 1.) Plaintiff claimed that he had been exposed to asbestos while working as a mechanic in the United States Navy between 1960-1967 and from 1969-1973. (*Id.*, at 2.) On April 28, 2004, Plaintiff amended his Complaint to add several defendants, including Defendant Textron ("Defendant"), through its "Alternate Entity" "Textron Lycoming." (*Id.*, at 1.) On May 6, 2004, Defendant **[*3]** was served, and on May 28, 2004, Defendant removed the action to federal court. (*Id.*) Attached to the removal papers was a letter indicating that Defendant would advise the Clerk of the JPML that this was a "tag-along" action that should be transferred to the designated Transferee Court. (*See* Motion to Remand ("Motion"), at 1.) The JPML has established a Transferee Court for federal court asbestos litigation in the Eastern District of Pennsylvania. (Defendant's Supp. Briefing, at 1-2.) Defendant has not yet notified the JPML of the instant action. (Plaintiff's Supp. Briefing, at 5.)

Plaintiff filed the instant Motion to Remand on June 15, 2004. (Opp., at 1.) Subsequently, Defendant served a set of interrogatories on Plaintiff seeking to identify which of Defendant's products were at issue in the instant case. (Reply to Motion to Remand ("Reply"), at 1.) Plaintiff objected to the discovery, and Defendant has not sought a motion to compel its production. (*Id.*)

On June 15, 2004, Plaintiff requested an earlier hearing date for his Motion to Remand. On August 9, 2004, the Court denied Plaintiff's request because the Court's calendar was full. The Court also requested supplemental **[*4]** briefing on whether the Court should stay proceedings pending transfer to the JPML, and whether the MDL Transferee Court regularly reviews motions to remand these actions to state court.

**1. Plaintiff's Motion to Remand to California Superior Court**

**A. Legal Standard:**

**HN1** On a motion for remand, the burden of proving the propriety of removal rests in the party who removed. *United Computer Systems v. AT&T Corp.*, 298 F.3d 756, 763 (9th Cir. 2002). "[A] cause of action arises under federal law only when the plaintiff's well pleaded complaint raises issues of federal law." *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 63, 95 L.

1-3

Ed. 2d 55, 107 S. Ct. 1542 (1987); _Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 9-10, 77 L. Ed. 2d 420, 103 S. Ct. 2841 (1983)_. Thus, claims "brought under state law may arise under' federal law if vindication of the state right necessarily turns upon construction of a substantial question of federal law, i.e., if federal law is a necessary element of one of the well-pleaded claims." _Ultramar America, Ltd. v. Dwelle, 900 F.2d 1412, 1414 (9th Cir. 1990)_.

_HN2_⊞Removal jurisdiction is proper under 28 U.S.C. § 1442 **[*5]** (a)(1) when "any officer of the United States . . . or person acting for him, for any act under color of such office" seeks removal to federal court. 28 U.S.C. § 1442(a)(1); _see also Blackman v. Asbestos Defendants, (BHC), 1997 U.S. Dist. LEXIS 17821, 1997 WL 703773, *1 (N.D. Cal. Nov. 3, 1997)_. In order to remove under 28 U.S.C. § 1442(a)(1), the defendant must: (1) demonstrate that it acted under the direction of a federal officer; (2) raise a colorable federal defense to the plaintiff's claims; and (3) demonstrate a causal nexus between the plaintiff's claims and the acts the defendant performed under color of federal office. _See Mesa v. California, 489 U.S. 121, 125-139, 103 L. Ed. 2d 99, 109 S. Ct. 959 (1989)_. A corporation can be a "person" for purposes of 28 U.S.C. § 1442(a)(1). _See, e.g., Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387 (5th Cir. 1998)_ (holding corporation can be a "person" for purposes of § 1442).

**B. Analysis:**

Here, Defendant has failed to meet its burden. In its Opposition, Defendant speculates that Plaintiff must have been exposed to asbestos while working in the Navy on the Bell UH-1D **[*6]** and UH-1E Helicopters ("UH-1 Helicopters"). (Opp., at 2-3.) Defendant bases this determination on the fact that its "Alternate Entity" Lycoming was named in the amended complaint. (_Id._) Defendant reasons that because Lycoming's only involvement with the Navy was through the UH-1 Helicopters, Plaintiff's exposure must have occurred when working on those helicopters. (_Id._) Therefore, Defendant has justified removal under 28 U.S.C. § 1442(a)(1) on the following grounds: (1) that production of its UH-1 Helicopters was "directed and controlled" by the U.S. government; (2) that it has a colorable federal contractor defense because the U.S. government approved the specifications of the UH-1 Helicopters; and (3) that there is a causal nexus between the plaintiff's claims and the acts the defendant performed under color of federal office because the government directly controlled the design and development of the UH-1 Helicopters. (Opp., at 5-9.) Plaintiff, however, has declared unequivocally that its claims against Defendant do not relate, in any way, to the UH-1 Helicopters. (Reply, at 2; Supplemental Declaration of David Fiol, at P 4.) Because the UH-1 Helicopters **[*7]** are not related to Plaintiff's claims against Defendant, and because Defendant bases its removal jurisdiction entirely on the application of 28 U.S.C. § 1442 to the manufacture and design of the UH-1 Helicopters, Defendant has failed to demonstrate that removal is appropriate. Therefore, Plaintiff's Motion to Remand is granted.

**2. Plaintiff's Request for Costs and Attorneys Fees**

**A. Legal Standard:**

_HN3_⊞An order remanding a case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal. 28 U.S.C. § 1447(c). A court has "wide discretion" in deciding whether to award attorney's fees under this provision. _Moore v. Permanente Med. Group, 981 F.2d 443, 447 (9th Cir. 1992)_.

**B. Analysis:**

Although the Court finds that Defendant has failed to meet its burden of showing that removal was appropriate under 28 U.S.C. § 1442, Defendant's arguments were not completely unfounded. Because Plaintiff named "Textron Lycoming" in his Complaint, Defendant had reason to assume that Textron's involvement in the litigation was through **[*8]** Lycoming. (Opp., at 2.) Plaintiff asserted that he was exposed to asbestos while working as a helicopter

1-4

mechanic in the Navy, and Lycoming's only involvement with the Navy was through the UH-1 Helicopters. (*Id.*) Thus, although Defendant incorrectly assumed that Plaintiff's claims were based on exposure to asbestos from UH-1 Helicopters, the Court declines to impose costs or attorney's fees.

## 3. Stay of the present action pending a ruling on transfer by the JPML. [1]

**FOOTNOTES**

[1] The Court admonishes Plaintiff that Court orders regarding the length of supplemental briefs are to be strictly followed. After submitting an initial 10-page brief pursuant to the Court's August 9, 2004 Order, Plaintiff submitted a second 10-page brief regarding the same topic. The Court's order clearly limited the briefs for each party to 10-pages. If Plaintiff believed additional briefing was necessary, he should have sought leave of the Court. The Court therefore orders that Plaintiff's Second Supplemental Memorandum, filed on September 7, 2004, be stricken from the record and returned to Plaintiff by the Clerk of the Court.

### [*9] A. Legal Standard:

*HN4*⊕The decision to grant or deny a temporary **stay** of proceedings **pending** a ruling on the **transfer** of the matter to the JPML lies within this Court's discretion. *See Landis v. North American Co.*, 299 U.S. 248, 254-55, 81 L. Ed. 153, 57 S. Ct. 163 (1936); *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp.2d 804, 809 (N.D. Cal. 1998). Such a stay is appropriate when deferring to the MDL Transferee Court for resolution of a motion to remand would provide uniformity and efficiency in litigation that underlies the multidistrict litigation system. *See* 28 U.S.C. § 1407. Motions to remand are often decided by the district court in which the motion was filed before consideration of transfer to the JPML. *See e.g., Fung v. Abex Corp.*, 816 F. Supp. 569, 573 (N.D. Cal. 1992) (ruling on Motion for Remand before JPML); recommending transfer to the *Morgan v. **Asbestos** Defendants*, 2003 U.S. Dist. LEXIS 3114, 2003 WL 945987, *1-3 (N.D. Cal. 2003) (remanding action to California Superior Court before potential transfer by JPML); *Schilz v. A.P. Green Industries, Inc.*, 2002 U.S. Dist. LEXIS 1176, 2002 WL 102608, *1 (N.D. Cal. 2002) (same).

### B. Analysis:

**[*10]** Here, the Court chooses not to exercise its discretion to stay proceedings pending notification of the JPML because a stay would not serve the interests of consistency or efficiency. Defendant asserts that "remand motions are routinely deferred to transferee courts." (Opp., at 2.) [2] In support of its position, Defendant first cites *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997). In *Rivers,* however, the court held that a stay was appropriate in part because no jurisdictional questions were at issue. *Id., at 1361-62.* Indeed, motions to remand are often heard by a district court despite the fact that a relevant MDL Transferor Court has already been created. *See, e.g., Fung v. Abex Corp.*, 816 F. Supp. at 573. In *Fung*, plaintiffs claimed injuries from exposure to asbestos. *Id., at 570-71.* Defendant removed to federal court. *Id., at 571.* While the *Fung* court declined to rule on Defendants' Motion to Dismiss, it did choose to rule on Plaintiffs Motion for Remand in order to establish federal court jurisdiction. *See id.* Only after denying Plaintiff's Motion **[*11]** to Remand did the district court find it appropriate to notify the JPML of the action. *Id.* In the instant case, it would not serve the interests of judicial economy to notify the JPML of an action that is not properly before the federal courts. As discussed *supra,* because Defendant in the instant action has clearly failed to demonstrate that removal was appropriate under 28 U.S.C. § 1442, the only result of staying proceedings will be unnecessary delay.

**FOOTNOTES**

1-5

2 Tellingly, only one of the cases Defendant cites for this proposition involves a district court declining to rule on a motion to remand pending transfer to the JPML. (Defendant's Supp. Briefing, at 2) *citing Weinke v. Microsoft Corp.*, 84 F. Supp. 2d 989, 990 (E.D. Wis. 2000).

## *CONCLUSION*

For the foregoing reasons,

IT IS HEREBY ORDERED THAT Plaintiffs Motion to Remand [Docket 10] is GRANTED. Plaintiff's request for costs and fees is DENIED.

IT FURTHER ORDERED THAT Plaintiff's Second Supplemental **[*12]** Memorandum, filed on September 7, 2004, [Docket 26] is STRICKEN from the Record and the Court directs the Clerk of the Court to return the document to Plaintiff.

IT IS FURTHER ORDERED THAT the above captioned action is REMANDED to the Superior Court of California for San Francisco County. All matters calendared in this action are VACATED. The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: September 27, 2004

SAUNDRA BROWN ARMSTRONG

United States District Judge

Source:  My Sources > Federal Legal - U.S. > Federal Court Cases, Combined ⓘ
Terms:  **stay w/s pending w/s transfer w/p asbestos**  (Edit Search | Suggest Terms for My Search | Feedback on Your Search)
View:  Full
Date/Time:  Thursday, February 28, 2008 - 6:09 PM EST

* Signal Legend:
● -  Warning: Negative treatment is indicated
🄠 -  Questioned: Validity questioned by citing refs
⚠ -  Caution: Possible negative treatment
◆ -  Positive treatment is indicated
Ⓐ -  Citing Refs. With Analysis Available
Ⓘ -  Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

● LexisNexis®    About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

1-6

LexisNexis® *Total Research System*    Switch Client | Preferences | Sign Off | ? Help

*My Lexis™* | Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advis

Source: My Sources > Federal Legal - U.S. > Federal Court Cases, Combined
Terms: **stay w/s pending w/s transfer w/p asbestos** (Edit Search | Suggest Terms for My Search | Feedback on Your Search)

↵Select for FOCUS™ or Delivery

*2007 U.S. Dist. LEXIS 36990, \**

⬆ View Available Briefs and Other Documents Related to this Case

GERALDINE BURTON, et al., Plaintiffs, v. A W CHESTERTON CO, et al., Defendants.

No. C 07-00702 SI

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

2007 U.S. Dist. LEXIS 36990

May 7, 2007, Decided
May 7, 2007, Filed

**CORE TERMS:** engine, removal, aircraft, air, brake, asbestos, gasket, mechanic, military, interrogatory responses, notice, sufficient information, declaration, decedent, insulation, fuselage, flew, exposed to asbestos, aircraft engines, federal officer's, contractor, mechanical, dismantled, attended, missions, interrogatory, manufactured, performing, exposed, aircraft mechanic

⚐**Available Briefs and Other Documents Related to this Case:**

U.S. District Court Motion(s)
U.S. District Court Pleading(s)

**COUNSEL:** [\*1] For Geraldine Burton, individually, and as personal representative to the estate of Harold Burton, decedent, Blaine Burton, Mark Burton, Plaintiffs: Jeffrey A. Kaiser ▾✓, Jessica Bernier, LEAD ATTORNEYS, Levin Simes Kaiser & Gornick LLP, San Francisco, CA, US.

For McDonnell Douglas Corporation, as Successor-in-Interest to Douglas Aircraft Company, Defendant: M Gantvoort ▾, LEAD ATTORNEY, Attorney at Law, Santa Monica, CA.; Robert E. Boone, III ▾✓, Bryan Cave LLP, Santa Monica, CA.

For The Boeing Company, Defendant: Bo Kim, Ronald Alan McIntire ▾✓, Perkins Coie LLP, Santa Monica, CA.

For United Technologies Corporation, formerly known as Pratt & Whitney Inc., Defendant: Lillian C. Ma ▾, Tucker Ellis & West LLP, San Francisco, CA.

**JUDGES:** SUSAN ILLSTON, United States District Judge.

**OPINION BY:** SUSAN ILLSTON

**OPINION**

EXHIBIT ___2___

## ORDER GRANTING PLAINTIFFS' MOTION FOR REMAND AND DENYING MOTION TO STAY

On May 4, 2007, the Court heard argument on plaintiffs' motion for remand, and defendant McDonnell Douglas Corporation 's motion for a temporary stay. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court GRANTS plaintiffs' motion for remand, and DENIES **[*2]** AS MOOT the motion for a temporary stay.

## BACKGROUND

On October 21, 2004, Harold Burton and his wife Geraldine Burton filed a complaint in San Francisco Superior Court, alleging that numerous defendants were responsible for exposing Mr. Burton to asbestos, which caused Mr. Burton to contract mesothelioma, a cancer of the lung caused by asbestos. Plaintiffs identified five time periods during which Mr. Burton was allegedly exposed to asbestos. *See* Kaiser Decl., Ex. A. The first period, at issue here, was his employment with the United States Air Force, between September 1942 and October 1945. *See id.*

On November 9, 2004, pursuant to the San Francisco Superior Court Asbestos General Orders, plaintiffs served responses to standard asbestos interrogatories. Those responses included more detailed information about Mr. Burton's exposure during his Air Force service, stating in pertinent part:

> Plaintiff spent about six months at the McDonnell Douglas aircraft mechanical school in Long Beach, California, where he was trained to work on engines and brakes on B17 aircraft. He cut gaskets, worked with fuselage insulation, and assisted with brakes. Plaintiff was then transferred **[*3]** to Peyote, Texas, where he worked on aircraft engines and brakes. Plaintiff recalls dismantling Pratt Whitney and Wright Cyclone engines. Plaintiff went to Gunnery School in Wendover, Utah, and was then transferred back to Peyote, Texas, where he flew planes. Plaintiff then flew missions in Germany with the 100th bomb group, squadron 349.

Kaiser Decl., Ex. E P 9.

### Employer's. Name & Address: U.S. Army Air Force

Job Title: T/Sgt; mechanic

Date Started: September 1942

Date Ended: October 1945

Description of job duties: Boeing B17 Mechanic; cut gaskets, worked with fuselage insulation, and assisted with brakes. Dismantled Pratt Whitney and Wright Cyclone Engines; attended Gunnery School; flew missions in Germany.

Job Sites: McDonnell Douglas aircraft mechanical school in Long Beach, California; Army Air Force base in Peyote, Texas; Gunnery School, Wendover, Utah; Germany.

Estimate of total time at those sites: 3 years

Exposed to asbestos at this job: Plaintiff contends that he was exposed to asbestos at these locations; investigation and discovery are continuing

*Id.* P 26.

Mr. Burton died on December 31, 2004. His heirs subsequently filed this lawsuit, **[*4]** on

2-2

April 8, 2005, in San Francisco Superior Court, naming approximately 35 separate defendants. *See id.*, Ex. B. This lawsuit identified the same five general time frames of asbestos exposure, and plaintiffs filed identical responses to the standard asbestos interrogatories, as described above. *See id.*, Exs. B & C.

On March 17, 2006, plaintiffs served the second set of standard discovery responses required by the General Orders, and stated the following with respect to his time in the Air Force:

> Decedent was occupationally exposed to airborne asbestos fibers throughout his working life. He was exposed to asbestos containing materials as a B17 aircraft mechanic in the U.S. Air Force during WWII. He cut gaskets, worked with fuselage insulation, assisted with brakes, and dismantled Pratt Whitney and Wright Cyclone engines. Decedent attended Gunnery School in Wendover, Utah, attended McDonnell Douglas aircraft mechanical school in Long Beach, California, and flew combat missions in Germany. Decedent was also exposed to asbestos containing material on ships and shipyards during the Korean War when he served in the National Guard Armory.

Kaiser Decl., Ex. D at 2. **[\*5]**

> **Employer's Name & Address: U.S. Army Air Force**
>
> Job Title: T/Sgt; mechanic
>
> Date Started: September 1942
>
> Date Ended: October 1945
>
> Description of job duties: Plaintiff was a Boeing B17 Mechanic. He cut gaskets, worked with fuselage insulation, and with an asbestos cloth material used on pipes in the wings that was manufactured by U.S. Rubber (nka Uniroyal). He dismantled Pratt Whitney and Wright Cyclone engines including gaskets and firewalls. He cut sheet gasket material and worked with ring and composition gaskets. He attended Gunnery School and flew missions in Germany for the 100th bomb group in 349 squadron. He was transported from Europe to New York on the *New Amsterdam*, a Dutch liner.
>
> Job Sites: McDonnell Douglas aircraft mechanical school in Long Beach, California; Army Air Force base in Peyote, Texas; Gunnery School, Wendover, Utah; Germany.
>
> Estimate of total time at those sites: 3 years A/C materials: Ajcraft [sic] engines, gaskets, firewall, board, brake components; investigation and discovery are continuing.

*Id.* at 5.

On November 8, 2006, defendants Boeing Company and McDonnell Douglas Corporation ("MDC") filed separate motions for summary **[\*6]** judgment in state court. On January 16, 2007, plaintiffs filed their opposition to the summary judgment motions, and included the declaration of Jamer R. Tukesbrey, who served with Mr. Burton in the Air Force. Mr. Tekesbrey stated in his declaration that he and Mr. Burton serviced B-17s, as well as DC-3s, DB-7s, and B-25s. *See* Tekesbrey Decl. (MDC Ex. 51). Specifically, Mr. Tekesbrey stated that, at an aircraft engine and mechanic school in Sheppard Field, Texas,

> Harold Burton and I worked in close proximity to others who were performing brake replacement and other work on various airplanes, including but not limited to Douglas DC-3s, Douglas DB-7s (A-20 Havoc), and B-25s. When performing brake repairs on these aircraft, mechanics routinely used compressed air to blow dust out of the brake assemblies, which resulted in a lot of airborne dust in the hangar which we

2-3

breathed.

*Id.* P 10.

On February 2, 2007, before the summary judgment motions were heard, and 24 days before trial was set to begin, defendants Boeing, MDC, and United Technologies Corporation (UTC), each filed notices of removal to this Court. Plaintiffs now move to remand this case to state court. **[*7]** [1]

## FOOTNOTES

[1] Defendant MDC also moves to temporarily **stay** the action **pending** a decision by the Judicial Panel on Multidistrict Litigation on whether to **transfer** this case to the **asbestos** Multidistrict Litigation in Pennsylvania. In light of the following, the motion to stay is moot.

## LEGAL STANDARD

A motion to remand is the proper procedure for challenging an opposing party's removal. Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. *See* 28 U.S.C. § 1447(c). The court may remand *sua sponte* or upon the motion of a party. A defendant who invokes the federal court's removal jurisdiction has the burden of establishing federal jurisdiction. *See Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988)* (citing *Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35, 66 L. Ed. 144 (1921)*).

## DISCUSSION

Plaintiffs argue that defendants' removal was both untimely and substantively deficient.

**[*8]** "After a defendant learns that an action is removable, he [or she] has thirty days to remove the case to federal court." *Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1250 (9th Cir. 2005)* (citing 28 U.S.C. § 1446(b)). Unless the initial "'pleading affirmatively reveals on its face' the facts necessary for federal court jurisdiction," *id.* (quoting case), "the thirty-day clock doesn't begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable," *id.* (quoting 28 U.S.C. § 1446(b)).

In addition to the more common federal question and diversity grounds for removal, pursuant to 28 U.S.C. § 1442(a), "[f]ederal officers, and their agents, may remove cases based on acts performed under color of their federal office if they assert a colorable federal defense." *Id.* at 1251 (citing 28 U.S.C. § 1442(a); *Mesa v. California, 489 U.S. 121, 129, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989)*). "A party seeking removal under section 1442 must demonstrate **[*9]** that (a) it is a' person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiffs claims, and (c) it can assert a 'colorable federal defense.'" *Id.* (citing *Jefferson County v. Acker, 527 U.S. 423, 431, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999)*; *Mesa, 489 U.S. at 124-25, 131-35*).

Unlike the general removal statutes, which "are to be strictly construed, and any doubts as to the right of removal must be resolved in favor of remanding to state court," *id.* at 1252 (quoting case), "the Supreme Court has mandated a generous interpretation ofthe federal officer removal statute," *id.* (citing *Colorado v. Symes, 286 U.S. 510, 517, 52 S. Ct. 635, 76 L. Ed. 1253 (1932)*). There is, according to the Ninth Circuit, "a clear command from both Congress and the Supreme Court that when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." *Id.* Also unlike the general removal statues, under section 1442, not all defendants need concede to removal. *See Ely Valley Mines, Inc. v. Hartford Acci. & Indem. Co., 644 F.2d 1310, 1315 (9th Cir.*

2-4

1981) **[*10]** ("Thus, § 1442 represents an exception to the general rule (under §§ 1441 and 1446) that all defendants must join in the removal petition."). One defendant in a multi-defendant case can unilaterally remove the entire case to federal court, if it meets the requirements of section 1442.

In *Durham,* which also dealt with asbestos exposure during Air Force service, the plaintiff, Durham, "filed his complaint against Lockheed Martin and sixty other defendants on August 7, 2003, in California Superior Court. In his complaint, Durham listed the Air Force facilities where he worked, but didn't allege which Lockheed products exposed him to asbestos." *Durham,* 445 F.3d at 1249. Ten days after plaintiff served Lockheed with the complaint, "Lockheed received plaintiff's answers to interrogatories. These interrogatories for the first time disclosed the specifics of Durham's claim--that he was exposed to asbestos while working on the SR-71 Blackbird and the C-141 Starlifter aircraft on military bases where Lockheed was a contractor." *Id.* "Lockheed didn't file a notice of removal until September 24--more than thirty days after it had been served with the complaint, but less **[*11]** than thirty days after it had received Durham's interrogatory responses." *Id.* In fact, notice of removal was filed 48 days after the complaint was filed.

On appeal, the Ninth Circuit found that the case was not "removable" for purposes of starting the thirty-day clock "[u]ntil Durham revealed which aircraft he had worked on during his Air Force career." *Id.* at 1251. Until that point,

> Lockheed couldn't assert either that its actions were taken pursuant to a federal officer's directions, or that it had a colorable federal defense. Lockheed, like other federal military contractors, performs some activities on military bases that are protected by federal contractor immunity, and others that are not. There wasn't enough information in Durham's complaint for Lockheed to discern whether its allegedly wrongful conduct was protected by federal contractor immunity. Had it removed upon filing of the complaint, it may well have subjected itself to fees and costs, and potentially Rule 11 sanctions, for filing a baseless notice of removal. . . . [W]e no longer require defendants to take this blind leap--we don't charge defendants with notice of removability until **[*12]** they've received a paper that gives them enough information to remove.

*Id.* The Ninth Circuit therefore concluded that Lockheed's notice of removal was timely, as Lockheed filed it within thirty days after the interrogatory responses that identified the specific aircraft models that the plaintiff had worked on. *Id.* at 1254.

Defendants argue that *Durham* compels this Court to find that their removal of this case -- more than two years after Mr. Burton first filed his action and almost two years after his heirs filed this one -- was timely. As discussed, only one defendant need establish removability to remove the entire case. In this case, three defendants filed notices of removal. The Court therefore must analyze, under *Durham,* the timeliness of all three defendants' removals.

### 1. McDonnell Douglas Corporation .(MDC)

On January 12, 2007, in opposition to motions for summary judgment in the state court action, plaintiffs provided the declaration of Mr. James R. Tekesbrey, a member of Mr. Burton's Air Force Bomb Squadron during WWII. *See* Tekesbrey Decl. (MDC Ex. 51). In his declaration, Mr. Tekesbrey stated that, at an aircraft engine **[*13]** and mechanic school in Sheppard Field, Texas,

> Harold Burton and I worked in close proximity to others who were performing brake replacement and other work on various airplanes, including but not limited to Douglas DC-3s, Douglas DB-7s (A-20 Havoc), and B-25s. When performing brake repairs on these aircraft, mechanics routinely used compressed air to blow dust out of the brake assemblies, which resulted in a lot of airborne dust in the hangar which we breathed.

2-5

*Id.* P 10. MDC contends that before receiving this declaration, it did not have sufficient information upon which to base a section 1442 notice of removal. The Court is unconvinced.

Plaintiffs' complaints and interrogatory responses, described above, gave MDC sufficient information to understand which MDC products allegedly exposed Mr. Burton to asbestos. In particular, plaintiffs repeatedly alleged that Mr. Burton was exposed to asbestos while training to be a B-17 mechanic for six months at a McDonnell Douglas aircraft mechanical school. For example, on November 9, 2004, and then again on May 18, 2005, plaintiffs stated: "Plaintiff spent about six months at the McDonnell Douglas aircraft mechanical school [*14] in Long Beach, California, where he was trained to work on engines and brakes on B17 aircraft. He cut gaskets, worked with fuselage insulation, and assisted with brakes." Kaiser Decl., Exs. C & E P 9.

MDC argues that this was insufficient because MDC did not build all models of the B-17 used by the Air Force during World War II. *See.* MDC Oppo. at 1-4. It defies common sense, however, to interpret plaintiffs' allegations to mean that Mr. Burton worked at the MDC training facility on B-17s made exclusively by companies other than MDC. MDC provides no evidence to suggest that such an interpretation would be reasonable. Paragraph 9 of the first set of standard interrogatory responses thus gave MDC information which was equally specific as, if not more specific than, the information given to MDC in the Tekesbrey declaration, and the information given to Lockheed by the interrogatory responses in *Durham. See Durham,* 445 F.3d at 1249. MDC's removal was therefore untimely.

## 2. United Technologies Corporation (UTC)

Pratt & Whitney, an unincorporated division of UTC, manufactured aircraft engines for the United States military throughout World War II. As discussed [*15] above, plaintiffs alleged, at various points, that Mr. Burton had worked on Pratt & Whitney engines during his time in the Air Force. Plaintiffs also alleged that he was a B-17 mechanic. According to UTC, Pratt & Whitney engines were not used in B-17 aircraft in the 1940s. UTC therefore contends that plaintiffs' complaint and initial interrogatory responses did not give UTC sufficient information upon which to establish the existence of the second requirement of removability under section 1442 -- a causal nexus between UTC's actions, taken pursuant to a federal officer's directions, and plaintiffs' claims.

UTC did not ascertain sufficient information, it argues, until January 26, 2007, when it deposed Mr. Tekesbrey. According to UTC, "Mr. Tekesbrey confirmed that the B-17 was powered [] solely by Wright Cyclone engines, not Pratt & Whitney engines." UTC Oppo. at 3:22-23. He also "testified that he and Decedent worked in the vicinity of others performing engine work on the military equivalent of the DC-3." *Id.* at 3:25-27. Pratt & Whitney manufactured one of the engines, the R-1830, that powered the DC-3. *See* White Decl. P 5. According to UTC, "[t]he United States military [*16] exercised immediate supervision over all aspects of Pratt & Whitney's design and manufacture of the R-1830." UTC Oppo. at 4:3-4. Thus, UTC contends, it did not have sufficient information to remove under section 1442 until Mr. Tekesbrey identified Decedent's work near the DC-3, in January 2007.

UTC's argument is unconvincing. Plaintiffs never stated in their earlier interrogatory responses that Mr. Burton worked on Pratt & Whitney engines in B-17 aircraft, or that Mr. Burton only worked on B-17 aircraft. As described above, the complaints and interrogatory responses included the following statements: "Description of job duties: Boeing B17 Mechanic; cut gaskets, worked with fuselage insulation, and assisted with brakes. *Dismantled Pratt Whitney and Wright Cyclone Engines;* attended Gunnery School; flew missions in Germany." Kaiser Decl., Exs. C & E P 26 (emphasis added). "Plaintiff recalls dismantling Pratt Whitney and Wright Cyclone engines" *Id.* P 9.

Description of job duties: Plaintiff was a Boeing B17 Mechanic. He cut gaskets, worked with fuselage insulation, and with an asbestos cloth material used on pipes in the wings that was manufactured by U.S. Rubber (nka Uniroyal). [*17] He

2-6

dismantled Pratt Whitney and Wright Cyclone engines including gaskets and firewalls. He cut sheet gasket material and worked with ring and composition gaskets. He attended Gunnery School and flew missions in Germany for the 100th bomb group in 349 squadron. He was transported from Europe to New York on the *New Amsterdam*, a Dutch liner.

*Id.,* Ex. D at 5.

The Court agrees with UTC that plaintiffs' responses suggest that Mr. Burton was primarily a B-17 mechanic. The responses, however, also clearly and repeatedly state that Mr. Burton dismantled Pratt & Whitney engines. UTC does not explain why somebody who was trained to work on B-17s could never have worked on a Pratt & Whitney engine, perhaps while being trained to work on another aircraft, or for some other reason. Particularly telling is paragraph nine of set one of the standard interrogatory responses (in both the pre-death and post-death lawsuits), which states that "Plaintiff was then transferred to Peyote, Texas, where he worked on *aircraft* engines and brakes. Plaintiff recalls dismantling Pratt Whitney and Wright Cyclone engines." Kaiser Decl., Exs. C & E P 9 (emphasis added). Neither paragraph nine, nor **[*18]** any other document, suggests that Mr. Burton worked only on B-17s in Peyote. Rather it states that "he worked on aircraft engines and brakes," including "Pratt Whitney" engines. *Id.*

UTC thus knew that it was included in the lawsuit because plaintiffs thought that Mr. Burton had worked on Pratt & Whitney engines during his Air Force service. According to UTC, with respect to Pratt & Whitney engines during WWII, "[t]he military specified precisely what type of engine it wanted, directly oversaw all aspects of engine development and testing, and ultimately approved compliance with such specifications before placing the engines into service." UTC Oppo. at 1:5-8. UTC thus had, from plaintiffs' initial interrogatory responses, sufficient information to determine that it could remove under section 1442. It knew there was a causal nexus between its actions -- the manufacture of Pratt & Whitney engines during WWII -- taken pursuant to a federal officer's directions, and plaintiffs' claims -- that Mr. Burton worked on Pratt & Whitney engines. UTC also knew, early on, that it could assert a colorable federal defense, because by its own account, all Pratt & Whitney engines were manufactured **[*19]** under the close direction of the military. In *Durham,* the plaintiff needed to identify the specific aircraft upon which he had worked because Lockheed "performs some activities on military bases that are protected by federal contractor immunity, and others that are not." *Durham,* 445 F.3d at 1251. Here, UTC asserts that all of its engines produced for the military were produced under close supervision. Thus in contrast to *Durham,* here plaintiffs did not need to identify the particular Pratt & Whitney engine Mr. Burton worked on in order to allow UTC to determine whether it was protected by federal contractor immunity. The Court therefore concludes that UTC's notice of removal was not timely.

**3. Boeing**

Boeing argues that "claims that Decedent was a 'B-17 aircraft mechanic' and purportedly performed certain duties on some aircraft do not establish that he, in fact, worked on the B-17 aircraft." Boeing Oppo. at 7:17-19. Boeing therefore argues that despite plaintiffs' repeated descriptions of Mr. Burton's work as a B-17 mechanic, and more specifically as a "Boeing B-17 mechanic," plaintiffs did not present sufficient information on which to base a section 1442 **[*20]** removal until the Tekesbrey declaration. The Court disagrees. Since 2004, plaintiffs have repeatedly presented Boeing with information identical to that provided by the plaintiff's interrogatories in *Durham* -- the model of defendant's military aircraft that allegedly exposed the decedent to asbestos. See *Durham,* 445 F.3d at 1249, 1251. Boeing's recent removal was therefore untimely.

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs' motion to remand pursuant to 28 U.S.C. § 1447(c), and this action is REMANDED to the San Francisco Superior Court. Defendant MDC's motion to **stay** this action, **pending** its **transfer** to

2-7

the Multidistrict Litigation No. 875 *In Re* **Asbestos** *Product Liability Litigation* proceedings in the Eastern District of Pennsylvania is DENIED as moot. Plaintiffs' request for fees and costs of the removal proceedings is DENIED.

**IT IS SO ORDERED.**

Dated: May 7, 2007

SUSAN ILLSTON

United States District Judge

Source: My Sources > Federal Legal - U.S. > **Federal Court Cases, Combined** [i]
Terms: **stay w/s pending w/s transfer w/p asbestos**  (Edit Search | Suggest Terms for My Search | Feedback on Your Search)
View: Full
Date/Time: Thursday, February 28, 2008 - 6:04 PM EST

LexisNexis®
About LexisNexis  | Terms & Conditions  | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

LexisNexis® *Total Research System*                    Switch Client | Preferences | Sign Off | [?] Help

| My Lexis™ | Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advis

Source: My Sources > Federal Legal - U.S. > Federal Court Cases, Combined [i]
Terms: stay w/s pending w/s transfer w/p asbestos (Edit Search | Suggest Terms for My Search | Feedback on Your Search)

↵Select for FOCUS™ or Delivery
☐

*2007 U.S. Dist. LEXIS 29597, \**

⊥ View Available Briefs and Other Documents Related to this Case

WILLIAM J. HILBERT, Jr. and PAMELA R. HILBERT, Plaintiffs, v. AEROQUIP, INC., et al., Defendants.

CIVIL ACTION NO. 07-10205-NG

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

2007 U.S. Dist. LEXIS 29597

March 15, 2007, Decided

**SUBSEQUENT HISTORY:** Adopted by, Remanded by, Stay denied by Hilbert v. Aeroquip, Inc., 486 F. Supp. 2d 135, 2007 U.S. Dist. LEXIS 52168 (D. Mass., 2007)

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff, a naval employee, sued defendant **asbestos** manufacturers/users in state court. One defendant removed the case. Plaintiff moved to remand, or to sever the case against that defendant and remand the case against all other defendants. The removal defendant also moved to **stay** the case **pending transfer** by the Panel on Multidistrict Litigation (MDL) to an **asbestos** docket. The motion was before a magistrate judge for recommended disposition.

**OVERVIEW:** The claims against defendant were limited to failures to warn. Defendant removed the action under 28 U.S.C.S. § 1442(a)(1), the federal officer removal statute, alleging that its use of asbestos was at the U.S. Navy's direction. The magistrate first found that it was not necessary to transfer to the MDL court the issue of whether defendant met its burden of proving the elements of federal officer jurisdiction. To the extent that defendant asserted a "colorable federal defense" it relied on the federal or military contractor defense, as well as sovereign immunity. Defendant's allegations were insufficient to establish the existence of a significant conflict between a federal policy or interest and the operation of state law as required to implicate the defense. Because of the gross generalizations contained in an affidavit relied on by defendant, it was struck. Once the affidavit was struck, defendant failed to meet the causal connection requirement. Defendant did not produce any government contracts or other evidence showing that it acted as the Navy's agent rather than an independent contractor. Absent such evidence, it could not establish a colorable immunity claim.

**OUTCOME:** The magistrate judge recommended to the court that plaintiffs' motion to remand be allowed and that defendant's motion to stay be denied. The magistrate also recommended that the affidavit of defendant's witness be stricken. If the claims against defendant remained in federal court, the magistrate recommended that the claims against the remaining defendants be severed and remanded.

EXHIBIT_____3_____

**CORE TERMS:** warning, contractor, removal, specification, aircraft, failure to warn, asbestos, personal knowledge, colorable, federal officer, manufacturer, recommend, state law, sovereign immunity, causal, manuals, nexus, label, exposure, stricken, military, grenade, recommendations, manufactured, immunity, time period, federal laws, state claims, causal connection, military contractor

## LEXISNEXIS® HEADNOTES         ⊟Hide

Civil Procedure > Removal > Postremoval Remands > Motions for Remand 🖟
Civil Procedure > Venue > Multidistrict Litigation 🖟

*HN1* Where a motion to remand does not implicate issues that are within the exclusive jurisdiction of the Multidistrict Litigation (MDL) Court, the motion to remand can be resolved without encroaching on the exclusive territory of the MDL Court. More Like This Headno

Civil Procedure > Removal > Postremoval Remands > Motions for Remand 🖟
Civil Procedure > Venue > Motions to Transfer > General Overview 🖟
Civil Procedure > Venue > Multidistrict Litigation 🖟

*HN2* The same degree of judicial resources must be expended in the transferor court or in a multidistrict litigation (MDL) court to make an assessment of which party should prevail on a motion to remand. Since only one federal court needs to make an individualized assessment of the jurisdictional issues in a case, there is no reason to transfer the jurisdictional issue to the MDL court. More Like This Headnote

Civil Procedure > Removal > Basis > Cases Involving Federal Officers 🖟

*HN3* 28 U.S.C.S. § 1442(a)(1) grants a right of removal to federal officers who face civil or criminal actions in state court for their official acts. The right of removal may extend to private individuals or entities acting under a federal officer, as long as the private actor asserts a colorable federal defense to the state claims and demonstrates a sufficient causal nexus between what it has done under asserted official authority and the acts giving rise to the state claims. Put another way, the removing party must establish: 1) the removing defendant must be a federal officer or a person acting under a federal officer; 2) the removing defendant was acting at the direction of an officer of the United States and that a causal nexus exists between the defendant's actions under color of federal office and the plaintiff's claims; and 3) the removing defendant asserts a colorable federal defense. The burden is on defendants to establish the elements of federal officer jurisdiction. Moreover, because the statute is premised on the protection of federal activity and an anachronistic mistrust of state courts' ability to protect and enforce federal interests and immunities from suit, private actors seeking to benefit from its provisions bear a special burden of establishing the official nature of their activities. If the right to remove is doubtful, the case should be remanded. More Like This Headnote

Civil Procedure > Removal > Basis > Cases Involving Federal Officers 🖟

*HN4* Although there are differences of opinion on the issue, given the purpose of 28 U.S.C.S. § 1442 and its basis in a mistrust of states and state courts to protect federal interests, it should be read expansively only when the immunity of individual federal officials, and not government contractors, is at issue. More Like This Headnote

Civil Procedure > Removal > Basis > Cases Involving Federal Officers 🖟
Torts > Products Liability > Duty to Warn 🖟
Torts > Vicarious Liability > Independent Contractors > General Overview 🖟

*HN5* Boyle v. United Techs. Corp. provides that government contractors are shielded from liability in state court for defects in products or equipment supplied to the United States only when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the

*3-2*

United States about the dangers in the use of the equipment that were known to the supplier but not the United States. The Boyle standard is not, on its face, applicable to failure to warn cases. Although there is a difference of opinion on the issue, cases applying Boyle to failure to warn cases are more persuasive as they present factual scenarios involving government involvement in warnings under the facts of certain cases. Therefore, the federal contractor defense may be applied in failure to warn cases.  <u>More Like This Headnote</u>

<u>Civil Procedure</u> > <u>Removal</u> > <u>Basis</u> > <u>Cases Involving Federal Officers</u>

*HN6* Under any standard in which the defense applies, application of the government contractor defense must recognize that the defense immunizes contractors who supply military equipment to the Government from the duties imposed by state tort law and that this displacement of ordinary tort liability occurs only where a significant conflict exists between an identifiable federal policy or interest and the operation of state law.  <u>More Like This Headnote</u>

<u>Civil Procedure</u> > <u>Removal</u> > <u>Basis</u> > <u>Cases Involving Federal Officers</u>

*HN7* The established rule is that removal by a person acting under a federal officer must be predicated on a showing that the acts forming the basis of the state suit were performed pursuant to an officer's direct orders or comprehensive and detailed regulations. It is not enough to prove only that the relevant acts occurred under the general auspices of a federal office or officer or that a corporation participates in a regulated industry. The official must have direct and detailed control over the defendant. The nexus requirement is established by showing that the state action has arisen out of the acts done by defendant under color of federal authority and in enforcement of federal law. Critical under the statute is to what extent defendants acted under federal direction at the time they were engaged in the conduct now being sued upon. To sustain this burden, the defendant must also by direct averment exclude the possibility that the state action was based on acts or conduct of his not justified by his federal duty.  <u>More Like This Headnote</u>

<u>Civil Procedure</u> > <u>Removal</u> > <u>Postremoval Remands</u> > <u>Motions for Remand</u>

*HN8* On deciding a motion to remand when a defendant asserts that it has established a colorable federal defense to state claims, the question is not whether the defendant will prevail on such a defense, only whether a colorable claim to such a defense has been made.  <u>More Like This Headnote</u>

<u>Civil Procedure</u> > <u>Removal</u> > <u>Basis</u> > <u>Cases Involving Federal Officers</u>

*HN9* Under Boyle v. United Techs. Corp., a defendant must establish that the United States approved reasonably precise speculations. Therefore, the government's role in setting requirements is critical under the government contractor defense.  <u>More Like This Headnote</u>

<u>Civil Procedure</u> > <u>Removal</u> > <u>Basis</u> > <u>Cases Involving Federal Officers</u>
<u>Civil Procedure</u> > <u>Federal & State Interrelationships</u> > <u>Sovereign Immunity</u> > <u>General Overview</u>

*HN10* The U.S. Supreme Court has long held that, pursuant to sovereign immunity, a private company which contracts with the federal government to perform the duties of the government will not be held liable for its actions on behalf of the government. Therefore, a private corporation performing governmental functions pursuant to contractually delegated authority will not be liable unless: (1) its action was beyond the authority delegated to it; (2) the authority was invalidly conferred; or (3) the harm was caused by the private party's own tortious conduct.  <u>More Like This Headnote</u>

## ⇲Available Briefs and Other Documents Related to this Case:

<u>U.S. District Court Motion(s)</u>
<u>U.S. District Court Pleading(s)</u>

**3-3**

Case 3:08-cv-00228-JSW     Document 21-2     Filed 03/03/2008     Page 20 of 42

**COUNSEL:** **[*1]** For Honeywell International, Inc., ThirdParty Plaintiff: Lawrence G. Cetrulo ✓, LEAD ATTORNEY, Cetrulo & Capone LLP, Boston, MA.

For Raytheon Aircraft Company, Cross Claimant: Brian D. Gross ▾, Cooley, Manion & Jones, PC, Boston, MA.

For Boeing North American, Inc. Sherin and Lodgen LLP, Cross Claimant: Katy Ellen Koski ▾, LEAD ATTORNEY, Sherin & Lodgen, Boston, MA.

For Northrop Grumman Corporation, Defendant: Sheryl A. Koval, Marcy D. Smirnoff, Goodwin Procter LLP, Boston, MA.

For ArvinMeritor, Inc., Incorrectly sued Herein as Successor in Interest to Rockwell Automation, Inc., f/k/a Rockwell Automation Corporation, ThirdParty Plaintiff: Robert J. Muldoon, Jr. ▾✓, LEAD ATTORNEY, Sherin & Lodgen LLP, Boston, MA.

For William J. Hilbert, Jr, Plaintiff: Erika A. Olson, LEAD ATTORNEY, The Shepard Law Firm, P.C., Boston, MA.

For Northrop Grumman Corporation, Defendant: Shepard M. Remis ▾✓, Goodwin Procter, LLP, Boston, MA.

For Pamela Hilbert, Plaintiff: Michael C. Shepard ▾, LEAD ATTORNEY, The Shepard Law Firm, Boston, MA.

**JUDGES:** Judith Gail Dein, United States Magistrate Judge.

**OPINION BY:** Judith Gail Dein

**OPINION**

**REPORT AND RECOMMENDATION ON MOTION FOR REMAND AND MOTION TO [*2] STAY**

March 15, 2007

DEIN, U.S.M.J.

**I. INTRODUCTION**

The plaintiff, William J. Hilbert, Jr., was diagnosed with mesothelioma, a terminal cancer, in August 2005. He contends that his illness was caused by his exposure to asbestos through everyday contact with asbestos-containing aircraft components. Mr. Hilbert and his spouse commenced this action against 29 defendants in the Middlesex Superior Court Department of the Massachusetts Trial Court on December 21, 2006. Northrop Grumman Corporation ▾ ("Northrop" or the "defendant") removed the action to this court on February 2, 2007 under 28 U.S.C. § 1442(a)(1) (federal officer or agency removal).

This matter is presently before the court on Plaintiffs' Motion for Remand (Docket No. 3) by which the plaintiffs are seeking to remand the action to state court or, in the alternative, sever the case against Northrop and remand the case against the other defendants. In addition to opposing the remand, Northrop, on March 1, 2007, filed a Motion to **Stay** (Docket No. 15) requesting that this court **stay** all proceedings, including consideration of the Motion for Remand, **pending transfer** of the case by the **[*3]** Panel on Multidistrict Litigation ("MDL") to the **asbestos** docket in the Eastern District of Pennsylvania. A hearing on these motions was held on March 2, 2007 and, by agreement, briefing was completed by the close of business

*3-4*

on March 9, 2007. For the reasons detailed herein, this court recommends that Northrop's supporting affidavit be stricken as it is not based on personal knowledge. Even if the affidavit is considered, this court concludes that the defendant has failed to establish a causal nexus between its actions under asserted federal authority and the plaintiffs' claims, or the existence of a colorable federal defense. Therefore, and after consideration of the pleadings and arguments of counsel, this court recommends to the District Judge to whom this case is assigned that the Plaintiffs' Motion to Remand (Docket No. 3) be ALLOWED and that Northrop's Motion to Stay (Docket No. 15) be DENIED.

## II. STATEMENT OF FACTS

Mr. Hilbert was diagnosed in August 2005 with mesothelioma, a terminal cancer. He contends that his condition was caused by his exposure to asbestos-containing aircraft components. Northrop is an aircraft manufacturer. According to his complaint and Disclosure **[*4]** Form, Mr. Hilbert was employed by the United States Navy as an aircraft mechanic from 1955 to 1974 and it was during this employment that he would have been exposed to Northrop's products. Mr. Hilbert's complaint asserts claims of negligence and breach of warranties against all the defendants, including Northrop. The claims against Northrop are limited to claims for failure to warn. Specifically, plaintiffs describe their claims as being "based upon two main premises: (1) the plaintiff William Hilbert was exposed to asbestos from brakes, clamps and gaskets used on Northrop Grumman aircraft, and (2) that Northrop Grumman failed to warn about the health hazards associated with asbestos exposure from these products." [1] Remand Memo (Docket No. 7) at 13.

#### FOOTNOTES

[1] Although Northrop contends that the complaint against it cannot be read as limited to failure to warn claims, the plaintiffs have confirmed both orally and in writing that the claims against Northrop are so limited. See Remand Memo (Docket No. 7) at 15-16 ("plaintiffs' attorneys hereby state under Rule 11 that they are only proceeding against Northrop Grumman on a failure to warn theory of liability and not on a theory of defective design."). Moreover, this representation is consistent with the complaint in which it is alleged that "[t]o the extent that any of the plaintiff's asbestos exposure occurred on board vessels of the United States Navy or the construction and/or repair of such vessels, plaintiff's [negligence and breach of warranty] claims against manufacturers, sellers and suppliers of pumps, valves, boilers, turbines, separators, steam traps, and other mechanical equipment installed on such vessels are not based on a theory of defective design, but rather on the theory of failure to warn." Complaint PP 14, 22. Thus, this is not a situation where Mr. Hilbert has attempted to avoid removal by narrowing his complaint. See Faulk v. Owens-Corning Fiberglass Corp., 48 F. Supp. 2d 653, 658 (E.D. Tex. 1999) ("once a defendant properly removes a case to federal court, a plaintiff may not defeat the removal by simply amending the complaint"). Consequently, this Report and Recommendation is premised on the fact that the claims against Northrop are for failure to warn. See Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124, 128 n. 3 (3rd Cir. 1998) (where remand motion allowed on basis that claim was limited to failure to warn, a new removal petition may be filed if plaintiff broadens claims on remand).

#### [*5] Basis for Removal

Northrop removed this action to federal court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), claiming that "(1) NGC was acting under the direction of a federal officer or agency; (2) NGC has colorable federal defenses arising out of its duties to the federal government; and (3) NGC will demonstrate that there is a causal connection between the acts performed by it under color of federal office and Plaintiffs' allegations in the case at bar." Removal Notice (Docket No. 1) at 9. Specifically, Northrop alleged as follows: [2]

3-5

Plaintiffs base their claims against NGC on alleged exposure to asbestos by William Hilbert while working with "various" products manufactured, sold, or distributed by NGC. On information and belief, to the extent that the design or manufacture of these products included asbestos-containing parts or components, such inclusion was explicitly and directly required by the United States Government in its detailed and precise specifications through and under the direction of the Secretaries of the Departments of Defense and the United States Navy. Any decision regarding asbestos **[*6]** in these products was under the full control and discretion of the United States Government.

Removal Notice P 11. Northrop also contends that it is entitled to federal officer removal "based on the separate and additional federal defense of derivative sovereign immunity" due to the fact that "on information and belief, the acts complained of were performed at the direction of Government officers acting pursuant to Government authorization and if the Government had performed these acts directly, it would be immune from suit." Id. at P 15.

## FOOTNOTES

2 Northrop did not submit any affidavits in support of its Notice of Removal, although it reserved the right to do so if plaintiffs filed a motion to remand. Removal Notice P 18. Plaintiffs object to the Affidavit of John DeBois filed in opposition to the motion for remand citing McGlasson v. Barger, 220 F. Supp. 938 (D. Colo. 1963). In McGlasson the court refused to consider affidavits submitted at the remand hearing where the removal petition lacked factual allegations to support jurisdiction. Id. at 940-41. McGlasson has not been cited by any other court. Moreover, since Northrop's Removal Notice did refer to the factual basis for jurisdiction, and did reference its intent to file affidavits if necessary, this court concludes that the sufficiency of Mr. DeBois' affidavit should be evaluated by the court.

**[*7]** In opposition to the Remand Motion, Northrop has submitted the Affidavit of John F. DeBois (Docket No. 13-2). Plaintiffs have moved to strike this affidavit as not being based on personal knowledge. This court agrees, and recommends that the affidavit be stricken.

Mr. DeBois is currently the Director of Contracts and Pricing for the Airborne Early Warning and Electronic Warfare Systems business of Northrop's Integrated Systems Sector. DeBois Aff. P 1. He began his employment with Grumman Aircraft Corporation over 30 years ago and joined Northrop when the companies merged. Id. In his work with Grumman and Northrop he oversaw government contracts to provide military aircraft and required parts. Id. P 2. In describing the basis for his personal knowledge, Mr. DeBois attested:

> [In light of my positions] I have personal knowledge of the current and historical procedures relating to contracts with the United States government as well as the terms typically included in such contracts and access to the related records of Grumman and Northrop Grumman Corporation (collectively, "Northrop") and its subsidiaries.

Id. 3. Although his employment with Grumman and **[*8]** Northrop post-dated the period at issue in this case, Mr. DeBois does not indicate whether he actually reviewed contracts from the relevant period or spoke with anyone with personal knowledge. Nor does he otherwise describe any particular steps that he took in order to obtain knowledge regarding the contents of government contracts in effect during the time period from 1955 to 1974 when Mr. Hilbert was working for the Navy.

Much of Mr. DeBois' affidavit is directed to the Navy's involvement in the design of the aircraft manufactured and supplied by Northrop. See, e.g., id. PP 5-15. As he summarized the status of such work:

> In short, in accordance with contract requirements, the U.S. Navy was directly and

3-6

intimately involved with development and controlled the design of every aspect of the aircraft, including without limitation the types of materials used in the aircraft and their component parts. U.S. Navy representatives closely monitored Northrop's work at every step in the design process and U.S. Navy evaluation and approval had to occur at every step. Northrop had little or no leeway in determining the required design of the aircraft, including the required materials [*9] for the component parts and their painting and marking.

Id. P 14. With respect to warnings, Mr. DeBois attested as follows:

16. In addition, the U.S. Navy had ultimate control over warnings affixed to the Northrop aircraft used by the U.S. Navy, as well as written materials accompanying Northrop aircraft used by the U.S. Navy during this time period.

17. The U.S. Navy had precise specifications as to the nature of any information that was to be affixed to equipment supplied to it by Northrop. Under the U.S. Navy's specifications and procedures, as well as under actual U.S. Navy practice as it evolved in the field, Northrop would not have been permitted to affix any type of warning or caution to a piece of equipment, beyond those expressly specified by the U.S. Navy.

18. The U.S. Navy also had precise specifications as to the nature and contents of all written materials. These materials included safety and hazard information only to the extent directed by the U.S. Navy.

19. Northrop took no action with regard to maintenance manuals provided to U.S. Navy aircraft mechanics, other than under contract with the government and in conformity with government [*10] specifications.

20. The U.S. Navy maintained control over the contents of any manuals and made revisions to the contents without the consultation or knowledge of Northrop.

21. U.S. Navy personnel, including users of any manuals, contributed the majority of expertise into the proposed changes to the manuals.

The plaintiffs contend that this affidavit cannot be based on Mr. DeBois' personal knowledge because the language used is identical to the language used in an affidavit of David Hobson, which was submitted by General Electric Co. in the case of Nesbiet v. General Electric Co., 399 F. Supp. 2d 205, 207 (S.D.N.Y. 2005). Moreover, the plaintiffs note, the Nesbiet court concluded that the affidavit was not based on Mr. Hobson's personal knowledge as his deposition in that case established that he did not have knowledge of exact contract provisions at the relevant time. Id. Similarly, Mr. DeBois' affidavit indicates that he would not have had personal knowledge of the contract provisions at the relevant times. For these reasons the plaintiffs have requested that Mr. DeBois' affidavit be stricken. In the alternative, they request that the non-removing [*11] defendants be severed and remanded, and that Northrop be ordered to produce Mr. DeBois for a deposition to explore the foundation for his statements. Pls. Reply Memo (Docket No. 19) at 5.

In response to Mr. DeBois' assertions, the plaintiffs have submitted various military specifications which they contend dispute any implication that the Navy prohibited manufacturers from placing additional warnings on products. Id. at 6. For example, they have attached the Military Specification for Aircraft Wheel and Brake Assemblies as well as the specifically incorporated standards governing "Marking for Shipment or Storage." Pls. Exs. H, I. Plaintiffs point out that these specifications (Ex. H) do not require asbestos in brake linings (with the implication being that the brake linings did, in fact, contain asbestos), and that the incorporated standards require that "[s]pecial handling instructions, marking, and warnings

3-7

shall be shown as required by [specified regulations], and by statute, regardless of destination of shipment." Pls. Ex. I at § 5.5.15.1. As the plaintiffs argue, "[]this clearly shows the Navy's intent to make sure that warnings that were required by law were included. **[*12]** Thus, not only did Northrop Grumman's contracts with the Navy not prohibit them from warning about asbestos, they specifically required them to include any warnings required by statute, such as M.G.L. c. 106, § 2-314." Pls. Reply Memo (Docket No. 19) at 6. The plaintiffs have also submitted other Navy manuals and regulations which indicate that at least with respect to hazardous chemicals and materials, the Navy recognized that additional warnings as required by state and federal laws may be added to those required by their own regulations. [3]

### FOOTNOTES

3 For example, Pls. Ex. J is a "Guide for the Preparation of Warning Labels for Hazardous Chemicals." It provides that "Individual statutes, regulations or ordinances may require that particular information be included on a label or that a specific label be affixed to a container. In each case, the requirements of these laws should also be studied. *The warning labels suggested in this Manual should be used in addition to, or in combination with, any label required by law.*" Pls. Ex. J at 1 (emphasis in original). In fact, these regulations encourage sellers to affix safety labels, at least to containers of hazardous chemicals, "bearing appropriate precautionary statements[.]" Id. Regulations issued by the Department of the Navy governing the labeling for "hazardous industrial chemicals and materials" (Pl's. Ex. K at § 2) also recognize that in addition to the Navy's own requirements, labels may be affixed by a manufacturer in accordance with state and federal laws and regulations (Id. at § 2a) (emphasis added).

**[*13]** Despite originally having submitted the affidavit of Mr. DeBois in which, described above, he attested to his familiarity with all possibly relevant Navy contracts and regulations, as well as to the "Navy's practice as it evolved in the field," Northrop did not submit any additional affidavits in response to the plaintiffs' submission of these specifications and manuals. Rather, it argues in its Surreply Memorandum (Docket No. 29) as follows:

> Plaintiffs attach four documents to their Reply as support for their assertion that the government did not prohibit asbestos warnings. While the dates shown on these documents appear to fall within the time period that Mr. Hilbert allegedly was employed by the Navy, Plaintiffs provide no evidence that the specifications provided were applicable to the contracts under which Northrop allegedly manufactured aircraft. Nor do Plaintiffs provide any evidence that these specifications were ever provided to Northrop in any time period during which Northrop manufactured or assembled aircraft on which Mr. Hilbert allegedly performed maintenance (which time period Plaintiffs have not disclosed), that these regulations were applicable during Mr. **[*14]** Hilbert's entire employment history, let alone that these specifications related to any product allegedly manufactured by Northrop.
>
> In addition, the specifications provided either do not apply to any product that would have been assembled by Northrop or only apply to limited sections of the aircraft that allegedly might have been assembled by Northrop.

Northrop's Surreply (Docket No. 29) at 1-2. As detailed more fully below, this court is struck by Northrop's inability to respond to the plaintiffs' submission with an affidavit of anyone with personal knowledge as to the contracts and regulations which actually applied during the relevant period. Moreover, whether or not these regulations will be found to be controlling in the instant case following discovery, they certainly cast doubt on Mr. DeBois' general assertion that Northrop categorically would not have been permitted to apply appropriate health warnings on the aircraft it sold to the Navy.

### III. ANALYSIS [4]

*3-8*

## FOOTNOTES

4 Due to the exigencies of time, this court has not addressed all of the arguments raised by the parties. However, they have been considered.

## [*15] A. Motion to Stay

As an initial matter, Northrop has requested that this court **stay** the litigation, including the motion to remand, **pending transfer** of this case to the MDL **asbestos** docket in the Eastern District of Pennsylvania. This court recommends that the motion to stay be denied.

The issue raised by the motion to remand, i.e. whether Northrop properly removed this action under 28 U.S.C. § 1442(a)(1) (federal officer removal) does not raise issues exclusively within the area of expertise of the MDL Court. This court is as qualified to evaluate the factors establishing federal jurisdiction as any other federal court.$^{HN1}$ Where, as here, the motion to remand does not "implicate[] issues that are within the exclusive jurisdiction of the MDL Court . . . the motion[] to remand can be resolved without encroaching on the exclusive territory of the MDL Court." In re Massachusetts Diet Drug Litigation, 338 F. Supp.2d 198, 201 (D. Mass. 2004). Under such circumstances, a stay is not warranted. Id., and cases cited.

Moreover, the resolution of the motion to remand requires an analysis of the unique facts of this case as presented [*16] to this court. The issue is whether Northrop met its burden of proving the elements of federal officer jurisdiction, not whether all manufacturers of products containing asbestos who sold such products to the Navy are entitled to invoke this court's jurisdiction. $^{HN2}$"The same degree of judicial resources must be expended here or in the District of [Pennsylvania] to make an assessment of which party should prevail." Commonwealth of Pennsylvania v. TAP Pharmaceutical Products, Inc., 415 F. Supp. 2d 516, 521 (E.D. Penn. 2005). Since only one federal court needs to "make an individualized assessment of the jurisdictional issues in this case" there is no reason to transfer the jurisdictional issue to the MDL Court. Id.

Finally, this court finds no reason to require the plaintiffs to suffer the undeniable delays inherent in all MDL asbestos cases unless there is federal jurisdiction. To undergo such a lengthy process to find out that there is no federal jurisdiction would be a travesty of justice given Mr. Hilbert's medical condition. For all these reasons, this court recommends that the motion to stay be denied and that the motion to remand be addressed.

## B. Motion [*17] to Remand -- Standard Generally

28 U.S.C. § 1442(a)(1) $^{HN3}$grants "a right of removal to federal officers who face civil or criminal actions in state court for their official acts. The right of removal may extend to private individuals or entities 'acting under' a federal officer, as long as the private actor asserts a colorable federal defense to the state claims, and demonstrates a sufficient causal nexus between what it has done under asserted official authority and the acts giving rise to the state claims." Freiberg v. Swinerton & Walberg Property Services, Inc., 245 F. Supp. 2d 1144, 1149 (D. Colo. 2002) (numerous internal citations omitted). 5 The burden is on defendants to establish the elements of federal officer jurisdiction. Faulk v. Owens-Corning Fiberglass Corp., 48 F. Supp. 2d 653, 659 (E.D. Tex. 1999); Ryan v. Dow Chem. Co., 781 F. Supp. 934, 939 (E.D.N.Y. 1992). Moreover, because the statute "is premised on the protection of *federal* activity and an anachronistic mistrust of state courts' ability to protect and enforce *federal* interests and immunities from suit, private actors seeking [*18] to benefit from its provisions bear a special burden of establishing the official nature of their activities." Freiberg, 245 F. Supp. 2d at 1150. "If the right to remove is doubtful, the case should be remanded." 6 Id. at 1151.

3-9

## FOOTNOTES

5 Put another way, the removing party must establish the following: "1) the removing defendant must be a federal officer or a 'person' acting under a federal officer; 2) the removing defendant was acting at the direction of an officer of the United States and that a causal nexus exists between the defendant's actions under color of federal office and the plaintiff's claims; and 3) the removing defendant asserts a colorable federal defense." <u>Faulk v. Owens-Corning Fiberglass Corp.</u>, 48 F. Supp. 2d 653, 659 (E. D. Tex. 1999), citing <u>Mesa v. California, 489 U.S. 121, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989)</u>.

6 This court believes it unnecessary to address in detail the parties' differing opinions as to whether federal removal jurisdiction should be narrowly or broadly construed since this court finds removal inappropriate under either interpretation. This court notes, however, that it would adopt the position of the Freiberg court that *HN4⨤*"[g]iven the purpose of § 1442 and its basis in a mistrust of states and state courts to protect federal interests, I agree it should be read expansively only when the immunity of individual federal officials, and not government contractors, is at issue." <u>Freiberg, 245 F. Supp. 2d at 1152, n.6</u>.

**[\*19]** To the extent that Northrop is asserting a "colorable federal defense" it is relying on the federal or military contractor defense as prescribed by the Supreme Court in <u>Boyle v. United Techs. Corp., 487 U.S. 500, 512, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988)</u>, as well as sovereign immunity. *HN5⨤*Boyle provides that government contractors are shielded from liability in state court for defects in products or equipment supplied to the United States only when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not the United States." <u>Freiberg, 245 F. Supp. 2d at 1151</u> (quoting <u>Boyle, 487 U.S. at 512, 108 S. Ct. at 2518</u>); see also <u>Green v. A. W. Chesterton Co., 366 F. Supp. 2d 149, 152-53 (D. Me. 2005)</u> and cases cited. The Boyle standard is not, on its face, applicable to failure to warn cases. See <u>Tate v, Boeing Helicopters, 55 F.3d 1150, 1157 (6th Cir. 1995)</u> (acknowledging that on its face "the rule announced **[\*20]** in Boyle applies only to design claims"). Some courts have concluded that the federal contractor defense has no application in a case based on a failure to warn, especially in the absence of evidence that the government prohibited any warnings. See, e.g., <u>Epperson v. Northrop Grumman Sys. Corp., No. 4:05CV2953, 2006 U.S. Dist. LEXIS 3033, 2006 WL 90070, \*5 (E.D. Va January 11, 2006)</u> ("not only in 'thousands' of previous asbestos cases did this court find that failure to warn cases are not subject to government contractor immunity, but the facts here indicate that, based on the reasoning in *Boyle*, the government contractor immunity defense does not apply to plaintiffs failure to warn claims"). Other courts have concluded that Boyle is applicable, and "provides guidance in determining when state law governing a failure to warn claim can be displaced." <u>Tate, 55 F.3d at 1157</u>. This court finds the cases applying Boyle to failure to warn cases more persuasive as they present factual scenarios involving government involvement in warnings more akin to the case before this court. Therefore, this court concludes that the federal contractor defense may be applied in failure **[\*21]** to warn cases.

Those courts which recognize the defense in failure to warn cases apply differing standards of review. Thus, "some courts find that the government contractor defense preempts failure to warn claims whenever the defense applies to design defect claims and the specifications are silent about warnings. On the opposite extreme, some other courts imply a requirement that the government prohibit warnings before the defense may be invoked for a failure to warn claim." <u>Quiles v. Sikorsky Aircraft, 84 F. Supp. 2d 154, 171 n.5 (D. Mass. 1999)</u> (internal citation omitted). Some courts require that the contractor show "that the Government itself 'dictated' the content of the warning," while others require proof that the "United States imposed a prohibition against health warnings" and yet others "apply a less stringent standard

before the defense may be invoked." Tate, 55 F.3d at 1157 (internal punctuation and citation omitted).

The question of the appropriate standard remains open in this Circuit. Quiles, 84 F. Supp. 2d at 170-71.[7] Nevertheless, this court does not have to decide which standard to apply. HN6 Under any standard in [*22] which the defense applies, application of the government contractor defense must recognize that the defense "immunizes contractors who supply military equipment to the Government from the duties imposed by state tort law" and that this "displacement of ordinary tort liability occurs only where a significant conflict exists between an identifiable federal policy or interest and the operation of state law." Hawaii Federal Asbestos Cases, 960 F.2d 806, 810 (9th Cir. 1992) (quoting Boyle, 487 U.S. at 507, 108 S. Ct. at 2516) (internal punctuation and additional citations omitted). In the instant case, Northrop's allegations are insufficient to establish the existence of a significant conflict between a federal policy or interest and the operation of state law as required to implicate the defense.

## FOOTNOTES

7 Quiles involved a claim that an Army helicopter design was defective. Judge Woodlock granted summary judgment to the defendant, finding that it had established the government contractor defense as set forth in Boyle. He further noted that it was an open question as to how to apply Boyle to failure to warn claims, but that he did not need to reach the issue as in his case there was no evidence that any warning could have had a beneficial effect. 84 F. Supp. 2d at 171. He noted, however, that he found the 6th Circuit's approach in Tate v. Boeing Helicopters, 55 F.3d 1150 (6th Cir. 1995) "most compelling[.]" 84 F. Supp. 2d at 171, n.5. Tate also involved a claim of a failure to warn about a design defect, not a health factor. The Tate court found Boyle applicable where "the contractor can show: (1) the United States exercised its discretion and approved the warnings, if any; (2) the contractor provided warnings that conformed to the approved warnings; and (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew but the United States did not." 55 F.3d at 1157.

## [*23] C. Sufficiency of the DeBois Affidavit

The plaintiffs challenge the affidavit of John DeBois as not being based on personal knowledge. In light of the gross generalizations contained in the affidavit, the fact that Mr. DeBois was not employed by Grumman or Northrop Grumman during the relevant time, and the absence of any factual assertion to the effect that Mr. DeBois actually reviewed any relevant contracts or even had conversations with those who had personal knowledge, this court agrees that Mr. DeBois has failed "to establish personal knowledge with regard to whether a particular kind of warning was forbidden over twenty years prior to the start of [DeBois's] career." Nesbiet, 399 F. Supp. 2d at 207, n.17.[8] Consequently, this court recommends to the District Judge that paragraphs 16-21 of the affidavit be stricken.

## FOOTNOTES

8 The court does not find controlling the fact that an identical affidavit was submitted on behalf of a different person in the Nesbiet case. Presumably the affidavits were drafted by counsel. However, in light of the fact that one court has already found the affidavit to be lacking in details necessary to support a conclusion of personal knowledge, one could have expected more facts to be asserted in Mr. DeBois' affidavit, if they existed.

[*24] This court does not believe that Mr. DeBois needs to be deposed as the deficiencies in the affidavit are apparent on its face. Moreover, this court's finding of a lack of personal knowledge is buttressed by the fact that, having asked for and been granted more time to

3-11

respond to the plaintiffs' submission of regulations, Northrop did not supplement Mr. DeBois' affidavit. Instead it submitted a Surreply which fails to provide an affirmative, fact-based response to the plaintiffs' contentions that the Navy allowed safety warnings to be included by manufacturers. Therein Northrop claims ignorance about facts which should be within Mr. DeBois' scope of information, as defined in his affidavit. See, e.g., Surreply Memo at 2 (since plaintiffs did not provide a full copy of the text of Exhibit I, "Northrop has no way of knowing whether their cited text is an accurate representation of what the document states in whole"); id. at 3 (Plaintiffs have not shown that any of these documents would have been incorporated in any Northrop contract or provided to Northrop pursuant to any contract for the manufacture of military aircraft."). If Mr. DeBois had the personal knowledge he claims [*25] to have as to "the current and historical procedures relating to contracts with the United States government as well as the terms typically included in such contracts," he should have been able to affirmatively confirm or deny plaintiffs' representations. See Affidavit at P 14. Instead, faced with plaintiffs' information which strongly indicates that, at least with respect to safety warnings, the United States affirmatively wanted manufacturers to comply with state as well as federal laws, Mr. DeBois remained silent.

The conclusion that Mr. DeBois' affidavit is not based on his personal knowledge is further supported by the absence of exemplar contracts or regulations which could confirm his otherwise conclusory allegations. According to the affidavit, the Navy's requirements and practices apparently were consistent with respect to each and every Northrop contract, yet no contract has been provided. Mr. DeBois' generalized statements are insufficient to establish his personal knowledge concerning "the Navy's control over asbestos-related warnings during the relevant period." Nesbiet, 399 F. Supp. 2d at 207, n.18. See also Green, 366 F. Supp. 2d at 157 [*26] (affidavit which failed to include any actual regulation or specification "raises real and significant concern" and fails to meet defendant's burden for removal).

For these reasons, this court recommends that Mr. DeBois' affidavit be stricken. As detailed below, however, even if it is considered, it is insufficient to establish the existence of federal officer jurisdiction.

**D. Analysis of "Causal Connection" Requirement**

The key issue in this case is whether Northrop has established that it was "acting under" a federal officer and that there was "a sufficient causal nexus between what it has done under asserted official authority and the acts giving rise to the state claims." [9] Freiberg, 245 F. Supp. 2d at 1149. If Mr. DeBois' affidavit is stricken, as this court recommends, Northrop obviously has failed to meet its burden. Even if Mr. DeBois' affidavit is considered, however, the evidence is insufficient to establish grounds for removal.

**FOOTNOTES**

[9] As detailed below, this analysis is virtually identical to the analysis needed to determine whether Northrop has asserted a colorable federal contractor defense. This court will not address whether Northrop was "acting under" a federal official since the "causal nexus" inquiry is controlling.

[*27] HN7 "The established rule is that removal by a person 'acting under' a federal officer must be predicated on a showing that the acts forming the basis of the state suit were performed pursuant to an officer's 'direct orders or comprehensive and detailed regulations.' It is not enough to prove only that 'the relevant acts occurred under the general auspices of a federal office or officer' or that a 'corporation participates in a regulated industry.' The official must have direct and detailed control over the defendant." Id. at 1152 (internal citations omitted).

"The nexus requirement is established by showing that the state action has arisen out of the

acts done by defendant under color of federal authority and in enforcement of federal law. Critical under the statute is to what extent defendants acted under federal direction at the time they were engaged in the conduct now being sued upon. To sustain this burden, the defendant must also by direct averment exclude the possibility that the state action was based on acts or conduct of his not justified by his federal duty." Id. at 1155 (internal citation and punctuation omitted).

In the instant case, Mr. **[\*28]** DeBois' affidavit is remarkably silent as to Northrop's role and responsibility in developing the warnings that were eventually used. Thus, while he has attested that the Navy "had ultimate control" over the warnings, he has failed to indicate whether Northrop was responsible for providing any part of these warnings. Even more significantly, Mr. DeBois' affidavit leaves open the possibility that the Navy's specifications required simply that the manufacturer provide safety warnings in accordance with state law. This would be consistent with the regulations provided by the plaintiffs, which indicated that the Navy "specified" that the manufacturers comply with state law warning requirements. In short, Mr. DeBois' assertions that the Navy "had precise specifications as to the nature and contents of all written material" (P 18) and that "Northrop would not have been permitted to affix any type of warning or caution to a piece of equipment, beyond those expressly specified by the U.S. Navy" (P 17) do not rule out the possibility that Northrop was obligated to provide warnings sufficient to satisfy its state law obligations.

As noted above, courts apply differing standards in evaluating **[\*29]** whether the control exercised by the government over warnings is sufficient to satisfy the "acting under" and "causal connection" requirements. Regardless of the standard applied, however, Northrop has failed to establish that a significant conflict exists between an identifiable federal policy or interest and the operation of state law. See Boyle, 487 U.S. at 507, 108 S. Ct. at 2516. The record before this court is to the effect that the Navy may have required compliance with state safety labelling requirements. Under such circumstances, removal was inappropriate and the motion to remand should be allowed. [10] See, e.g., Freiberg, 245 F. Supp. 2d at 1155 (where defendants failed to "establish the DOE's direction and control of their activities directly interfered with their ability to fulfill their state law obligation to warn employees of safety hazards" of exposure to asbestos, motion to remand allowed); Faulk, 48 F. Supp. 2d at 663 (remand allowed when the federal government "did not prevent Defendants from taking their own safety precautions heeding state-law standards above the minimum standards incorporated in their federal **[\*30]** contracts"); Hawaii Federal Asbestos Cases, 960 F.2d at 813 (where the Navy "in no way prohibited [the defendants] from placing warnings on their insulation products" and the defendants "could have provided detailed and prominent statements regarding the dangers of asbestos insulation without violating the terms of their procurement contracts or their product specifications," military contractor defense was not available to manufacturers. "There thus existed no conflict between the state law duty to provide adequate warnings. . . with the Government").

## FOOTNOTES

[10] Even under Tate Northrop had to establish that the "United States exercised its discretion and approved the warnings." Tate, 55 F.3d at 1157. In light of the ambiguities in Mr. DeBois's affidavit, Northrop failed to meet this standard.

## E. Colorable Claim to a Federal Defense

Also at issue in this case is whether Northrop has established a "colorable federal defense to the state claims." Freiberg, 245 F. Supp. 2d at 1149. **[\*31]** **HN8**⊹The question is not whether the defendant will prevail on such a defense, only whether a colorable claim to such a defense has been made. See Fung v. Abex Corp., 816 F. Supp. 569, 573 (N.D. Cal. 1992), United States v. Todd, 245 F.3d 691, 693 (8th Cir. 2001).

3-13

As Northrop recognizes, courts often merge the acting under/causal relationship analysis discussed above with a claim of a common law government contractor defense as set forth in Boyle. See Northrop Opp. (Docket No. 13) at 8-9. [11] For the same reasons as detailed above, Northrop has not established a colorable contractor defense. See Westbrook v. Asbestos Defendants, No. C-01-1661 VRW, 2001 U.S. Dist. LEXIS 11575, 2001 WL 902642* 2-2 (N.D. Cal. July 31, 2001) (where defendants have not shown that the "Navy required it to refrain from issuing warnings" about the dangers of asbestos, there was "no causal connection between the acts performed under the government's orders and the claims brought by plaintiffs" and "no colorable military contractor defense to a failure to warn claim."). See also Joint Eastern and Southern District Asbestos Lit., 715 F. Supp. 1167, 1169 (E.D.N.Y. 1988) (where **[*32]** "federal specifications were silent on the matter of warnings, [and] defendant could have provided adequate warnings to plaintiffs and complied with the federal specification" defendant failed to establish military contractor defense).

## FOOTNOTES

11 This merger is due to the fact that [HN9] under Boyle a defendant must establish that "the United States approved reasonably precise speculations." Boyle, 487 U.S. at 512, 108 S. Ct. at 2518. Therefore, the government's role in setting requirements is critical under the government contractor defense.

Northrop also argues that it has "more than a colorable derivative sovereign immunity defense." Northrop Opp. at 9. In light of this court's conclusion that Northrop failed to establish that it was acting under the direction of an officer and that a causal nexus existed between the defendant's actions under asserted federal authority and the plaintiffs' claims, removal would not be appropriate even if the defendant asserted a colorable federal defense. See **[*33]** Faulk, 48 F. Supp. 2d at 653. If this issue is reached, however, this court finds that Northrop has not established a colorable derivative sovereign immunity defense.

[HN10] "The Supreme Court has long held that, pursuant to sovereign immunity, a private company which contracts with the federal government to perform the duties of the government will not be held liable for its actions on behalf of the government." City of Worcester v. HCA Management Co., Inc., 753 F. Supp. 31, 37-38 (D. Mass. 1990). "Therefore, a private corporation performing governmental functions pursuant to contractually delegated authority will not be liable unless: (1) its action was beyond the authority delegated to it; (2) the authority was invalidly conferred; or (3) the harm was caused by the private party's own tortious conduct." Id. at 38. In the instant case, however, Northrop has not shown that it was performing a government function and "purporting to act on [the Navy's] behalf' in connection with the manufacture of aircraft. See Yearsley v. W.A. Ross Const., 309 U.S. 18, 21, 60 S. Ct. 413, 414, 84 L. Ed. 554 (1940). Northrop has not supplied any of its contracts **[*34]** with the government and has not otherwise provided evidence showing whether it was acting as an agent of the Navy rather than an independent contractor. Absent such evidence, Northrop cannot establish a colorable immunity claim.

On its face, the instant case appears very similar to Whitaker v. Harvell-Kilgore Corp., 418 F.2d 1010 (5th Cir. 1969). There the manufacturers of hand grenades for the military were sued when a grenade exploded prematurely, causing serious harm. The manufacturers claimed sovereign immunity on the grounds that they were "alter egos of the United States and that their actions [were] the actions of the United States[.]" Id. at 1013. In support of their claim, the defendants pointed to the fact that they operated an Ammunition Plant owned by the United States, the government furnished components for the grenades, the assembly of the grenades was in accordance with strict government specifications, the government supervised the assembly of the grenades and the government owned the grenades. Id. Furthermore, the government had agreed to indemnify the manufacturers. Id. at 1013-14. The court held, however, **[*35]** that these facts were insufficient to establish sovereign immunity. Id. at

3-14

Search - 12 Results - stay w/o pending or/o transfer w/p asbestos    http://www.lexis.com/research/retrieve?_m=a7f6618380a22dcc6417...

Case 3:08-cv-00228-JSW/p asbestos    Document 21b2://www.lexis.com/research/retrieve?_m=a7f6618380a22dcc6417...

1014-15. Rather, the court concluded that the manufacturers were independent contractors as evidenced by various contractual terms. Id.

In the instant case Northrop has not addressed its status as either an independent contractor or an alter ego of the Navy at all. It has not submitted any of its contract terms or described them in affidavits. As Whitaker establishes, the fact of close government supervision is not controlling on the issue of sovereign immunity. Northrop has not met its burden of establishing even a colorable defense of sovereign immunity.

**F. Motion to Sever**

For the reasons detailed above, this court recommends that the plaintiffs' motion to remand be allowed. Therefore, this court does not need to reach the issue of severance. If, however, the motion to remand is denied, this court recommends that the case against Northrop be severed. [12]

**FOOTNOTES**

[12] While none of the other defendants has joined in Northrop's removal petition, several defendants have opposed any severance as not being the interest of judicial economy. (See Docket No. 28). For the reasons detailed above this court disagrees.

**[*36]** The only potential federal claim raised in this litigation relates to Northrop's federal contractor defense or claim of sovereign immunity. All other claims are based on state law and were appropriately brought in state court. Each defendant's involvement in the events leading up to Mr. Hilbert's illness is distinct, and in no way dependent on Northrop's status as a "federal contractor." The case will proceed much more rapidly in state court, thereby giving Mr. Hilbert the opportunity to participate in the trial. There is no reason for the 28 remaining defendants to await the resolution of claims against one defendant. Keeping the state law claims against the 28 defendants in federal court will in no way increase judicial efficiency and expediency. Rather, the resolution of the claims against the 28 state defendants may increase the speed by which the claims against the one alleged federal defendant may be resolved.

Again, this court believes that remand of the entire case is warranted. However, if Northrop's claim remains in federal court, this court recommends that the claims against the remaining defendants be severed and remanded. [13]

**FOOTNOTES**

[13] In light of the serious issues raised by Northrop, this court does not recommend that the plaintiffs be awarded their costs in opposing the motion to remand.

**[*37] III. CONCLUSION**

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that the Plaintiffs' Motion to Remand (Docket No. 3) be ALLOWED and that Northrop's Motion to Stay (Docket No. 15) be DENIED. [14]

**FOOTNOTES**

[14] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the

3-15

proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of HHS, 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-605 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985). Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).


**[*38]** /s/Judith Gail Dein

United States Magistrate Judge


Source: <u>My Sources</u> > <u>Federal Legal - U.S.</u> > **Federal Court Cases, Combined** 
Terms: **stay w/s pending w/s transfer w/p asbestos**  (<u>Edit Search</u> | <u>Suggest Terms for My Search</u> | <u>Feedback on Your Search</u>)
View: Full
Date/Time: Thursday, February 28, 2008 - 6:04 PM EST

* Signal Legend:
● - Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
A - Citing Refs. With Analysis Available
ℹ - Citation information available
* Click on any Shepard's signal to Shepardize® that case.


_My Lexis_™ | Search | Research Tasks | Get a Document | _Shepard's_® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Off | Help

LexisNexis®    About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

3-16

**LexisNexis®** *Total Research System*                    Switch Client | Preferences | Sign Off | ? Help

*My Lexis*™ | Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advis

Source: My Sources > Federal Legal - U.S. > Federal Court Cases, Combined
Terms: **stay w/s pending w/s transfer w/p asbestos** (Edit Search | Suggest Terms for My Search | Feedback on Your
Search)

⌐ Select for FOCUS™ or Delivery
☐

*2007 U.S. Dist. LEXIS 73970, \**

JAMES WEESE, Plaintiff, vs. UNION CARBIDE CORPORATION, et al., Defendants.

CIVIL NO. 07-581-GPM

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS

2007 U.S. Dist. LEXIS 73970

October 3, 2007, Decided
October 3, 2007, Filed

**CORE TERMS:** federal officers, removal, contractor, warning, causal, asbestos, subject
matter jurisdiction, nexus, failure to warn, state law, specifications, colorable, exposure to
asbestos, immunity, prong, federal law, federal government, person acting, state-law,
removing, warn, asbestos cases, federal jurisdiction, adequate warnings, jurisdictional,
manufacturers, personal injuries, exposed to asbestos, asbestos exposure, federal interests

**COUNSEL:** **[\*1]** For James Weese, Plaintiff: Timothy F. Thompson ▾, LEAD ATTORNEY,
SimmonsCooper - East Alton, Generally Admitted, East Alton, IL.

For Union Carbide Corporation, Defendant: Jeffrey T. Bash ▾, LEAD ATTORNEY, Heyl, Royster et
al. - Edwardsville, Generally Admitted, Edwardsville, IL; Kent L. Plotner ▾✓, Heyl, Royster et al.
- Edwardsville, Edwardsville, IL.

For Archer-Daniels-Midland Company, Inc., Defendant: Roger K. Rea ▾✓, LEAD ATTORNEY,
Foley & Mansfield, PLLP, St. Louis, MO.

For Arvinmeritor Inc, Rockwell Automation Inc, Defendants: Dayna L. Johnson ▾✓, LEAD
ATTORNEY, Greensfelder, Hemker et al. - Belleville, Belleville, IL.

For Bechtel Corporation, Bechtel Group Inc., Bondex International Inc, Certain-Teed
Corporation, Daimler Chrysler Corporation, Dow Chemical Company, Kohler Co, Riley Stoker
Corporation, Warren Pumps LLC, Defendants: Kent L. Plotner ▾✓, Heyl, Royster et al. -
Edwardsville, Edwardsville, IL.

For Brand Insulations Inc., Buckeye Technologies Inc., Goodyear Tire and Rubber Company,
Defendants: Thomas L. Orris ▾✓, LEAD ATTORNEY, Williams, Venker et al., St. Louis, MO.

For Bowater Incorporated, Continental Teves Inc., Defendants: Kurtis B. Reeg ▾✓, LEAD
ATTORNEY, Reeg, Nowogrocki et al., St. Louis, **[\*2]** MO.

For Domco Products Texas L P, Defendant: Beth Kamp Veath ▾✓, LEAD ATTORNEY, Brown &
James - Belleville, Belleville, IL.

For Eaton Corporation, Defendant: Michael R. Noakes ▾✓, Rabbitt, Pitzer et al., Generally

EXHIBIT___4___

Admitted, St. Louis, MO.

For Exxon Mobil Corporation, Defendant: H. Patrick Morris ✓, LEAD ATTORNEY, Johnson & Bell, Chicago, IL.

For Georgia-Pacific Corporation, Industrial Holdings Corporation, formerly known as Carborundum Company, Ingersoll-Rand Company, Pabst Brewing Company, Defendants: Sean P. Sheehan ✓, LEAD ATTORNEY, HeplerBroom, Edwardsville, IL.

For Maremont Corporation, Defendant: David W. Ybarra ✓, LEAD ATTORNEY, Greensfelder, Hemker et al. - Belleville, Belleville, IL.

For Metropolitan Life Insurance Company, Defendant: Charles L. Joley ✓, Kenneth M. Nussbaumer ✓, Donovan, Rose et al., Belleville, IL.

For Union Carbide Corporation, Defendant: Jeffrey T. Bash ✓, Heyl, Royster et al. - Edwardsville, Edwardsville, IL.

**JUDGES:** G. Patrick Murphy ✓, United States District Judge.

**OPINION BY:** G. Patrick Murphy ✓

**OPINION**

**MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

**I. INTRODUCTION**

This is an asbestosis lawsuit brought by Plaintiff James Weese against some one hundred and nineteen Defendants. Weese's claims, which are derived solely **[*3]** from state law, arise out of **asbestos**-related personal injuries he allegedly has suffered. Weese originally filed his claims in Illinois state court. However, after an amended complaint joining as a party Defendant Union Carbide Corporation ✓ ("Union Carbide") was filed in state court, within thirty days after service of the complaint Union Carbide removed the entire action to this forum pursuant to 28 U.S.C. 1331 and 28 U.S.C. § 1442(a)(1), and requested a **stay** of these proceedings **pending transfer** of this action to a multidistrict litigation ("MDL") proceeding in the United States District Court for the Eastern District of Pennsylvania (Doc. 3, 5). Weese in turn filed a motion for remand of this case to state court for lack of subject matter jurisdiction (Doc. 34). For the reasons stated below, Union Carbide's request for a **stay** of these proceedings is **DENIED** and Weese's request for remand of this case to state court for lack of subject matter jurisdiction is **GRANTED.**

The following facts are germane to this Order. Weese worked as a professional pipefitter, laborer, and welder from the early 1940s to the early 1990s. During his career, he worked at United States government facilities **[*4]** in Oak Ridge, Tennessee, that were managed, operated, and maintained by Union Carbide pursuant to contracts with the Atomic Energy Commission and the Department of Energy. Weese maintains that during his employment at the Oak Ridge facilities, he was exposed to asbestos particles emitted into the air. He alleges that he inhaled these particles and that, as a consequence, he contracted mesothelioma, a cancer of the lung lining linked to asbestos exposure. Union Carbide does not challenge Weese's assertion that he was exposed to asbestos while working at the Oak Ridge facilities. However, Union Carbide contends that, in its management of the Oak Ridge facilities, it acted under the direction of federal officers, and that the actions that it took were in accordance with precise specifications and detailed regulations promulgated by those agencies.

*4-2*

## II. ANALYSIS

### A. Stay of Proceedings

As noted, Union Carbide has requested that the Court **stay** this litigation, including the motion to remand, **pending transfer** of this case to the MDL **asbestos** docket in the Eastern District of Pennsylvania. The Court concludes that the requested stay should be denied. The issue presented by the motion to remand, **[\*5]** i.e., whether Union Carbide properly removed this action under 28 U. S.C. § 1442(a)(1) does not raise issues exclusively within the area of expertise of the MDL court. This Court is as qualified to evaluate the factors establishing federal jurisdiction as any other federal court. Where, as here, the motion to remand does not "implicate[ ] issues that are within the exclusive jurisdiction of the MDL Court . . . the motion[ ] to remand can be resolved without encroaching on the exclusive territory of the MDL Court." _In re Massachusetts Diet Drug Litig., 338 F. Supp. 2d 198, 201 (D. Mass. 2004)_. Under such circumstances, a stay is not warranted. _See id. See also Greene v. Wyeth, 344 F. Supp. 2d 674, 678-79 (D. Nev. 2004)_ (noting that the purpose of the statute governing **transfer** to MDL proceedings, 28 U.S.C. § 1407, is not furthered by referring to a transferee court issues of law that the transferor court is equally competent to decide); _Conroy v. Fresh Del Monte Produce, Inc., 325 F. Supp. 2d 1049, 1054 (N.D. Cal. 2004)_ (holding that a **stay pending transfer** of a case to an MDL proceeding would be "judicially inefficient" where "[t]his Court is readily familiar with federal law, Ninth **[\*6]** Circuit law, and California law, the laws applicable to Plaintiff's motion [for remand] and Complaint."); _Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1048-49 (E.D. Wis. 2001)_ (holding that a **stay** of proceedings **pending transfer** to an MDL court generally should be denied where a transferor court's "preliminary assessment" of a notice of removal suggests that a case was improperly removed).

Moreover, the resolution of the motion to remand requires an analysis of the unique facts of this case as presented to this Court. The issue is whether Union Carbide met its burden of proving the elements necessary for removal under 28 U.S.C. § 1442(a)(1). "The same degree of judicial resources must be expended here or in the District of [Pennsylvania] to make an assessment of which party should prevail." _Pennsylvania v. Tap Pharm. Prods., Inc., 415 F. Supp. 2d 516, 521 (E.D. Pa. 2005)_. Since only one federal court needs to "make an individualized assessment of the jurisdictional issues in this case" there is no reason to transfer the jurisdictional issue to the MDL court. _Id. See also Minnesota v. Pharmacia Corp._, No. 05-1394 (PAM/JSM), 2005 U.S. Dist. LEXIS 27638, 2005 WL 2739297, at *2 (D. Minn. Oct. 24, 2005) ("[G]ranting a **[\*7]** stay solely based on the existence of a factually-related MDL proceeding, without undertaking an individualized analysis of subject matter jurisdiction, would run counter to established case law, congressional intent, and . . . Rule 1.5 [of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation], all of which contemplate a district court will act to resolve threshold jurisdictional concerns[.]"). Cf. _Dean v. Eli Lilly & Co._, Civil Action No. 06-1375 (EGS), 2007 U.S. Dist. LEXIS 39603, 2007 WL 1589496, at *4 n.2 (D.D.C. June 1, 2007) (in the context of a motion for transfer under 28 U.S.C. § 1404, **[\*8]** holding that it was a factor weighing against transfer that the same legal question regarding the statute of limitations would have to be decided regardless of whether the case was transferred or not). Finally, the Court sees no reason to require Weese to suffer the undeniable delays inherent in all MDL asbestos cases unless there is federal jurisdiction. To undergo such a lengthy process to find out that there is no federal jurisdiction would be frankly unjust, in view of Weese's serious medical condition. For all these reasons, the Court concludes that Union Carbide's request for a stay should be denied.

### B. Propriety of Removal

### 1. Legal Standard

A defendant seeking removal bears the burden of establishing federal subject matter jurisdiction. See _Meridian Sec. Ins. Co. v.. Sadowski, 441 F.3d 536, 540 (7th Cir. 2006); Lyeria v. Amco Ins. Co., 461 F. Supp. 2d 834, 835 (S.D. Ill. 2006)_. Federal removal jurisdiction is

4-3

statutory in nature and is to be strictly construed. See *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993); *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1091 (S.D. Ill. 2007). Removal is proper if **[\*9]** it is based on permissible statutory grounds and if it is timely. See *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004); *Mills v. Martin & Bayley, Inc.*, Civil No. 05-888-GPM, 2007 U.S. Dist. LEXIS 70020, 2007 WL 2789431, at \*2 (S.D. Ill. Sept. 21, 2007). Any doubts about the propriety of removal must be resolved against removal and in favor of remand to state court. See *Clevenger v. Eastman Chem. Co.*, No. 07-cv-148-DRH, 2007 U.S. Dist. LEXIS 62527, 2007 WL 2458474, at \*1 (S.D. Ill. Aug. 24, 2007); *Littleton v. Shelter Ins. Co.*, No. 99-912-GPM, 2000 U.S. Dist. LEXIS 4631, 2000 WL 356408, at \*1 (S.D. Ill. Mar. 9, 2000).

## 2. Federal Officer Removal

At the outset, the Court notes that Union Carbide recently filed a notice purporting to withdraw its notice of removal, apparently conceding that federal subject matter jurisdiction does not exist in this case. This is a telling admission, of course, but it nevertheless is the rule that the existence or non-existence of subject matter jurisdiction in a given case does not hinge on the representations of parties to the case. See *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the **[\*10]** consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings. Similarly, a court, including an appellate court, will raise lack of subject-matter jurisdiction on its own motion.") (citations omitted); *Sadat v. Mertes*, 615 F.2d 1176, 1188 (7th Cir. 1980) ("A corollary of the principle of the limited jurisdiction of the federal courts is that jurisdiction otherwise lacking cannot be conferred by consent, collusion, laches, waiver, or estoppel."). Cf. *Swift & Co. v. United States*, 276 U.S. 311, 324, 48 S. Ct. 311, 72 L. Ed. 587 (1928) (even judgments entered by consent may be challenged on appeal for want of subject matter jurisdiction)); *Fraenkl v. Cerecedo*, 216 U.S. 295, 302-03, 30 S. Ct. 322, 54 L. Ed. 486 (1910) (same). Correspondingly, a federal court "has an independent duty to satisfy itself that it has subject-matter jurisdiction." *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774, 778 (7th Cir. 1994). See also *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986) ("[T]he federal courts are obliged to police the constitutional and statutory limitations on their jurisdiction. That is why, even at the appellate **[\*11]** level, the court must satisfy itself that there is federal jurisdiction over the case."); *Kurz v. Fidelity Mgmt. & Research Co.*, No. 07-cv-592-JPG, 2007 U.S. Dist. LEXIS 68845, 2007 WL 2746612, at \*1 (S.D. Ill. Sept. 18, 2007) ("The limited nature of federal subject matter jurisdiction imposes on federal courts a duty to examine their jurisdiction at every stage of a proceeding, sua sponte if need be."); *Capitol Fed. Sav. of Am. v. Geldermann & Co.*, No. 86 C 9232, 1987 U.S. Dist. LEXIS 1531, 1987 WL 7270, at \*1 (N.D. Ill. Feb. 24, 1987) ("[T]his Court has an independent duty to ascertain its subject matter jurisdiction . . . . Therefore, the Court must determine if . . . a federal question is presented by this action."). In an abundance of caution, the Court has undertaken a detailed inquiry into whether the record of this case discloses the existence of federal subject matter jurisdiction, and concludes that it does not.

Under 28 U.S.C. § 1442, a defendant can remove "[a] civil action ... commenced in a State court against . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of **[\*12]** such office[.]" 28 U.S.C. § 1442(a)(1). As the statute makes clear, the right of removal extends not only to federal officers but to persons acting under such officers. To effect removal as a person acting under a federal officer, Union Carbide must prove three elements: (1) it is a "person" within the meaning of the statute; (2) it acted under the direction of a federal officer, meaning that there is a nexus or causal connection between Weese's claims and the acts Union Carbide performed under the direction of a federal officer; and (3) Union Carbide has a colorable federal defense to state-law liability. See *Jefferson County, Ala. v. Acker*, 527 U.S. 423, 431, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999); *Mesa v. California*, 489 U.S. 121, 129, 109 S. Ct. 959, 103 L. Ed. 2d 99 (1989);

4-4

*Arizona v. Manypenny*, 451 U.S. 232, 242, 101 S. Ct. 1657, 68 L. Ed. 2d 58 (1981). The basic purpose of Section 1442(a)(1) is to ensure a federal forum for defenses of official immunity by federal officers. *See Willingham v. Morgan*, 395 U.S. 402, 407, 89 S. Ct. 1813, 23 L. Ed. 2d 396 (1969); *Wisconsin v. Schaffer*, 565 F.2d 961, 964 (7th Cir. 1977). Because federal officer removal is rooted in "an anachronistic mistrust of state courts' ability to protect and enforce federal interests and immunities from suit," although such jurisdiction is  [*13] read "expansively" in suits involving federal officials, it is read narrowly where, as in this instance, only the liability of a private company purportedly acting at the direction of a federal officer is at issue. *Freiberg v. Swinerton & Walberg Prop. Servs., Inc.*, 245 F. Supp. 2d 1144, 1150, 1152 n.6 (D. Colo. 2002) (emphasis omitted). *See also New Jersey Dep't of Envtl. Prot. v. Viacom, Inc.*, Civil Action No. 06-1753 (HAA), 2006 U.S. Dist. LEXIS 88434, 2006 WL 3534364, at *2 (D.N.J. Dec. 7, 2006).

Removal under 28 U.S.C. § 1442(a)(1) presents certain exceptions to the normal run of cases removed on the basis of an issue of federal law. First, removal under Section 1442(a)(1) can be effected by any defendant in an action, with or without the consent of co-defendants. *See Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1034 (10th Cir. 1998); *Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.*, 644 F.2d 1310, 1315 (9th Cir. 1981). Additionally, in contrast to the familiar "well-pleaded complaint" rule which generally permits removal of a case on the basis of an issue of federal law only when that issue appears on the face of a plaintiff's complaint, *see Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983);  [*14] *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995), removal under Section 1442(a)(1) is authorized on the basis of defenses arising under federal law. As the Supreme Court of the United States has explained, the statute governing federal officer removal belongs to the class of "pure jurisdictional statutes which seek 'to do nothing more than grant jurisdiction over a particular class of cases'" and therefore "cannot support . . . arising under . . . jurisdiction" within the meaning of Article III of the United States Constitution. *Mesa*, 489 U.S. at 136 (quoting *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 496, 103 S. Ct. 1962, 76 L. Ed. 2d 81 (1983)). Thus, while the statute "grant[s] district court jurisdiction over cases in which a federal officer is a defendant," it does not, however, "independently support Art. III 'arising under' jurisdiction." *Id.* This is why, in addition to being a federal officer or a person acting under the direction of such an officer, a defendant seeking removal under Section 1442(a)(1) must aver a "colorable federal defense" to support removal. *Id.* at 129. In other words, a defendant who is able to meet the requirements for removal under Section 1442(a)(1) "gain[s] access to  [*15] federal court [even] where no federal question is presented by the plaintiff." *Ryan v. Dow Chem. Co.*, 781 F. Supp. 934, 939 (E.D.N.Y. 1992). Importantly, a federal defense sufficient to permit removal under the statute need only be colorable, not guaranteed to prevail. *See Mesa*, 489 U.S. at 133; *Willingham*, 395 U.S. at 406-07. Finally, where a case is properly removed under Section 1442(a)(1) the effect is to remove the entire case, even though only one of its controversies might involve a federal officer or agency. *See District of Columbia v. Merit Sys. Prot. Bd.*, 246 U.S. App. D.C. 35, 762 F.2d 129, 132-33 (D.C. Cir. 1985); *Spencer v. New Orleans Levee Bd.*, 737 F.2d 435, 438 (5th Cir. 1984); *State of N.J. Dep't of Envtl. Prot. v. Gloucester Envtl. Mgmt. Servs., Inc.*, 719 F. Supp. 325, 334 (D.N.J. 1989); 14C Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, *Federal Practice & Procedure* § 3727 (3d ed. 1998 & Supp. 2007) (collecting cases).

With respect to the first element of the test for federal officer removal, whether Union Carbide is a "person" within the meaning of 28 U.S.C. § 1442(a)(1), the Court concludes that this requirement is met. Although some courts have held that a  [*16] corporation is not a person for purposes of the federal officer removal statute, *see, e.g., Arnold v. Blue Cross & Blue Shield of Tex., Inc.*, 973 F. Supp. 726, 739 (S.D. Tex. 1997); *Krangel v. Crown*, 791 F. Supp. 1436, 1439-46 (S.D. Cal. 1992), the Court agrees with the weight of authority holding that corporations are persons for purposes of federal officer removal. *See, e.g., Camacho v. Autoridad de Telefonos de Puerto Rico*, 868 F.2d 482, 486-87 (1st Cir. 1989); *Davidson v. Arch Chems. Specialty Prods., Inc.*, 347 F. Supp. 2d 938, 941 (D. Or. 2004); *Guckin v. Nagle*, 259 F. Supp. 2d 406, 416 (E.D. Pa. 2003); *Reed v. Fina Oil & Chem. Co.*, 995 F. Supp. 705, 711 (E.D. Tex. 1998); *Jones v. Three Rivers Elec. Coop.*, 166 F.R.D. 413, 414 (E.D. Mo. 1996);

*4-5*

*Good v. Armstrong World Indus., Inc.*, 914 F. Supp. 1125, 1127-28 (E.D. Pa. 1996); *Guillory v. Ree's Contract Serv., Inc.*, 872 F. Supp. 344, 346 (S.D. Miss. 1994); *Ryan*, 781 F. Supp. at 946; Kristine Cordier Karnezis, Annotation, *Who Is "Person Acting Under" Officer of United States or Any Agency Thereof for Purposes of Availability of Right to Remove State Action to Federal Court Under 28 U.S.C.A. § 1442(a)(1)*, 166 A.L.R. Fed. 297 (2000) **[\*17]** (collecting cases). Where the removal of this action founders is on the other two elements of the standard, namely, acting under the direction of a federal officer and the presentation of a colorable federal defense.

**a. Acting under a Federal Officer**

For purposes of the "acting under" requirement of 28 U.S.C. § 1442(a)(1), this element, as noted, entails a showing of a causal nexus between acts taken by Union Carbide at the direction of a federal officer and the injury of which Weese complains. Under the "regulation plus" standard for acting under a federal officer embraced by this Circuit, a causal nexus is established by showing that complained-of conduct was undertaken at the express direction of a federal officer. For example, in *Venezia v. Robinson*, 16 F.3d 209 (7th Cir. 1994), the United States Court of Appeals for the Seventh Circuit affirmed removal under Section 1442(a)(1) of a suit for extortion brought by an operator of video poker machines against an agent of the Illinois Liquor Control Commission who solicited a bribe from him, where the defendant claimed that he solicited the bribe at the direction of agents of the Federal Bureau of Investigation, which was conducting a **[\*18]** sting operation against the plaintiff. See *id.* at 210-12. As the United States Supreme Court has instructed, to show the propriety of removal under Section 1442(a)(1), "[t]here must be a causal connection between what the officer has done under asserted official authority and the state prosecution." *Mesa*, 489 U.S. at 131 (quoting *Maryland v. Soper*, 270 U.S. 9, 33, 46 S. Ct. 185, 70 L. Ed. 449 (1926)). "It must appear that the prosecution of him, for whatever offense, has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and *he must by direct averment exclude the possibility that it was based on acts or conduct of his not justified by his federal duty.*" *Id.* at 131-32 (emphasis added). See also *Freiberg*, 245 F. Supp. 2d at 1155 ("What [removing defendants] must establish for purpose of [Section] 1442(a)(1) is that the government authority under which they worked required them to act as they did," that is, "they must establish the [government's] direction and control of their activities directly interfered with their ability to fulfill their state law obligation[.]").

In the specific context of cases involving, as here, allegations of personal injuries caused by **[\*19]** asbestos due to failure to warn, to establish the requisite causal nexus for removal purposes a defendant must show that the government prevented it from issuing adequate warnings regarding exposure to asbestos. For example, in *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653 (E.D. Tex. 1999), the court rejected an attempt by owners of property on which the plaintiffs allegedly were exposed to asbestos to remove the plaintiffs' claims under 28 U.S.C. § 1442(a)(1). The court noted first that the gravamen of the plaintiffs' claims was that the premises operated by the removing defendants were unsafe, not that the defendants had designed, manufactured, or distributed a defective product under the direction of a federal officer. "Defendants seek to transmogrify their entire facilities into huge 'products' whose specifications were dictated by a federal officer." 48 F. Supp. 2d at 662. However, the court noted, "[t]his is a premises liability case - not a products case; and Defendants' attempt to transmogrify their entire facilities (i.e., their premises) . . . into 'products' misapplies precedent and fails the second prong of a . . . test" of federal officer removal. *Id.* at 660 **[\*20]** (emphasis omitted). The court concluded that the federal officer removal statute does not permit a defendant "to shroud an entire facility from state-law claims simply because a federal officer dictates the specifications of the product manufactured there"; rather, a proper exercise of such jurisdiction must "tether the defendants' actions under the color of federal office to the plaintiffs' claims, thereby establishing the causal nexus necessary to support the second prong of the . . . test" of federal officer removal. *Id.* at 662. Obviously, the same concern applies with equal force in this case. It appears from the record that Union Carbide regards every action it took at the Oak Ridge facilities that it managed as having been undertaken at the direction of a federal officer. However, Section 1442(a)(1) does not

4-6

authorize removal on the basis of such vague allegations of federal control. Instead, it is Union Carbide's burden to show that it took actions at the specific direction of a federal officer, and that those actions caused the injuries alleged by Weese in this case.

More importantly, the *Faulk* court held that, even assuming that the defendants' premises could be considered **[*21]** products, there was no evidence to sustain a causal nexus because nothing in the record suggested that the government prevented the defendants from furnishing adequate warning about the dangers of exposure to asbestos. The court said: "Causal nexus? Of course not. Why not? Because the federal government provided no direction or control on warnings when using asbestos; moreover, the federal government did not prevent Defendants from taking their own safety precautions heeding state-law standards above the minimum standards incorporated in their federal contracts." 48 F. Supp. 2d at 663. "Indeed, of all the myriad of documents removing Defendants submitted to this Court, there is no direction or control by the federal officer relating to warning Plaintiffs about asbestos." *Id.* at 664. "Here, there is no federal officer 'direction' or 'control' as to whether to warn Plaintiffs about asbestos. Rather, there are detailed, government specifications relating to the production of Avgas, butadiene, and steel - nothing about warning about asbestos. The federal officer remained completely silent as to whether to warn about the use of asbestos; this silence is fatal to the 'causal nexus' necessary **[*22]** for the second prong of the test for federal officer removal. *Id.* (emphasis omitted). The court concluded that "Defendants seek to shroud their entire facilities from state-law claims simply because the federal government controlled products manufactured there." *Id.* at 670 (emphasis omitted). However, "[a]lthough Defendants 'arguably 'acted under' the [federal government's] direction when working by detailed instructions . . .' to produce Avgas, butadiene, and steel,' . . . [t]he federal government provided no direction on warnings when using asbestos, and further did not prevent [Defendants] from taking [their] own safety precautions above the minimum standards incorporated in the federal contracts." *Id.* (quoting *Mouton v. Flexitallic, Inc.*, No. CIV. A. 99-0162, 1999 U.S. Dist. LEXIS 5632, 1999 WL 225438, at *3 (E.D. La. Apr. 14, 1999)). Accordingly, the court found that the removing defendants had failed to show a causal nexus sufficient to satisfy the acting under prong of the test for federal officer removal. *See id.*

As *Faulk* illustrates, to establish the causal nexus sufficient to satisfy the acting under prong of the test for federal officer removal, a removing defendant must show that "the federal officer **[*23]** really did 'make them do it[.]'" 48 F. Supp. 2d at 664. Here Union Carbide has adduced no evidence that a federal officer prevented it from furnishing adequate warnings about the dangers of exposure to asbestos. Accordingly, the Court concludes that the second prong of the test for federal officer removal is not satisfied in this case. *See Freiberg*, 245 F. Supp. 2d at 1155 (holding that defendants seeking removal under 28 U.S.C. § 1442(a)(1) failed to show a causal nexus between acts taken under the direction of federal officers and the plaintiffs' personal injuries due to exposure to asbestos: "For purposes of Plaintiffs' failure to warn claims . . . [the defendants] must establish [that the government's] direction and control of their activities directly interfered with their ability to fulfill their state law obligation to warn employees of safety hazards."); *Gauthe v. Asbestos Corp.*, No. Civ. A. 96-2454, 1997 U.S. Dist. LEXIS 112, 1997 WL 3255, at *3 (E.D. La. Jan. 2, 1997) (finding federal officer removal improper because "[t]here is no evidence that the Government restricted or prohibited [the defendant's] ability to notify individuals of the presence of asbestos in the work environment."); *Overly v. Raybestos-Manhattan*, No. C-96-2853 SI, 1996 U.S. Dist. LEXIS 13535, 1996 WL 532150, at *4 (N.D. Cal. Sept. 9, 1996) **[*24]** (holding that a defendant failed to show a causal nexus between actions allegedly taken at the direction of a federal officer and failure to warn claims arising from exposure to asbestos because "[t]he government in no way restricted [the defendant's] ability to notify individuals of the presence of asbestos in the work environment."). *Cf. In re Wireless Tel. Radio Frequency Emissions Prods. Liab. Litig.*, 327 F. Supp. 2d 554, 563 (D. Md. 2004) (holding that manufacturers of cell phones were not "acting under" a federal agency so as to permit removal of products liability actions against them where, although regulations promulgated by the Federal Communications Commission ("FCC") specifically directed manufacturers to manufacture, test, and sell only cell phones emitting approved levels of radio frequency radiation, the FCC provided only general guidance and did not prohibit the manufacturers "from providing additional safeguards or information to

4-7

consumers").

**b. Colorable Federal Defense**

Finally, the Court concludes that Union Carbide has failed to proffer a colorable federal defense. Union Carbide invokes the so-called **[*25]** "government contractor defense" or "military contractor defense." In *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S. Ct. 2510, 101 L. Ed. 2d 442 (1988), the Court held that a private contractor may invoke a federal affirmative defense to potential liability under state law for design defects in products or equipment that it produces for the United States, provided that the contractor can show that: (1) the United States approved reasonably precise specifications for the products or equipment; (2) the products or equipment conformed to those specifications; and (3) the contractor warned the United States about any dangers known to the contractor but not to the United States. *See id.* at 512. *See also Lambert v. B.P. Prods. N. Am., Inc.*, Civil No. 04-347-GPM, 2006 U.S. Dist. LEXIS 16756, 2006 WL 924988, at *6 (S.D. Ill. Apr. 6, 2006); *Green v. A.W. Chesterton Co.*, 366 F. Supp. 2d 149, 152-53 (D. Me. 2005); *Freiberg*, 245 F. Supp. 2d at 1151. According to the *Boyle* Court, the first two conditions assure that the United States actually considered and approved the design in question, placing the suit in the area of "discretionary function." 487 U.S. at 512. The third condition creates an incentive for manufacturers to disclose known risks in the **[*26]** design or manufacture of the products or equipment. *See id.* The elements of the test ensure that there exists a "significant conflict" between a federal interest and state law warranting the displacement of state tort law. *Id.* at 509. To prevail on the government contractor defense, a defendant bears the burden of proving all three elements of the *Boyle* standard. *See Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 997 (7th Cir. 1996).

The *Boyle* standard is not, on its face, applicable to failure to warn cases. *See Tate v. Boeing Helicopters*, 55 F.3d 1150, 1157 (6th Cir. 1995) (acknowledging that, on its face, "the rule announced in *Boyle* applies only to design claims[.]"). This has prompted some courts to conclude that the government contractor defense has no application in a case based on a failure to warn. *See, e.g., Epperson v. Northrop Grumman Sys. Corp.*, No. 4:05CV2953, 2006 U.S. Dist. LEXIS 3033, 2006 WL 90070, at *5 (E.D. Va. Jan. 11, 2006) ("[I]n . . . thousands . . . of previous asbestos cases . . . this court [found] that failure to warn cases are not subject to government contractor immunity[.]"); *McCormick v. C.E. Thurston & Sons, Inc.*, 977 F. Supp. 400, 403 (E.D. Va. 1997) ("[I]n the thousands of asbestos **[*27]** cases that have preceded, the United States District Court for the Eastern District of Virginia has determined that the government contractor defense is not available in 'failure to warn' cases."). *See also Oliver*, 96 F.3d at 1003 (noting that "design defect and failure to warn claims differ practically as well as theoretically" for purposes of the government contractor defense). At a minimum, courts have restricted the applicability of the government contractor defense in failure to warn cases to situations in which the government's approval or prohibition of certain warnings has precluded a contractor from complying with state-law duties to warn.

In *Oliver* the Seventh Circuit Court of Appeals explained that, to be insulated under government contractor immunity for failure to warn, a defendant must show that "the government exercised its discretion and approved certain warnings." 96 F.3d at 1003. This view is consistent with the language of *Boyle*. In *Boyle* the Court, to illustrate the proper application of government contractor immunity, suggested a hypothetical scenario focusing on the potential for conflict between state laws and federal contracts. The hypothetical proposed the United **[*28]** States contracting for the purchase of an air-conditioning unit and specifying by contract the "cooling capacity but not the precise manner of construction[.]" 487 U.S. at 509. The Court explained that a state law requiring that such units "include a certain safety feature would not be a duty identical to anything promised the Government, but neither would it be contrary." *Id.* Because the contractor could comply with the "state-prescribed duty of care" and still follow the terms of the contract there would be no need for the state law to be preempted; thus, there would be no need for the contractor to be shielded by immunity. *See id. See also In re Hawaii Fed. Asbestos Cases*, 960 F.2d 806, 810 (9th Cir. 1992) (quoting *Boyle*, 487 U.S. at 507) (noting that the government contractor defense "immunizes

4-8

contractors who supply military equipment to the Government from the duties imposed by state tort law," but this "displacement of ordinary tort liability . . . occur[s] only where . . . a . . . significant conflict . . . exists between an . . . identifiable federal policy or interest and the . . . operation . . . of state law."); _Adams v. Alliant Techsystems, Inc._, 201 F. Supp. 2d 700, 707 (W.D. Va. 2002) **[\*29]** (noting that "the productions of munitions for the Army is uniquely a federal interest," but also that "defendants have not demonstrated that the duty of care defendants owe their employees conflicts with or even burdens defendants' federal regulatory or contractual obligations.").

In the specific context of asbestos cases, the _Boyle_ standard means that, even if a federal contract mandates the use of asbestos in a certain product, yet provides no requirements as to the warnings to be furnished regarding exposure to asbestos, a contractor could comply with everything "promised the Government" while at the same time following the "state-prescribed duty of care" both to warn regarding asbestos exposure and to create procedures to avoid potentially fatal exposure to asbestos dust. _Boyle_, 487 U.S. at 509. Accordingly, in such cases courts generally find that the government contractor defense does not apply, absent evidence that the government mandated specific warnings or prohibited warnings. See _Westbrook v. Asbestos Defendants (BHC)_, No. C-01-1661 VRW, 2001 U.S. Dist. LEXIS 11575, 2001 WL 902642, at **3-4 (N.D. Cal. July 31, 2001) (where the defendants did not show that "the Navy required it to refrain from issuing **[\*30]** warnings" about the dangers of asbestos, there was "no causal connection between the acts performed under the government's orders and the claims brought by plaintiffs" and "no colorable military contractor defense to a failure to warn claim"); _Faulk_, 48 F. Supp. 2d at 664-65 (holding that because the government provided no direction or control as to warnings with respect to asbestos, there were "no specifications . . . sufficient to invoke the _Boyle_ contractor defense"); _Nguyen v. Allied Signal, Inc._, No. C 98-03616 SI, 1998 U.S. Dist. LEXIS 15517, 1998 WL 690854, at *3 (N.D. Cal. Sept. 29, 1998) (no colorable federal defense where "defendants have produced no evidence that their contracts with the United States government contained contractual obligations specifically prohibiting them from placing warnings on their products" regarding asbestos exposure); _In re Joint E. & S. Dist. Asbestos Litig._, 715 F. Supp. 1167, 1169 (E.D.N.Y. 1988) (where "federal specifications were silent on the matter of warnings, [and] defendant could have provided adequate warnings to plaintiffs and complied with the federal specifications," the defendant failed to establish the government contractor defense). Cf. _Winters v. Diamond Shamrock Chem. Co._, 149 F.3d 387, 401 (5th Cir. 1998) **[\*31]** (denying a motion to remand in part because the contractors hired to produce Agent Orange failed to put warnings on the product only because they "were specifically prohibited from placing any warnings on the finished product itself except as allowed by contract."). In this instance, Union Carbide has failed to point to any government action either mandating a warning or prohibiting a warning that deprived Union Carbide of the power to determine an appropriate warning. In the absence of evidence of a significant conflict between a federal policy or interest and the operation of state law such as is required to implicate the government contractor defense, the Court concludes that Union Carbide has failed to proffer a colorable federal defense so as to permit removal pursuant to 28 U.S.C. § 1442(a)(1). This case will be remanded to state court for lack of subject matter jurisdiction.

### III. CONCLUSION

Union Carbide's request for a stay of these proceedings (Doc. 3, 5) is **DENIED.** Weese's request for remand of this case to state court for lack of subject matter jurisdiction (Doc. 34) is **GRANTED.** Pursuant to 28 U.S.C. § 1447(c), this case is **REMANDED** to the Circuit Court of the Third Judicial **[\*32]** Circuit, Madison County, Illinois.

**IT IS SO ORDERED.**

DATED: 10/3/07

_/s/ G. Patrick Murphy_

4-9

United States District Judge

Source: <u>My Sources</u> > <u>Federal Legal - U.S.</u> > **Federal Court Cases, Combined** 🗓
Terms: **stay w/s pending w/s transfer w/p asbestos** (<u>Edit Search</u> | <u>Suggest Terms for My Search</u> | <u>Feedback on Your Search</u>)
View: **Full**
Date/Time: Thursday, February 28, 2008 - 6:07 PM EST

\* Signal Legend:
● - Warning: Negative treatment is indicated
🇶 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
🜚 - Citation information available
\* Click on any *Shepard's* signal to *Shepardize*® that case.

*My Lexis*™ | <u>Search</u> | <u>Research Tasks</u> | <u>Get a Document</u> | *Shepard's*® | <u>Alerts</u> | <u>Total Litigator</u> | <u>Transactional Advisor</u> | <u>Counsel Selector</u>
<u>History</u> | <u>Delivery Manager</u> | <u>Dossier</u> | <u>Switch Client</u> | <u>Preferences</u> | <u>Sign Off</u> | <u>Help</u>

🍎 LexisNexis®    <u>About LexisNexis</u> | <u>Terms & Conditions</u> | <u>Contact Us</u>
<u>Copyright ©</u> 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

4-10